George M. Lee (SBN 172982)
gml@seilerepstein.com
**SEILER EPSTEIN LLP**
275 Battery Street, Suite 1600
San Francisco, California 94111
Phone: (415) 979-0500
Fax: (415) 979-0511

John W. Dillon (SBN 296788)
jdillon@gdandb.com
2762 Gateway Road
Carlsbad, California 92009
Phone: (760) 431-9501
Fax: (760) 431-9512

Raymond M. DiGuiseppe (SBN 228457)
law.rmd@gmail.com
**THE DIGUISEPPE LAW FIRM, P.C.**
4320 Southport-Supply Road, Suite 300
Southport, North Carolina 28461
Phone: 910-713-8804
Fax: 910-672-7705

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ADAM BRANDY, an individual; JONAH MARTINEZ, an individual; DAEMION GARRO, an individual; DG 2A ENTERPRISES INC., d.b.a. GUN WORLD; JASON MONTES, an individual; WEYLAND-YUTANI LLC, d.b.a. MATCH GRADE GUNSMITHS; ALAN KUSHNER, an individual; THE TARGET RANGE; TOM WATT, an individual; A PLACE TO SHOOT, INC.; SECOND AMENDMENT | Case No. 2:20-cv-02874-AB-AK<br><br>**FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

1  FOUNDATION; CALIFORNIA GUN
2  RIGHTS FOUNDATION; NATIONAL
   RIFLE ASSOCIATION OF AMERICA;
3  and FIREARMS POLICY COALITION,
4  INC.,

5               Plaintiffs,

6      vs.
7

8
   ALEX VILLANUEVA, in his official
9  capacity as Sheriff of Los Angeles
10 County, California, and in his capacity as
   the Director of Emergency Operations;
11 GAVIN NEWSOM, in his official
12 capacity as Governor and Commander in
   Chief of the State of California; SONIA
13 Y. ANGELL, in her official capacity as
14 California Public Health Officer;
   BARBARA FERRER, in her official
15 capacity as Director of Los Angeles
16 County Department Of Public Health;
   COUNTY OF LOS ANGELES; ERIC
17 GARCETTI, in his official capacity as
18 Mayor of the City of Los Angeles,
   California; CITY OF LOS ANGELES,
19 CALIFORNIA; JUSTIN HESS, in his
20 official capacity as City Manager and
   Director of Emergency Services for the
21 City of Burbank; and CITY OF
22 BURBANK, CALIFORNIA,
23
               Defendants.
24

25

26
        Plaintiffs Adam Brandy, *et al*. ("Plaintiffs"), by and through counsel of record,
27
28 bring  this  complaint  for  injunctive  and  declaratory  relief  against  the  named

Defendants, and allege as follows:

## INTRODUCTION

1.     California's State and local governments cannot simply suspend the Constitution. Authorities may not, by decree or otherwise, enact and/or enforce a suspension or deprivation of constitutional liberties. And they certainly may not use a public health crisis as political cover to impose bans and restrictions on rights they do not like.

2.     Firearm and ammunition product manufacturers, retailers, importers, distributors, and shooting ranges are essential businesses that provide essential access to constitutionally protected fundamental, individual rights. If firearms and ammunition could be purchased online like other constitutionally protected artifacts, such as paper, pens, ink, and technology products that facilitate speech, then individuals could simply purchase what they need and have the items delivered to their doorsteps. But because of an onerous and complicated federal, state, and local regulatory scheme that prevents this, people in California cannot exercise their Second Amendment right to keep and bear arms without such essential businesses.

3.     In California, individuals are required to purchase and transfer firearms and ammunition through state and federally licensed dealers in face-to-face transactions or face serious criminal penalties. Shuttering access to arms, the ammunition required to use those arms, and the ranges and education facilities that

individuals need to learn how to safely and competently use arms, necessarily closes off the Constitutional right to learn about, practice with, and keep and bear those arms. By forcing duly licensed, essential businesses to close or eliminate key services for the general public, government authorities are foreclosing the only lawful means to buy, sell, and transfer firearms and ammunition available to typical, law-abiding individuals in California. Such a prohibition on the right to keep and bear arms is categorically unconstitutional.

4.     The circumstances posed by the COVID-19 Novel Coronavirus outbreak present challenges to all of us, including the government. Responding to those challenges, for example, Defendant Los Angeles County Sheriff Alex Villanueva recently released approximately 1,700 inmates from his Los Angeles County jails. And with governments having no legal duty to protect the people they serve, and with no guarantee that law enforcement will even respond to one's 911 call during this crisis or after it (let alone in time to prevent a crime), people who choose to turn to their fundamental, individual Second and Fourteenth Amendment rights cannot be denied them.

5.     The need for self-defense during uncertain times is precisely when Plaintiffs and Plaintiffs' members must be able to exercise their fundamental rights to keep and bear arms. The challenges we all face because of the COVID-19 Coronavirus, or any other such emergency, does not, cannot, and must not justify or

excuse government infringements upon fundamental human rights.

## PARTIES

### *Individual Plaintiffs*

6.     Plaintiff Adam Brandy is a natural person, a citizen of the United States, and a resident of the County of Los Angeles, California. Plaintiff Brandy is not prohibited from possessing or acquiring arms, including firearms and ammunition, under state or federal law. Plaintiff Brandy is concerned about his safety and the safety of his family, wants to practice and exercise his right to keep and bear arms – including firearms, ammunition, magazines, and appurtenances – and would do so, but for the reasonable and imminent fear of arrest and criminal prosecution under Defendants' laws, policies, orders, practices, customs, and enforcement.

7.     Plaintiff Jonah Martinez is a natural person, a citizen of the United States, and a resident of the County of Los Angeles, California. Plaintiff Jonah Martinez is not prohibited from possessing or acquiring arms, including firearms and ammunition, under state or federal law. Plaintiff Martinez is concerned about his safety and the safety of his family, wants to practice and exercise his right to keep and bear arms – including firearms, ammunition, magazines, and appurtenances – and would do so, but for the reasonable and imminent fear of arrest and criminal prosecution under Defendants' laws, policies, orders, practices, customs, and enforcement.

8.      Plaintiff Daemion Garro is a natural person, a citizen of the United States, and a resident of the County of Los Angeles, California. Plaintiff Garro is not prohibited from possessing or acquiring arms, including firearms and ammunition, under state or federal law. Plaintiff Garro is the owner and operator of DG 2A Enterprises Inc., d.b.a. Gun World ("Gun World") in Burbank, California. Plaintiff Garro is concerned about his safety and the safety of his customers and the public. On behalf of himself and his customers, Plaintiff Garro would conduct training and education, perform California Firearm Safety Certificate ("FSC") testing for and issue FSC certificates to eligible persons, and sell and transfer arms  – including firearms, ammunition, magazines, and appurtenances – but for the reasonable and imminent fear of criminal prosecution and loss of his license under Defendants' laws, policies, orders, practices, customs, and enforcement thereof.

9.      Plaintiff Jason Montes is a natural person, a citizen of the United States, and a resident of the County of Los Angeles, California. Plaintiff Montes is not prohibited from possessing or acquiring arms, including firearms and ammunition, under state or federal law. Plaintiff Montes is the owner and operator Weyland-Yyutani LLC, d.b.a. Match Grade Gunsmiths ("Match Grade") in Cerritos, California. Plaintiff Montes is concerned about his safety and the safety of his customers and the public. On behalf of himself and his customers, Plaintiff Montes would conduct training and education, perform FSC testing for and issue FSC

certificates to eligible persons, and sell and transfer arms – including firearms, ammunition, magazines, and appurtenances – but for the reasonable and imminent fear of criminal prosecution and loss of his license under Defendants' laws, policies, orders, practices, customs, and enforcement thereof.

10.     Plaintiff Alan Kushner is a natural person, a citizen of the United States, and a resident of California. Plaintiff Kushner is not prohibited from possessing or acquiring arms, including firearms and ammunition, under state or federal law. Plaintiff Kushner is the owner and operator of The Target Range ("Target Range"), a firearm and ammunition retailer, indoor shooting range, and training facility in Van Nuys, California, a neighborhood of the City of Los Angeles, California. Plaintiff Kushner is concerned about his safety and the safety of his customers and the public. On behalf of himself and his customers, Plaintiff Kushner would conduct training and education, perform FSC testing for and issue FSC certificates to eligible persons, and sell and transfer arms – including firearms, ammunition, magazines, and appurtenances –but for the reasonable and imminent fear of criminal prosecution and loss of his licenses because of Defendants' laws, policies, orders, practices, customs, and enforcement thereof.

11.     Plaintiff Tom Watt is a natural person, a citizen of the United States, and a resident of California. Plaintiff Watt is not prohibited from possessing or acquiring arms, including firearms and ammunition, under state or federal law.

Plaintiff Watt is the owner and operator of A Place To Shoot, Inc. ("A Place To Shoot"), a firearm and ammunition retailer, indoor shooting range, and training facility in Santa Clarita, CA. Plaintiff Watt is concerned about his safety and the safety of his customers and the public. On behalf of himself and his customers, Plaintiff Watt would conduct training and education, perform FSC testing for and issue FSC certificates to eligible persons, and sell and transfer arms – including firearms, ammunition, magazines, and appurtenances –but for the reasonable and imminent fear of criminal prosecution and loss of his licenses because of Defendants' laws, policies, orders, practices, customs, and enforcement thereof.

*Retailer Plaintiffs*

12.     Plaintiff DG2A Enterprises, d.b.a. Gun World, is a corporation holding federal, state, and local licenses to conduct the sales of arms, including firearms, ammunition, magazines, and appurtenances, in Burbank, California. Plaintiff Gun World is concerned about its safety and the safety of its customers and the public. On behalf of itself and its customers, Plaintiff Gun World would conduct training and education, perform California FSC testing for and issue FSC certificates to eligible persons, and sell and transfer arms  – including firearms, ammunition, magazines, and appurtenances –but for the reasonable and imminent fear of criminal prosecution and loss of its licenses because of Defendants' laws, policies, orders, customs, and enforcement thereof.

13.     Plaintiff Weyland-Yutani LLC, d.b.a. Match Grade Gunsmiths ("Match Grade"), is a limited liability corporation and holds federal, state, and local licenses to conduct the manufacturing and sales of arms, including firearms, ammunition, magazines, and appurtenances, in Cerritos, California. Plaintiff Match Grade is a Veteran-owned, full-service manufacturer, retailer, gunsmith, and machine shop. It has gunsmiths that are certified armorers for common firearm manufacturers including Sig Sauer, Smith and Wesson, Springfield Armory, and Glock. Plaintiff Match Grade "can customize anything you can think of," and its "master gunsmith can manufacture custom parts, build custom rifles," and configure pistols to customers' needs. Plaintiff Match Grade is concerned about its safety and the safety of its customers and the public. On behalf of itself and its customers, Plaintiff Match Grade would conduct training and education, perform California FSC testing for and issue FSC certificates to eligible persons, and sell and transfer arms  – including firearms, ammunition, magazines, and appurtenances –but for the reasonable and imminent fear of criminal prosecution and loss of its licenses under Defendants' laws, policies, orders, practices, customs, and enforcement thereof.

14.     Plaintiff The Target Range ("Target Range"), is a California corporation holding federal, state, and local licenses to conduct the temporary rental and sale of arms, including firearms, ammunition, magazines, and appurtenances, as well as to operate an indoor shooting range and training center, in Van Nuys,

California. Plaintiff Target Range is concerned about its safety and the safety of its customers and the public. On behalf of itself and its customers, Plaintiff Target Range would conduct training and education, perform California FSC testing for and issue FSC certificates to eligible persons, rent arms for education and proficiency training and other lawful purposes, and sell and transfer arms – including firearms, ammunition, magazines, and appurtenances –but for the reasonable and imminent fear of criminal prosecution and loss of his license under Defendants' laws, policies, orders, practices, customs, and enforcement thereof.

15.    Plaintiff A Place To Shoot, Inc. ("A Place To Shoot"), is a California corporation holding federal, state, and local licenses to conduct the temporary rental and sale of arms, including firearms, ammunition, magazines, and appurtenances, as well as to operate an shooting range and training center, in Santa Clarita, California. Plaintiff A Place To Shoot is concerned about its safety and the safety of its customers and the public. On behalf of itself and its customers, Plaintiff A Place To Shoot would operate, conduct education and proficiency training, and sell and transfer arms – including firearms, ammunition, magazines, and appurtenances – but for the reasonable and imminent fear of criminal prosecution and loss of his license under Defendants' laws, policies, orders, practices, customs, and enforcement thereof.

*Institutional Plaintiffs*

16.     Plaintiff Second Amendment Foundation, Inc. ("SAF") is a nonprofit educational foundation incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF seeks to preserve the effectiveness of the Second Amendment through education, research, publishing, and legal action programs focused on the Constitutional right to possess firearms, and the consequences of gun control. SAF has over 650,000 members and supporters nationwide, including thousands of members in California. SAF brings this action on behalf of itself and its members. Individual Plaintiffs and Retailer Plaintiff are members of SAF.

17.     Plaintiff California Gun Rights Foundation ("CGF") is a nonprofit foundation incorporated under the laws of California with its principal place of business in Sacramento, California. CGF serves its members, supporters, and the public through educational, cultural, and judicial efforts to defend and advance Second Amendment and related rights. CGF has thousands of members and supporters in California, including members in Los Angeles County and the Individual and Retailer Plaintiffs herein. The interpretation and enforcement of the Second Amendment directly impacts CGF's organizational interests, as well as the rights of CGF's members and supporters. CGF has expended and diverted resources, and has been adversely and directly harmed, because of Defendants' laws, policies,

practices, and customs challenged herein. CGF brings this action on behalf of itself, its members, supporters who possess all the indicia of membership, and similarly situated members of the public. Individual Plaintiffs and Retailer Plaintiff are members of CGF.

18.     Plaintiff National Rifle Association of America ("NRA") is a nonprofit corporation organized under the laws of the State of New York with its principal place of business in Fairfax, Virginia. The NRA is America's leading provider of gun-safety and marksmanship education for civilians and law enforcement. It is also an important defender of the Second Amendment to the United States Constitution. The NRA has over five million members, and its programs reach millions more. NRA's members reside both outside and within the State of California, including in Los Angeles County, California. NRA represents its members and supporters and brings this action on behalf of itself, its members, supporters who possess all the indicia of membership, and similarly situated members of the public. NRA has expended and diverted resources, and is adversely and directly harmed, because of Defendants' laws, policies, orders, practices, and customs challenged herein.

19.     Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a nonprofit organization incorporated under the laws of Delaware with a place of business in Sacramento, California. The purposes of FPC include defending and promoting the People's rights – especially but not limited to First and Second Amendment rights –

advancing individual liberty, and restoring freedom. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs. FPC's has members in the State of California, including in Los Angeles County, California. FPC represents its members and supporters—who include gun owners, individuals who wish to acquire firearms and ammunition, licensed California firearm retailers, shooting ranges, trainers and educators, and others—and brings this action on behalf of itself, its members, supporters who possess all the indicia of membership, and similarly situated members of the public. FPC has expended and diverted resources, and is adversely and directly harmed, because of Defendants' laws, policies, orders, practices, and customs challenged herein. Individual Plaintiffs and Retailer Plaintiffs are members of FPC.

*State Defendants*

20.    Defendant Gavin Newsom is the current Governor and Commander-in-Chief of the State of California, and is responsible for executing and administering California's laws, orders, customs, practices, and policies at issue in this lawsuit. Defendant Newsom is sued in his official capacity. Defendant Newsom issued Executive Order N-33-20, and prior orders proclaiming a state of emergency to exist in California due to the threat of COVID-19.

21.     Defendant Sonia Y. Angell is the California Public Health Officer. Defendant Angell is the head of the California Department of Public Health ("CDPH"). The CDPH is the State department responsible for public health in California and a subdivision of the California Health and Human Services Agency ("CHHSA"). It enforces many of the laws in the California Health and Safety Codes, including those at issue herein. Defendant Angell is sued in her official capacity.

*Local Defendants*

22.     Defendant County of Los Angeles, California is a local governmental entity organized under the Constitution and laws of the State of California, possessing legal personhood within the meaning of 42 U.S.C. § 1983. The County is responsible for executing and administering its laws, orders, customs, practices, and policies at issue in this lawsuit.

23.     Defendant Alex Villanueva is sued in his official capacity as Sheriff of Los Angeles County and head of Defendant Los Angeles County's Sheriff's Department, as well as in his capacity as Defendant Los Angeles County's Director of Emergency Operations, with inherent and delegated powers to execute and enforce laws, orders, customs, and/or practices at issue in this lawsuit.

24.     Defendant Barbara Ferrer is Director of the Los Angeles County Department of Public Health, a department of Defendant County of Los Angeles,

with inherent and delegated powers to execute and enforce laws, orders, customs, and/or practices at issue in this lawsuit. She is sued in her official capacity.

25.    Defendant Justin Hess is the City Manager of, as well as the Director of Emergency Services for, Defendant City of Burbank California, with inherent and delegated powers to execute and enforce laws, orders, customs, and/or practices at issue in this lawsuit. He is sued in his official capacity.

26.    Defendant City of Burbank, California is a local governmental entity organized under the Constitution and laws of the State of California, possessing legal personhood within the meaning of 42 U.S.C. § 1983. The City is responsible for executing and administering its laws, orders, customs, practices, and policies at issue in this lawsuit.

27.    Defendant Eric Garcetti is the Mayor of Defendant City of Los Angeles, California, with inherent and delegated powers to execute and enforce laws, orders, customs, and/or practices at issue in this lawsuit. He is sued in his official capacity.

28.    Defendant City of Los Angeles, California is a local governmental entity organized under the Constitution and laws of the State of California, possessing legal personhood within the meaning of 42 U.S.C. § 1983. The City is responsible for executing and administering its laws, orders, customs, practices, and policies at issue in this lawsuit.

1

**JURISDICTION AND VENUE**

2

3

29.    This Court has jurisdiction over all claims for relief pursuant to 28

4

U.S.C. §§ 1331, 1343, 2201, and 2202, and 42 U.S.C. §§ 1983 and 1988, as this

5

action seeks to redress the deprivation under color of the laws, statutes, ordinances,

6

7

regulations, customs, and usages of the State of California, of the rights, privileges

8

or immunities secured by the United States Constitution.

9

30.    Venue lies in this Court under 28 U.S.C. § 1391, as the events giving

10

11

rise to Plaintiffs' causes of action arose or exist in this District in which the action is

12

brought. Venue is also proper under 28 U.S.C. § 1391, as the venue rules of this State

13

14

specifically permit this action to be filed in Los Angeles, since Defendants maintain

15

offices within this District. Cal. Code of Civ. Pro. § 401(1).

16

**STATEMENT OF FACTS COMMON TO ALL CLAIMS**

17

18

31.    The Second Amendment to the United States Constitution provides:

19

20

A well-regulated Militia being necessary to the security of
a free State, the right of the people to keep and bear Arms
shall not be infringed.

21

22

32.    The Second Amendment "guarantee[s] the individual right to possess

23

and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554

24

25

U.S. 570, 592 (2008). And it "elevates above all other interests the right of law-

26

abiding, responsible citizens to use arms in defense of hearth and home." *Id* at 635.

27

28

33.     The Second Amendment is fully applicable to the States through the Fourteenth Amendment's Due Process and Privileges or Immunities Clauses. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010); *id*. at 805 (Thomas, J., concurring).

34.     The Fourteenth Amendment to the United States Constitution provides in pertinent part:

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

35.     Individuals have a right to keep and bear arms, including but not limited to, buying, selling, transferring, transporting, and carrying firearms, ammunition, magazines, and appurtenances, under the Second and Fourteenth Amendments to the United States Constitution.

36.     Individuals have a right to due process of the law under the Fifth and Fourteenth Amendments to the United States Constitution, the fundamental precepts which of protect them against the enforcement of vague, ambiguous, and arbitrary and capricious laws.

37.     Licensed firearm and ammunition retailers are necessary to individuals' lawful acquisition of firearms and ammunition, including but not limited to complying with federal and state background check requirements.

38.     On or about March 4, 2020, Defendant Governor Newsom proclaimed a State of Emergency as a result of COVID-19.

39.     Effective March 19, 2020, Governor Gavin Newsom signed Executive Order N-33-20,[1] directing all individuals living in California to "stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors."  Executive Order N-33-is in place until further notice.  The Governor's Order directed all California residents "to heed" the directives of the State Public Health Officer, Defendant Angell, and incorporated into the Executive Order Defendant Angell's Order of the same date.[2] An express purpose of Defendant Angell's Order is to "establish consistency across the state."

40.     As augmented by the Order of Defendant Angell incorporated into it, Executive Order N-33-20 states that the Governor "may designate additional

_____

[1]Executive Department, State of California, Executive Order N-33-20, https://www.gov.ca.gov/wp-content/uploads/2020/03/3.19.20-attested-EO-N-33-20-COVID-19-HEALTH-ORDER.pdf

[2] Order of the State Public Health Officer, Mar. 19, 2020, https://www.cdph.ca.gov/Programs/CID/DCDC/CDPH%20Document%20Library/COVID-19/Health%20Order%203.19.2020.pdf.

sectors" but does not identify any additional sectors nor provide definitions or clarity on the scope and extent of such sectors. Further, the Order provides that Californians working in critical infrastructure sectors may continue their work because of the importance of these sectors to Californians' health and well-being. Executive Order N-33-20 states that Californians must nonetheless have access to "necessities," but the term is not fully defined. It provides that people may "leave their homes or places of residence, whether to obtain or perform" critical infrastructure, or "to otherwise facilitate authorized necessary activities," so long as they practice social distancing. But Executive Order N-33-20 does not explain what is meant by "authorized necessary activities."

41.   Executive Order N-33-20 "shall be enforceable pursuant to California law, including, but not limited to, Government Code section 8665."

42.   Government Code section 8665 states:

> Any person who violates any of the provisions of this chapter or who refuses or willfully neglects to obey any lawful order or regulation promulgated or issued as provided in this chapter, shall be guilty of a misdemeanor and, upon conviction thereof, shall be punishable by a fine of not to exceed one thousand dollars ($1,000) or by imprisonment for not to exceed six months or by both such fine and imprisonment.

43.   On the same day the Governor and Defendant Angell issued their Orders (March 19, 2020), the County of Los Angeles Department of Public Health, through its Health Officer, issued an Order titled, "Safer at Home Order for Control

of COVID-19" (County Order) which addressed, among other things, the "Closure of Non-Essential Businesses and Areas." The County Order states that it does not prohibit any individual or family from "shopping at Essential Businesses," provided social distancing is practiced "to the extent practicable." But the County Order "requires all … non-essential businesses to close" and do so "immediately." The County Order's reach extends to "all cities in Los Angeles County (except the cities of Pasadena and Long Beach)." And a "[v]iolation of this Order is a misdemeanor punishable by imprisonment, fine, or both under California Health and Section Code 120295 *et seq*."

44.     Health & Safety Code section 120295 states:

> Any person who violates Section 120130 or any section in Chapter 3 (commencing with Section 120175, but excluding Section 120195), is guilty of a misdemeanor, punishable by a fine of not less than fifty dollars ($50) nor more than one thousand dollars ($1,000), or by imprisonment for a term of not more than 90 days, or by both. He or she is guilty of a separate offense for each day that the violation continued.

45.     "Non-Essential Retail Businesses" are defined as "retail establishments that provide goods and services to the public that do not come within the definition of Essential Businesses set forth in Paragraph 13 of this Order." Paragraph 13 defines "Essential Businesses." "Essential Businesses" are … other establishments engaged in the retail sale of …household consumer products … and this includes "stores that

sell … other … products necessary to maintaining the safety … and essential operation of residences."  Other "Essential Businesses" include:

(a)  "establishments engaged in the retail sale of … household consumer products … includ[ing] stores that sell … products necessary to maintaining the safety, sanitation, and essential operation of residences";…

(b)  "Food cultivation, including farming, livestock, and fishing";…

(h)  "service providers who provide services to maintain the safety, sanitation, and essential operation to properties and other Essential Businesses;…

(n)  "Businesses that supply other Essential Businesses with the support or supplies necessary to operate";…

(q)  "Businesses that provide parts and service for Essential Infrastructure"; … and,

(u)  "Military/Defense Contractors/FFRDC (Federally Funded Research and Development Centers.)" [3]

46.     Also on March 19, 2020, Defendant Mayor Garcetti and Defendant City of Los Angeles issued an Order titled, "Public Order Under City of Los Angeles

_____

[3] http://file.lacounty.gov/SDSInter/lac/1070029_COVID-19_SaferAtHome_HealthOfficerOrder_20200319_Signed.pdf.

Emergency Authority," with the subject of "SAFER AT HOME" ("City of LA Order") [4] which ordered and declared "[u]nder the provisions of Section 231(i) of the Los Angeles City Charter and Chapter 3, Section 8.27 of the Los Angeles Administrative Code," *inter alia*, "all persons living within the City of Los Angeles [] to remain in their homes," and  "all businesses within the City of Los Angeles [] to cease operations that require in-person attendance by workers at a workplace (including, without limitation, indoor malls and indoor shopping centers, including all stores except for those stores considered essential activities…)" [5]

47.   According to the City of LA Order, failure to comply "shall constitute a misdemeanor subject to fines and imprisonment." And in the City of LA Order, Defendant Mayor Garcetti "urge[d] the Los Angeles Police Department and the City Attorney to vigorously enforce this Order via Sections 8.77 and 8.78 of the Los Angeles Administrative Code."

---

[4] March 19, 2020 "Public Order Under City of Los Angeles Emergency Authority", online at https://www.lamayor.org/sites/g/files/wph446/f/article/files/SAFER_AT_HOME_ORDER2020.03.19.pdf.

[5] "CITY OF LOS ANGELES COVID-19 ORDERS" (March 19, 2020 Order listed under the caption "Below are the Emergency Orders and Memorandum from Mayor Eric Garcetti pertaining to COVID-19"), online at https://www.lamayor.org/COVID19Orders.

48.     On or about March 22, 2020, in accordance with Defendant Newsom's Executive Order N-33-20 and her own Order of the State Public Health Officer, Defendant Angell designated a list of "Essential Critical Infrastructure Workers."[6]

49.     On March 24, 2020, Defendant County of Los Angeles Sheriff and Director of Emergency Operations Alex Villanueva declared all firearms retailers in the County of Los Angles to be "non-essential."

50.     Also on or about March 24, 2020, in accordance with Defendant Newsom's Executive Order N-33-20, the San Diego Sheriff declared that firearm retailers would perform a "valuable public service" during the coronavirus pandemic and will be allowed to remain open. Sheriff Gore stated that licensed gun stores help maintain public safety by ensuring that buyers submit to a ten-day waiting period and pass a state license check. Sheriff Gore also warned that gun buyers could turn to the "black market" for illegal weapons if they can't buy them legally at licensed stores.[7]

---

[6] Essential Critical Infrastructure Workers, Mar. 22, 2020,
https://covid19.ca.gov/img/EssentialCriticalInfrastructureWorkers.pdf.

[7] NBC San Diego, "Sheriff Will Not Close San Diego County Gun Stores,"
https://www.nbcsandiego.com/news/investigations/sheriff-will-not-close-san-diego-county-gun-stores/2292399/.

51.    The next day, March 25, 2020, Defendant Sheriff Villanueva "told FOX 11 he's adding 1,300 deputies to patrol, doubling the current amount, and in an effort to prevent the spread of the coronavirus in jail, he has released 10% of the inmate population from county jails…"[8]

52.    Later the same day, Sheriff Villanueva announced that the *enforcement* of the closure of firearm retailers was temporarily suspended; pending a decision on their classification as non-essential by Defendant Governor Newsom.[9]

53.    The next day, March 26, 2020, Defendant Governor Newsom issued a public statement that each of the 58 county sheriffs had discretion to determine the "essential" nature of firearm and ammunition retailers in each respective county in the State.[10]

54.    On March 26, 2020, Defendant Sheriff Villanueva, through the Los Angeles County Sheriff's Twitter account, released an image of his March 26, 2020

---

[8] FOX 11 Los Angeles, "LA County Sheriff orders gun stores to close; adds 1,300 deputies to patrol," https://www.foxla.com/news/la-county-sheriff-orders-gun-stores-to-close-adds-1300-deputies-to-patrol.

[9] NBC Los Angeles, "LA County Sheriff Reverses Decision on Closing Gun Shops," https://www.nbclosangeles.com/news/local/coronavirus-covid-19-los-angeles-county-sheriff-gun-shops-second-amendment/2334792/.

[10] ABC News Los Angeles, "Deja vu: LA County sheriff closes gun shops again," https://abcnews.go.com/US/wireStory/deja-vu-la-county-sheriff-closes-gun-shops-69822931

Order stating, "[b]y order of the Sheriff of Los Angeles County, gun and ammunition stores are not considered essential businesses and must close to the general public, in Compliance with Executive Order-N-33-20 and County of Los Angeles Safer at Home Order for Control of COVID-19."[11]

55.     Later the same day, Defendant Sheriff Villanueva, lifting his temporary suspension of his prior order, formally reversed his position and stated that firearms retailers are now considered "non-essential" and "must close to the general public, in compliance with the Executive Order N-33-20 and the County of Los Angeles Safer at Home Order for Control of COVID-19."[12]

56.     Defendant Sheriff Villanueva's March 26 Order has a limited exception allowing people who "have already purchased a firearm" and who *already* have "a valid California Firearms Safety Certificate (CFS)" to "simply [] take possession of their firearm."

57.     Defendant Sheriff Villanueva's March 26 Order specified that licensed firearm retailers would be permitted to sell ammunition only to "security guard

---

[11] https://twitter.com/LACoSheriff/status/1243237017049128961/photo/1.

[12] APNews.com, "Deja vu: LA County Sheriff Closes Gun Shops Again," https://apnews.com/c134e74f8813297d139b1d217a48c932.

companies." Sheriff Villanueva's Order is a de facto ban on the sale and transfer of ammunition.

58.    Defendant Sheriff Villanueva's March 26 Order is a de facto ban on the sale and transfer of firearms and new California Firearms Safety Certificate testing and issuance.

59.    Defendant Sheriff Villanueva's March 26 Order applies to and is being enforced "in the 42 contract cities and unincorporated Los Angeles County areas under [his] jurisdiction." To make circumstances even less clear, Defendant Sheriff Villanueva "deferred to the discretion of each individual chief of police" for each non-contract city in the County of Los Angeles.

60.    "About half of the 88 cities in [Los Angeles] county" – about 46 of the total number of cities – "contract for law enforcement services from the County of Los Angeles," and "their 'police department' is Los Angeles Sheriff's Department ("LASD")."[13]

61.    Thus, 42 cities within the County of Los Angeles are subject to the Defendant Sheriff Villanueva's March 26 Order, and the balance of cities within the County of Los Angeles each have their own interpretations of State Defendants' and

_____

[13] kcet.org, "A Guide for the Politically Perplexed in L.A. County", online at https://www.kcet.org/socal-focus/a-guide-for-the-politically-perplexed-in-la-county.

Los Angeles County Defendants' various orders, delegations, directives, policies, practices, and customs to enforce.

62.     According to a March 26, 2020, Associated Press News ("AP News") report by Stefanie Dazio and Don Thompson, "[Defendant Los Angeles] County Supervisor Sheila Kuehl said while she personally thinks gun stores are not essential businesses, the conflicting findings by [Defendant Los Angeles County Sheriff] Villanueva and the [Defendant C]ounty likely need to get sorted out by a judge." She was reported to have said: "Let them go to court about it."[14]

63.     According to that same AP News report, Defendant City of Los Angeles "officials have deemed gun shops to be nonessential and must close, and that, according to City of Los Angeles City Attorney Mike Feuer, only "life-sustaining" businesses, such as grocery stores and pharmacies, can be open. Feuer was also reported to have said: "There's nothing essential about being able to purchase a new handgun."

64.     On March 27, 2020, this action was commenced against the State Defendants and County of Los Angeles Local Defendants.

65.     Plaintiff Brandy purchased his first firearm on March 18, 2020. He was eligible to pick up his firearm from Oak Tree Gun Club (an establishment in Los

---

[14] Thus, Plaintiffs bring the instant action.

Angeles County) on March 28, 2020. Under Defendant Sheriff Villanueva's current Order, Plaintiff Brandy may not purchase any ammunition for it. Plaintiff Brady is also prohibited from purchasing an additional self-defense firearm, much less the ammunition required to actually use it, such as a backup handgun or long gun in case his primary firearm fails or if circumstances suggest or require the use of a different type of firearm, due to Defendant Sheriff Villanueva's March 26 Order. Plaintiff Brandy does not own or possess any ammunition and cannot purchase ammunition except through a licensed ammunition vendor under California law. *See* California Penal Code sections 30352, 30370. Thus, Plaintiff Brandy is prohibited from exercising his right to keep and bear loaded, operable firearms for self-defense of himself and his family, including in his home.

66.     Plaintiff Daemion Garro and Gun World have been forced to shut down, reopen, and shut down again due to the extremely vague nature of Governor Newsom's Executive Order and the flip-flopping nature of Sheriff Villanueva's position on the essential nature of firearms retailers. This forced shutdown has prevented Plaintiffs Garro and Gun World from providing necessary services and products to ensure that their customers can exercise their fundamental rights to own firearms for self-preservation. Plaintiff Garro and Gun World business and activities of selling firearms are lawful and necessary for the safety and welfare of the public. Plaintiff Garro's business and activities of selling firearms to the general public are

protected by the United Sates Constitution, by the laws of the State of California, and authorized under the State and County Orders. Further, as a law-abiding gun owner himself, Plaintiff Garro's individual rights to keep and bear arms are being deprived in the same manner as every other law-abiding gun owner in California who is being and will continue to be barred from obtaining any additional ammunition for the firearms he currently owns and any different or additional firearms he may reasonably require to exercise those rights, for so long as the challenged policies, practices, customs are permitted to remain in effect.

67.    Cities within the jurisdiction of the Defendant Los Angeles County Sheriff's Order have admitted to being confused about the State Defendants' and Los Angeles County Local Defendants' differing and changing positions on the essential nature of firearm retailers and ranges, and their ability to continue to operate.

68.    The Los Angeles County Sheriff provides contract law enforcement for dozens of cities in Los Angeles County, including the City of Cerritos, where Plaintiff Match Grade is located, and in Santa Clarita, where Plaintiff A Place To Shoot is located. [15]

_____

[15] See MUNICIPALITIES: Municipal Police Services - Contract Cities, online at http://shq.lasdnews.net/content/uoa/CLB/CLEB%20Municipalities.pdf.

69.     Plaintiff Match Grade retained counsel to obtain legal advice in relation to Defendant Sheriff Villanueva's March 26 Order to determine whether it could continue to operate. Further, Plaintiff Match Grade has ceased new sales due to Defendant Sheriff Villanueva's March 26 Order which has resulted in Plaintiff Match Grade having to reduce hours of staff. Plaintiff Match Grade believes that it will suffer further harm, including economic damages, and be forced to lay off its specialized staff if the offending State and local orders and enforcement actions are not enjoined.

70.     Further, as a law-abiding gun owner himself, the individual rights to keep and bear arms of Plaintiff Montes (the owner and operator of Match Grade) are being deprived in the same manner as every other law-abiding gun owner in California who is being and will continue to be barred from obtaining any additional ammunition for the firearms he currently owns and any different or additional firearms he may reasonably require to exercise those rights, for so long as the challenged policies, practices, customs are permitted to remain in effect.

71.     The City of Burbank issued the following statement on March 25, 2020, regarding firearm and ammunition stores:

> There has been confusion on certain categories of essential businesses, including gun shows. The County has clarified gun shops are essential businesses under the Safer at Home Order, which aligns with the Governor's stay at home executive order, and may remain open. Unfortunately, the Sheriff added to the confusion yesterday when he announced gun shops should be

closed, but last night he reversed himself. The City is under the jurisdiction of Los Angeles County Public Health for purposes of the pandemic, and as such the City follows their orders.[16]

72.     However, on March 27, 2020, Defendant Hess and Defendant City of Burbank issued a new order ("Burbank March 27 Order") that only allows "essential businesses" under Local Defendants' Safer at Home for Control of COVID-19 to continue to operate subject to the City's operating rules. A violation of the City's order is a misdemeanor crime under Burbank Municipal Code Section 1-1-105.[17]

73.     State Defendant Governor Newsom's Executive Order N-33-20, and State Defendant State Public Health Officer Angell's March 19, 2020 Order and March 22, 2020 list of "Essential Critical Infrastructure Workers," are collectively referred to as the "State Defendants' Orders".

74.     Local Defendant City of Burbank, California and Local Defendant Justin Hess's March 25, 2020 Statement, and March 27, 2020, document captioned "A Proclamation Instituting New Social Distancing Rules in the City of Burbank to Prevent the Spread of COVID-19 by Director of Emergency Services," are collectively referred to as the "Burbank Defendants' Orders".

---

[16] Burbank Police COVID-19 Updates, https://www.burbankpd.org/covid19.

[17] Burbank March 27 Order, online at https://www.burbankca.gov/home/showdocument?id=53116.

75.    Local Defendant City of Los Angeles, California and Local Defendant Mayor Eric Garcetti's "Public Order Under City of Los Angeles Emergency Authority" is collectively referred to as the "City of Los Angeles Defendants' Order".

76.    Local Defendant County of Los Angeles, California, and Local Defendant Director of the Los Angeles County Department of Public Health Barbara Ferrer's "Safer at Home Order for Control of COVID-19" order, and Local Defendant Los Angeles County Sheriff Alex Villanueva's various Orders and declarations, including his March 26 Order, are collectively referred to as the "County of Los Angeles Defendants' Orders".

77.    Plaintiffs, Plaintiffs' Members and customers, and those similarly situated to them, seek to exercise their right to keep and bear arms for self-defense of themselves and their families, especially in times of crisis such as this.

78.    The vague, arbitrary and capricious, overbroad, and mercurial nature of the Defendants' contradictory orders, policies, practices, customs, declarations, and enforcement actions has only served only to further confuse Plaintiffs, Plaintiffs' Members and customers, and those similarly situated to them, who seek to exercise their rights and understand the laws without being subject to criminal and civil liability for violations of said orders.

79.     Notably, on March 28, 2020, the Department of Homeland Security, Cyber-Infrastructure Division ("CISA"), issued an "ADVISORY MEMORANDUM ON IDENTIFICATION OF ESSENTIAL CRITICAL INFRASTRUCTURE WORKERS DURING COVID-19 RESPONSE," online at https://bit.ly/cisa-guidance-2020-3-28, under its Web page for "Guidance on the Essential Critical Infrastructure Workforce" during the COVID-19 pandemic.[18] While the CISA's guidance is advisory in nature, its findings and conclusions are inherently entitled to great weight in this context, particularly since they were "developed, in collaboration with other federal agencies, State and local governments, and the private sector" for the specific purpose of "help[ing] State, local, tribal and territorial officials as they work to protect their communities, while ensuring continuity of functions critical to public health and safety, as well as economic and national security." To that very end, CISA specifically determined that "[w]orkers supporting the operation of firearm or ammunition product manufacturers, retailers, importers, distributors, and shooting ranges" fall squarely within the "critical infrastructure workforce."

---

[18] Guidance on the Essential Critical Infrastructure Workforce, https://www.cisa.gov/publication/guidance-essential-critical-infrastructure-workforce.

80.     As to all claims made in a representative capacity herein, there are common questions of law and fact that substantially affect the rights, duties, and liabilities of many similarly-situated California residents and visitors who knowingly or unknowingly are subject to the California statutes, regulations, policies, practices, and customs in question.

81.     The relief sought in this action is declaratory and injunctive in nature, and the action involves matters of substantial public interest. Considerations of necessity, convenience, and justice justify relief to individual and institutional Plaintiffs in a representative capacity. Further, to the extent it becomes necessary or appropriate, the institutional Plaintiffs are uniquely able to communicate with and provide notice to their thousands of California members and constituents who are or would be party to any identifiable class of individuals for whose benefit this Court may grant such relief.

**COUNT ONE**
**DEPRIVATION OF CIVIL RIGHTS**
**RIGHT TO KEEP AND BEAR ARMS**
**U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983**

82.     Plaintiffs incorporate herein by reference paragraphs 1 through 81 as if fully set forth herein.

83.     There is an actual and present controversy between the parties.

84.    Defendants' orders, directives, policies, practices, customs, and enforcement actions prohibit law-abiding individuals from purchasing firearms and ammunition for the purpose of protecting themselves and their families (or for any other purpose). Independently and collectively, these stand as a bar on firearms acquisition and ownership and amount to a categorical ban on and infringement of the right to keep and bear arms and the privileges and immunities of citizenship.

85.    State and local governments do not have the power categorically to prohibit the keeping and bearing of arms by law-abiding people, nor to close off the channels of access by which individuals lawfully obtain and transfer firearms and ammunition.

86.    Because firearm and ammunition transfers must be facilitated by a licensed dealer, Defendants' orders, directives, policies, practices, customs, and enforcement actions amount to a ban on purchasing and transferring firearms and ammunition. As a result, law-abiding citizens who wish to comply with state laws – by submitting to, for example, background checks, waiting period laws, in-person transfers and safety tests and demonstrations – are foreclosed from acquiring firearms and ammunition legally.

87.    Defendants' policies, laws, acts, and omissions are untailored and irrational, and expressly allow some goods retailers to continue operating but prevent Retailer Plaintiffs and others similarly situated from operating and selling their

goods to their customers and members of the public, including Individual Plaintiffs and Institutional Plaintiffs' members, thereby violating Plaintiffs' rights. The CISA's recently published "Guidance on the Essential Critical Infrastructure Workforce" strongly punctuates this point, through its considered determination that "[w]orkers supporting the operation of firearm or ammunition product manufacturers, retailers, importers, distributors, and shooting ranges" fall squarely within the "critical infrastructure workforce" and thus should not only be permitted to, but supported in, continuing their essential operations for the benefit of the public.

88.    Individual and Retailer Plaintiffs reasonably fear that Defendants will enforce against them State Defendants' Orders, Burbank Defendants' Orders, City of Los Angeles Defendants' Order, County of Los Angeles Defendants' Orders, and Defendants' related policies, practices, and customs.

89.    Institutional Plaintiffs reasonably fear that Defendants will enforce against their members –including Individual and Retailer Plaintiffs and similarly situated persons – the challenged laws, policies, practices, and customs.

90.    Defendants' laws and ongoing enforcement and threats of enforcement of State Defendants' Orders, Burbank Defendants' Orders, City of Los Angeles Defendants' Order, County of Los Angeles Defendants' Orders, against the Plaintiffs and/or the Plaintiffs' members, as well as their ongoing customs, polices, and/or practices of State Defendants' Orders, Burbank Defendants' Orders, City of Los

Angeles Defendants' Order, County of Los Angeles Defendants' Orders,, violate the Second and Fourteenth Amendments.

91.     Defendants' laws, policies, practices, customs, and ongoing enforcement and threats of enforcement of their various orders and directives against the Plaintiffs, the Plaintiffs' members and customers, and similarly situated members of the public, which prevent the Plaintiffs, Plaintiffs' members and customers, and similarly situated members of the public from exercising their rights, including the purchase, sale, transfer of, and training with constitutionally protected arms, ammunition, magazines, and appurtenances – are thus causing injury and damage that is actionable under 42 U.S.C. § 1983.

### COUNT TWO
### DEPRIVATION OF CIVIL RIGHTS
### DUE PROCESS
### U.S. CONST., AMENDS. V AND XIV, 42 U.S.C. § 1983

92.     Plaintiffs incorporate herein by reference paragraphs 1 through 91 as if fully set forth herein.

93.     There is an actual and present controversy between the parties.

94.     Defendants' conflicting and confusing orders, policies, practices, customs, and enforcement actions are arbitrary and capricious, overbroad, unconstitutionally vague, and violate Plaintiffs, Plaintiffs' members and customers, and similarly situated members of the public's Due Process rights.

95.     No one of reasonable intelligence, or high intelligence for that matter, with honest intentions of complying with the various conflicting directives at the state and local level could determine to any reasonable degree of certainty whether a firearm and/or ammunition retailer is or is not an "essential" business that can or should remain open to serve the constitutionally protected needs of the general public in this time of crisis.

96.     The general edict of Defendant Governor Newsom in Executive Order N-33-20 expressly declared that "all residents are directed to immediately heed the current State public health directives." He specifically cited and incorporated into the edict those directives set forth in the Safer at Home Order for Control of COVID-19. Besides his later *ad hoc* response to a question posed at a news conference, stating he would ultimately leave it to local sheriffs to determine whether gun shops in the localities are "essential," the Governor has not since issued any formal statements or other amendments to his initial Order advising residents to follow the directives of anyone other than the State Public Health Officer on the matter of which retailers may continue operating as "essential" businesses.

97.     An *ad hoc* statement of the Governor at a news conference, reaching only those who happened to be tuned into the broadcast or who read a news article about it later, cannot reasonably be deemed to have superseded an official written publication posted on the Governor's website and circulated statewide. Similarly,

such a statement could not reasonably be deemed to have superseded the Local Defendants' orders. The County's Order specifically provides that it "does not supersede any stricter limitation imposed by a local public entity within the *Los Angeles County Public Health Jurisdiction*." Because the County Sheriff is not part of the public health jurisdiction, any "stricter limitation" he may have declared in this respect would *not* supersede this Order, leaving it unaffected. Consequently, residents of Los Angeles County are effectively left with two distinctly different standards on this same subject – the orders of the State and County Health Officers, which do *not* expressly deem firearm retailers as "non-essential," and the Sheriff's declaration which does expressly deem them as "non-essential." This conflict alone produces constitutionally intolerable vagueness because residents have no clear idea or notice of which of these directives applies in the first instance.

98.     Moreover, to whatever extent the Governor's *ad hoc* press conference declaration deferring to local sheriffs here may have the force of law, as the County Sheriff is currently using it, that declaration itself violates fundamental principles of due process, because it sets the stage for the very sort of arbitrary and capricious enforcement at the heart of the void-for-vague doctrine. If allowed to stand, citizens around the state will be faced with varying declarations, edicts, and orders concerning whether and under what circumstances firearm retailers may remain in operation as "essential" service providers. This can already be seen in the existing

conflict between San Diego and Los Angeles County, where the residents of these two Southern California counties within close proximity to one another are being subjected to two completely different forms of law enforcement concerning the same subject even though it all of them in the very same way.

99.    And what is to be made of the 46 "non-contract" cities within the County of Los Angeles that are *not* subject to the Defendant Sheriff Villanueva's declaration that firearms retailers are "non-essential?" Since, according to the Sheriff's own words, the declaration does not apply to these cities, all of them will apparently be left to establish and implement their individual determinations, creating the possibility of significant variation throughout the entire County.

100.   A similar breed of arbitrariness subsists within the County's Safer at Home Order itself, as the order classifies as "essential" a variety of businesses which have no clear connection to *essential* goods and services, particularly in a time of crisis. For example, mowing, landscaping, gardening, and personal grooming services are deemed to expressly fall within this category, while firearms retailers are not, even though their connection to the *essentials* of life in a crisis – securing the fundamental right of defense of the self and home through all lawful means – is crystal clear, as highlighted in CISA's published guidelines.

101.   Additionally, while the Safer at Home Order does not expressly include firearms retailers as "essential" businesses, it does not expressly *exclude* them either,

creating further confusion since, again, the Order stands independent of and unaffected by the declaration of the Sheriff. For instance, Paragraph 13(a) of the Order defines "Essential Businesses" as including "establishments engaged in the retail sale of … other household consumer products … [including] stores that sell … products necessary to maintaining the safety … and essential operation of residences." Paragraph 13(h) also "other service providers who provide services to maintain the safety … and essential operation of properties and other Essential Businesses." And Paragraph 13(n) includes businesses that "supply other Essential Businesses with the support or supplies necessary to operate." Paragraph 13(o) protects "businesses that ship … goods … to residences, Essential Businesses[.]"

102.   As so defined, the Order could reasonably be interpreted to mean firearm retailers fall within the intended definition of "essential businesses," contrary to the Sheriff's "non-essential declaration.

103.   Plaintiffs are comprised of individuals eligible to possess and acquire firearms and ammunition, firearm and ammunition retailers, education facilities and shooting ranges, and institutional entities who desire to shop, purchase, transfer and sell firearms, including ammunition, magazines, and appurtenances, but are precluded from doing so — without reasonable fear of criminal prosecution — as a direct result of the unlawful, vague, and unduly overbroad laws, orders, policies, practices, customs, and enforcement issued by Defendants in this case.

104.   Retailer Plaintiffs, and others similarly situated, are firearms dealers supplying retail sales and services for self-defense and law enforcement (itself an essential service). These sales include items like firearms, ammunition, accessories, appurtenances, survival gear, and other consumer products both at retail and online (including shipping). The services include those that are mandated by state law to effect firearm transfers, such as the initiation of background checks, administration and collection of personal identifying data (including fingerprints), administration of waiting period laws, administration of firearm safety tests, and safe handling demonstrations, all of which must be conducted in person pursuant to state law.

105.   These same Plaintiffs fall within the essential meaning of "Essential Businesses" definitions in the County's Safer at Home Order, and within any other reasonable definition of that term, because they are establishments engaged in the retail sale of household consumer products necessary for maintaining the safety of its residents, including the sale or transfer of pistols, rifles, shotguns, ammunition, accessories, and components necessary for the defense of their home, selves, and defense of others.  They are service providers who provide products such as firearms, ammunition, and servicing of same that are needed to maintain the safety and essential operation of residences (home and personal defense) and other essential businesses.   They are businesses that ship goods to residences and essential

businesses. They are, in every meaningful sense, "essential," as CISA has recognized and as San Diego County has declared in expressly deeming them such.

106.   However, the subject Orders deprive or fail to accord these business such status; they do not define critical terms; they encompass protected and non-protected actions; they omit definitions of key terms; they operate as complete bans; they do not require specific intent to commit an unlawful act; and they permit and encourage arbitrary and erratic arrests and convictions with too much discretion committed to law enforcement. This breadth and built-in vagueness run afoul of the due process clause because the subject Orders fail to give adequate guidance to those who would be law-abiding, to advise them of the nature of the offense with which they may be charged, or to guide courts in trying those who are accused of violating such Orders. Plaintiffs, including retailers and consumers, cannot be required to guess at the meaning of such Orders. As a direct result, such Orders must be invalidated on their face and as applied.

107.   The subject Orders are also unconstitutionally vague and overly broad because they are worded in a standard-less way that invites arbitrary enforcement. This impermissible uncertainty is illustrated when sheriffs from two different counties (San Diego and Los Angeles) openly and publicly disagree on whether gun shops/firearm retail stores (including shipping activities) are essential businesses or not. If the Governor of the State of California, the State Public Health Officer, 58

county sheriffs, the 88 cities within Los Angeles County, the various county counsel, city leaders and police chiefs, and local health officials of each municipality cannot agree on and clearly declare what individuals and businesses are or are not "covered" under the State Defendants' orders, and how local authorities should interpret and apply them, then it is neither reasonable nor feasible for persons of reasonable intelligence and honest intentions, including Plaintiffs and Plaintiffs' members and customers, to understand and abide by such Orders.

108.   Defendants' laws and ongoing enforcement and threats of enforcement of their various orders and directives against the Plaintiffs, the Plaintiffs' members and customers, and similarly situated members of the public, as well as their ongoing policies and practices are unconstitutionally vague, arbitrary and capricious, fail to provide adequate notice, and place Plaintiffs, Plaintiffs' members and customers, and similarly situated members of the public at risk of serious criminal and civil liability, including arrest, prosecution, loss of rights, fines, and, with respect to the Retailer Plaintiffs, loss of their licenses. Defendants' orders and actions violate the Fifth and Fourteenth Amendment rights of Plaintiffs, Plaintiffs' members and customers, and similarly situated members of the public and are thus causing injury and damage that is actionable under 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

1.      A declaratory judgment that the operation of firearm and ammunition product manufacturers, retailers, importers, distributors, and shooting ranges are essential under the State Defendants' Orders and the Federal Government's March 28, 2020 "Essential Critical Infrastructure Workforce" Guidance and allowed to operate, or in the alternative, that State Defendants' Orders, enforcement policies, practices, and customs individually and/or collectively prohibit the operation of licensed firearm and ammunition product manufacturers, retailers, importers, distributors, and shooting ranges and thus individually and/or collectively violate the Second, Fifth, and Fourteenth Amendments;

2.      If State Defendants' Orders, enforcement policies, practices, and customs individually and/or collectively prohibit the operation of licensed firearm retailers and shooting ranges and thus individually and/or collectively violate the Second, Fifth, and Fourteenth Amendment, a preliminary and permanent injunction restraining State Defendants and their officers, agents, servants, employees, and all persons in concert or participation with them who receive notice of the injunction, from enforcing State Defendants' Orders and enforcement policies, practices, and customs that individually and/or collectively violate the Second, Fifth, and Fourteenth Amendments;

3.      A declaratory judgment that Local Defendants' Orders, including the County of Los Angeles Defendants' Orders, Burbank Defendants' Orders, and City

of Los Angeles Defendants' Order, and Local Defendants' enforcement policies, practices, and customs challenged herein individually and/or collectively violate the Second, Fifth, and Fourteenth Amendments;

4. A preliminary and permanent injunction restraining Local Defendants and their officers, agents, servants, employees, and all persons in concert or participation with them who receive notice of the injunction, from enforcing their respective Orders and enforcement policies, practices, and customs that individually and/or collectively violate the Second, Fifth, and Fourteenth Amendments;

5. Nominal damages against Local Defendants;

6. All other and further relief, including injunctive relief, against Defendants as necessary to effectuate the Court's judgment, or as the Court otherwise deems just and equitable; and,

7. Attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable law.

Respectfully submitted this 29th day of March 2020.

SEILER EPSTEIN LLP

/s/ *George M. Lee*
George M. Lee

Attorney for Plaintiffs