1  XAVIER BECERRA
   Attorney General of California
2  MARK R. BECKINGTON
   Supervising Deputy Attorney General
3  P. PATTY LI
   Deputy Attorney General
4  PETER H. CHANG
   State Bar No. 241467
5    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102-7004
6    Telephone:  (415) 510-3776
     Fax:  (415) 703-1234
7    E-mail:  Peter.Chang@doj.ca.gov
   *Attorneys for Defendants Gavin Newsom, in
8  his official capacity as Governor and Sonia
   Y. Angell, in her official capacity as
9  California Public Health Officer*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ADAM BRANDY; ET AL.,**<br><br>　　　　　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>**ALEX VILLANUEVA; ET AL.,**<br><br>　　　　　　　　　　　Defendants. | 2:20-cv-02874-AB-AK<br><br>**STATE DEFENDANTS' OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE**<br><br>Date:　　　TBD<br>Time:　　　TBD<br>Dept:　　　Courtroom 7B<br>Judge:　　 Hon. André Birotte Jr.<br>Trial Date:　Not set<br>Action Filed: March 27, 2020 |

# TABLE OF CONTENTS

**Page**

Introduction ........................................................................................................... 1
Background ............................................................................................................ 2
    I.    The Governor's Declaration of a State of Emergency and Executive Order ................................................................................ 2
    II.   Relevant Local Government Orders ......................................................... 4
    III.  Procedural History .................................................................................. 6
Legal Standard ...................................................................................................... 6
Argument ............................................................................................................... 7
    I.    There Is No Justiciable Case or Controversy Between Plaintiffs and the State Defendants ................................................................. 7
        A.   The Claims Are Not Ripe and Plaintiffs Lack Standing Because There Is No Credible Threat of Enforcement or Injury in Fact that can be Traced to State Defendants ............... 8
        B.   Plaintiffs' Claims Are Moot ...................................................... 10
    II.   Plaintiffs Fail to Show that They Will Suffer Irreparable Harm in the Absence of Temporary Relief .................................................... 10
    III.  Plaintiffs Have Failed to Establish a Likelihood of Success on the Merits of Their Due Process Claim ............................................... 12
    IV.  An Injunction Against the Enforcement of the Executive Order Would Be Against the Public Interest in Light of the Ongoing Pandemic ................................................................................ 14
Conclusion ........................................................................................................... 15

# TABLE OF AUTHORITIES

Page

**CASES**

*Alliance for the Wild Rockies v. Cottrell*
    632 F.3d 1127 (9th Cir. 2011) ................................................................................ 6

*Am. Passage Media Corp. v. Cass Commc'ns, Inc.*
    750 F.2d 1470 (9th Cir. 1985) .............................................................................. 10

*Amer. Cas. Co. of Reading, Penn. v. Baker*
    22 F.3d 880 (9th Cir. 1994) .................................................................................... 9

*Bell Atl. Bus. Sys., Inc. v. Storage Tech. Corp.*
    1994 WL 125173 (N.D. Cal. Mar. 31, 1994) ................................................. 10, 11

*Cal. Pro-Life Council, Inc. v. Getman*
    328 F.3d 1088 (9th Cir. 2003) ............................................................................ 8, 9

*Chandler v. State Farm Mut. Auto. Ins. Co.*
    598 F.3d 1115 (9th Cir. 2010) ................................................................................ 6

*Clapper v. Amnesty Int'l USA*
    568 U.S. 398 (2013) ............................................................................................... 8

*Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*
    482 F.3d 1157 (9th Cir. 2007) .............................................................................. 10

*DaimlerChrysler Corp. v. Cuno*
    547 U.S. 332 (2006) ............................................................................................... 9

*First Vagabonds Church of God v. City of Orlando*
    610 F.3d 1274, 1286 (11th Cir. 2010) ................................................................. 13

*Gammoh v. City of La Habra*
    395 F.3d 1114 (9th Cir. 2005) .............................................................................. 12

*Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*
    *Local No. 70 of Alameda Cty.*
    415 U.S. 423 (1974) ............................................................................................. 10

# TABLE OF AUTHORITIES
## (continued)

Page

*Grayned v. City of Rockford*
   408 U.S. 104 (1972) .................................................................................... 12

*Hein v. Freedom From Religion Found., Inc.*
   551 U.S. 587 (2007) ...................................................................................... 6

*Hill v. Colorado*
   530 U.S. 703 (2000) .................................................................................... 12

*Human Life of Washington Inc. v. Brumsickle*
   624 F.3d 990 (9th Cir. 2010) ....................................................................... 12

*Kashem v. Barr*
   941 F.3d 358 (9th Cir. 2019) ................................................................. 13, 14

*Lujan v. Defenders of Wildlife*
   504 U.S. 555 (1992) ...................................................................................... 8

*Mazurek v. Armstrong*
   520 U.S. 968 (1997) ...................................................................................... 7

*Spokeo, Inc. v. Robins*
   136 S. Ct. 1540 (2016) .................................................................................. 9

*Stormans, Inc. v. Selecky*
   586 F.3d 1109 (9th Cir. 2009) ....................................................................... 8

*Thomas v. Anchorage Equal Rights Comm'n*
   220 F.3d 1134 (9th Cir. 2000) ............................................................... 7, 8, 9

*Trepany v. Deutsche Bank Nat'l Tr. Co.*
   No. 15-cv-00965-AB (Ex), 2015 WL 12745796 (C.D. Cal. May 13,
   2015) (Birotte, J.) .................................................................................. 10, 11

*Tucson Woman's Clinic v. Eden*
   379 F.3d 531 (9th Cir. 2004) ....................................................................... 12

*Vaccaro v. Sparks*
   No. SACV 11-00164, 2011 WL 318039 (C.D. Cal. Jan. 28, 2011) ............. 6

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Winter v. Nat. Res. Def. Council, Inc.*
    555 U.S. 7 (2008) ................................................................................................ 6, 14

*Youngstown Sheet & Tube Co. v. Sawyer*
    103 F. Supp. 978 (D.D.C. 1952) .................................................................................. 6

**CONSTITUTIONAL PROVISIONS**

United States Constitution
    Second Amendment ................................................................................................ 12

**OTHER AUTHORITIES**

Executive Order N-33-20 ................................................................................*passim*

Defendants Gavin Newsom, California Governor, and Sonia Y. Angell, California Public Health Officer (collectively, State Defendants) file this opposition to Plaintiffs' ex parte application for a temporary restraining order and issuance of preliminary injunction (ECF No. 14).

## INTRODUCTION

Shortly after the global outbreak of COVID-19, the State of California began its preparations to rapidly respond to and contain the spread of COVID-19 in California to protect the health and safety of Californians. To support those efforts, on March 4, 2020, Governor Newsom declared a State of Emergency in California. On March 19, 2020, the Governor issued Executive Order N-33-20, at issue in this case, directing the residents of California to stay at their place of residence, except that those Californians working in critical infrastructure sectors identified by the federal government may continue their work because of the importance of those sectors to the health and well-being of all Californians.

Plaintiffs challenge the Executive Order on the basis that it does not expressly identify firearms and ammunition retailers to be in a critical infrastructure sector. But Plaintiffs misread the order. As the Governor has publicly confirmed, the Executive Order does not mandate the closure of firearms and ammunition retailers. To the extent any local official acting on his or her own authority requires the closure of those retailers, such actions do not concern the Executive Order. Thus, there is no justiciable controversy between Plaintiffs and the State Defendants.

But most immediately, Plaintiffs' application for temporary restraining order must be denied because Plaintiffs face no imminent or irreparable harm—the application is based on the now-withdrawn order of Defendant Villanueva, Sheriff of Los Angeles County, that had required the closure of firearms and ammunition retailers. On the same day that Plaintiffs filed the instant application, Defendant Villanueva announced that he will not order the closure of those businesses, based on updated guidance from the United States Department of Homeland Security that

1

State Defs.' Opp. Pls.' Ex Parte App. Temp. Restraining Ord. (2:20-cv-02874-AB-AK)

explicitly identified workers supporting the operation of firearm or ammunition product retailers as essential critical infrastructure workers.

Therefore, the Court should deny Plaintiffs' application for a temporary restraining order because there is no evidence that Plaintiffs will suffer any imminent, irreparable harm without a temporary order, and there is no justiciable controversy between Plaintiffs and the State Defendants.

## BACKGROUND

### I. THE GOVERNOR'S DECLARATION OF A STATE OF EMERGENCY AND EXECUTIVE ORDER

In mere months, coronavirus disease 2019 (COVID-19) has infected over one million people and caused the deaths of over 50,000 people worldwide.[1] In the United States alone, COVID-19 has infected over a quarter-million people and caused the deaths of over 6,000 people to date.[2] California recognized early that COVID-19 has the potential to spread rapidly throughout the state. As early as December 2019, California began working closely with the national Centers for Disease Control and Prevention, the United States Health and Human Services Agency, and local health departments to monitor and plan for the potential spread of COVID-19 to the United States. Exh. 1 (Governor's Proclamation) at 1.[3] The California Department of Public Health has been in regular communication with hospitals, clinics, and other health providers and has been providing guidance to health facilities and providers regarding COVID-19. *Id.* As of March 4, 2020, there were more than 94,000 confirmed cases of COVID-19 and more than 3,000 deaths worldwide, and 129 confirmed cases of COVID-19 in the United States, including 53 in California. *Id.* And officials expected the number of cases in

---

[1] *See* Worldometer, https://www.worldometers.info/coronavirus/.
[2] *See* Worldometer, United States, https://www.worldometers.info/coronavirus/country/us/.
[3] Exh. __ refers to the corresponding exhibit in the supporting declaration of Peter H. Chang.

2

State Defs.' Opp. Pls.' Ex Parte App. Temp. Restraining Ord. (2:20-cv-02874-AB-AK)

California, the United States, and worldwide to increase.[4] To prepare for and respond to suspected or confirmed cases of COVID-19 in California and to implement measures to mitigate the spread of COVID-19, the Governor declared a State of Emergency in California. *Id.* at 2. This proclamation makes additional resources available, formalizes emergency state actions already underway, and helps the state prepare for the broader spread of COVID-19. *See* Exh. 2 of Chang Decl. (3/4/20 press release).

On March 19, 2020, the Governor issued Executive Order N-33-20. Exh. 3. Executive Order N-33-20 directed all California residents to heed the State public health directives relating to COVID-19. *Id.* Those directives, in the form of the March 19, 2020, Order of the State Public Health Officer (Public Health Order), were expressly incorporated. Specifically, the Public Health Order, and thus Executive Order N-33-20, requires "all individuals living in the State of California to stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors, as outlined at https://www.cisa.gov/identifying-critical-infrastructure-during-covid-19." *Id.* Observing that "[t]he federal government has identified 16 critical infrastructure sectors" considered vital to the United States, the order provides that "Californians working in these 16 critical infrastructure sectors may continue their work because of the importance of these sectors to Californians' health and well-being." *Id.* The order does not identify any specific industry, retailer, or business as essential or any specific criteria, instead incorporating the criterial infrastructure designations of the federal government.

The order further provides that the Public Health Officer "may designate additional sectors as critical in order to protect the health and well-being of all Californians." *Id.* On March 22, 2020, the Public Health Officer designated a list

---

[4] And both the number of cases and resulting deaths have dramatically increased in California, in the United States, and worldwide. *See* Worldometer, https://www.worldometers.info/coronavirus/.

of "Essential Critical Infrastructure Workers." Exh. 4.[5] When asked during a March 26, 2020 press conference whether firearms retailers have to close as non-essential businesses, the Governor responded that the decision is left to sheriffs in their respective jurisdictions.[6]

On March 28, 2020, the federal Cybersecurity & Infrastructure Security Agency (CISA) of the Department of Homeland Security updated the list of the critical infrastructure sectors and workers to include workers in the firearms industry. Exh. 5 (CISA Advisory Mem.). Specifically, CISA now includes as Essential Critical Infrastructure Workforce those "[w]orkers supporting the operation of firearm or ammunition product manufacturers, retailers, importers, distributors, and shooting ranges." *Id.* at 6.

Given the rapidly evolving circumstances relating to COVID-19 in California and in the United States, the State Defendants may issue other orders or directives in the future to combat the further spread of COVID-19. *See* Exh. 3.

## II. RELEVANT LOCAL GOVERNMENT ORDERS

According to Plaintiffs, on March 19, the County of Los Angeles Department of Public Health issued an Order titled "Safer at Home Order for Control of COVID-19" (County Order). Mem. in Supp. TRO App., ECF No. 14-1, at 3. The County Order "requires all indoor malls, shopping centers, playgrounds and non-essential businesses to close." *Id.* "Essential businesses," however, may remain open. *Id.* The County Order does not specifically address firearms retailers. *Id.* at 3-4.

---

[5] Executive Order N-33-20 and the March 22 Public Health Officer designations will be collectively referenced as "Executive Order."

[6] Eric Ting, Gov. Gavin Newsom says state won't issue guidance on whether gun stores are essential businesses, SFGATE, March 26, 2020, *available at* https://www.sfgate.com/politics/article/Gavin-Newsom-gun-store-closures-Second-Amendment-15157244.php.

4

State Defs.' Opp. Pls.' Ex Parte App. Temp. Restraining Ord. (2:20-cv-02874-AB-AK)

Further according to Plaintiffs, on March 24, Defendant Alex Villanueva, Los Angeles County Sheriff, announced through his Twitter account that "gun and ammunition stores are not considered essential businesses and must close to the general public." Mem. in Supp. TRO App., ECF No. 14-1, at 4. On March 25, Sheriff Villanueva temporarily suspended any related enforcement efforts, but on March 26, issued another statement that gun and ammunition stores are not considered essential businesses and must close to the general public. *Id.* Villanueva provided exceptions to his order, allowing gun stores to sell ammunition to security guard companies and those who have purchased a firearm to take possession of the firearm. *Id.* at 4-5. He further clarified that his order applied only to those cities and unincorporated county areas under his jurisdiction. *Id.* at 5.

This order is no longer in force. On March 30, Sheriff Villanueva announced that, in accordance with the federal CISA advisory issued on March 28, which designated workers supporting the firearms and ammunition industry to be essential infrastructure workers, "the Los Angeles County Sheriff's Department will not order or recommend the closure of businesses that sell or repair firearms or sell ammunition." Exh. 6 (Alex Villanueva, Twitter (March 30, 2020)).

According to Plaintiffs, the City of Los Angeles issued an order that requires businesses within the city to cease operations that require in-person attendance by workers at a workplace, except for stores considered essential activities. First Amended Complaint, ECF No. 9, ¶ 46. Plaintiffs do not allege, either in the First Amended Complaint or in their application, that this order mandates the closure of firearms retailers.

Furthermore, Plaintiffs have been assured by the Burbank Police Department that it would not require closure of firearms retailers. Pls.' Supp. Decl., ECF No. 17, ¶ 10.

### III. PROCEDURAL HISTORY

Plaintiffs filed their Original Complaint on March 27, 2020, and First Amended Complaint on March 29. ECF Nos. 1 & 2. The next day, on March 30, 2020, Plaintiffs filed the instant Application for a Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue. ECF No. 14.

## LEGAL STANDARD

The Article III "case or controversy" requirement limits the subject matter jurisdiction of federal courts by requiring, among other things, that a plaintiff have standing and that the claim is ripe for adjudication. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). "No principle is more fundamental to the judiciary's proper role in our system of government" than that jurisdictional requirement. *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 597-98 (2007). (quotation omitted). The party asserting federal subject matter jurisdiction bears the burden of proving its existence. *Id.*

"An application for a temporary restraining order involves the invocation of a drastic remedy which a court of equity ordinarily does not grant, unless a very strong showing is made of a necessity and desirability of such action." *Vaccaro v. Sparks*, No. SACV 11-00164, 2011 WL 318039, at *1 (C.D. Cal. Jan. 28, 2011) (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 103 F. Supp. 978, 980 (D.D.C. 1952)). Similar standards govern issuance of both temporary restraining orders and preliminary injunctions. Plaintiffs must demonstrate that they are likely to succeed on the merits of their claims, that they are likely to suffer irreparable harm without preliminary relief, that the balance of equities tips in their favor, and that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

6

State Defs.' Opp. Pls.' Ex Parte App. Temp. Restraining Ord. (2:20-cv-02874-AB-AK)

Alternatively, injunctive relief "is appropriate when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (internal citation omitted). Plaintiffs must make a showing of all four *Winter* factors even under the alternative sliding scale test. *Id*. at 1132, 1135. It is well settled that injunctive relief "is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

## ARGUMENT

### I. THERE IS NO JUSTICIABLE CASE OR CONTROVERSY BETWEEN PLAINTIFFS AND THE STATE DEFENDANTS

Plaintiffs lack justiciable claims against the State Defendants that would permit the Court to award equitable relief. The role of an Article III court is "neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000). With respect to the State Defendants and the Executive Order, Plaintiffs fail to establish justiciability in several regards. Because the Executive Order does not mandate the closure of firearm retailers or otherwise direct local jurisdictions to do so, Plaintiffs' claims are moot, unripe, and are not traceable to any injury-in-fact caused by the Executive Order, as required for standing. With respect to the Executive Order, there is no Article III case or controversy, and thus no basis for temporarily restraining enforcement of the Executive Order.

### A. The Claims Are Not Ripe and Plaintiffs Lack Standing Because There Is No Credible Threat of Enforcement or Injury in Fact that can be Traced to State Defendants

Plaintiffs' claims fail because they are unripe and because Plaintiffs have suffered no injury from the Executive Order that would give them standing to seek relief as to the Executive Order. The Executive Order does not prohibit Plaintiffs from purchasing or selling firearms or ammunition or mandate the closure of firearms retailers. Nor have Plaintiffs alleged a genuine threat of imminent prosecution under the Executive Order.

As the Ninth Circuit has stated, "ripeness is 'peculiarly a question of timing,' designed to 'prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Thomas*, 220 F.3d at 1138 (citations omitted). Ripeness requires that a plaintiff "face a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement" and not merely an "imaginary" or "speculative" injury. *Id.* (internal quotation marks and citation omitted). A plaintiff not presently subject to prosecution must demonstrate a "reasonable threat of prosecution" that is "not imaginary or wholly speculative." *Id.* at 1143 (internal quotations omitted). Ripeness thus requires a genuine threat of imminent prosecution, not simply "a generalized threat of prosecution." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1122 (9th Cir. 2009). As relevant here, when analyzing the genuineness of a threat of prosecution, courts consider whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings. *Id*.

Closely related to ripeness is standing, which requires (1) an "injury in fact," (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) a "likel[ihood]" that the injury "will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992) (internal quotation marks omitted). An injury sufficient to satisfy Article III must be "concrete and particularized" and "actual or imminent, not 'conjectural' or

8

State Defs.' Opp. Pls.' Ex Parte App. Temp. Restraining Ord. (2:20-cv-02874-AB-AK)

'hypothetical.'" *Id*. at 560. The Supreme Court has "repeatedly reiterated that threatened injury must be certainly impending to constitute injury in fact, and that [a]llegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citations and internal quotation marks omitted).

"The constitutional component of the ripeness inquiry is often treated under the rubric of standing and, in many cases, ripeness coincides squarely with standing's injury in fact prong." *Thomas*, 220 F.3d at 1138. Here, "the constitutional component of ripeness is synonymous with the injury-in-fact prong of the standing inquiry." *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094 n.2 (9th Cir. 2003). Plaintiffs therefore fail the ripeness and injury-in-fact standing inquiries for the same reason: Plaintiffs can allege no injury resulting from the Executive Order.

The Executive Order does not mandate the closure of firearms retailers, as Governor Newsom confirmed in a public statement. Any potential threat of prosecution under the Executive Order is not imminent and is wholly speculative. Plaintiffs have thus failed to show that they "face a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Thomas*, 220 F.3d at 1138 (internal quotation marks and citation omitted).

Insofar as Plaintiffs rely on a purported injury resulting from the lack of language in the Executive Order explicitly authorizing Plaintiffs to engage in their desired activities, this theory also fails to satisfy basic ripeness and standing requirements. Such a claim could be raised about any proscriptive law by practically any purported plaintiff. But a "concrete and particularized" injury requires more than a generalized grievance or allegation that plaintiffs suffer "in some indefinite way in common with people generally." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 344 (2006) (citations and quotations omitted). Rather, concreteness requires that the alleged injury "actually exist" such that it is more

9
State Defs.' Opp. Pls.' Ex Parte App. Temp. Restraining Ord. (2:20-cv-02874-AB-AK)

than an "abstract" injury. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). Such injury-in-fact with respect to the Executive Order is entirely lacking here.

### B. Plaintiffs' Claims Are Moot

Plaintiffs' claims became moot on March 30, when the Los Angeles Sheriff publicly stated that "the Los Angeles County Sheriff's Department will not order or recommend the closure of businesses that sell or repair firearms or sell ammunition." Exh. 6 (Alex Villanueva, Twitter (March 30, 2020)). "A case becomes moot when interim relief or events have deprived the court of the ability to redress the party's injuries." *Amer. Cas. Co. of Reading, Penn. v. Baker*, 22 F.3d 880, 896 (9th Cir. 1994) (citation omitted); *see also Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1168 (9th Cir. 2007) ("If legislation passing constitutional muster is enacted while a case is pending on appeal that makes it impossible for the court to grant any effectual relief, the appeal must be dismissed as moot."). This Court no longer has the ability to redress the injuries alleged in the First Amended Complaint because the Los Angeles County Sheriff has withdrawn the order that formed the basis of Plaintiffs' application and has publicly stated that "the Los Angeles County Sheriff's Department will not order or recommend the closure of businesses that sell or repair firearms or sell ammunition," Exh. 6, and plaintiffs have identified no other orders that specifically prevent them from engaging in or completing transactions to sell or purchase firearms and ammunition.

### II. PLAINTIFFS FAIL TO SHOW THAT THEY WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF TEMPORARY RELIEF

Plaintiffs have not met their burden to show that they are likely to suffer imminent and irreparable harm without a temporary restraining order by this Court because they have alleged no existing or imminent threat of closure of firearms and ammunitions retailers. "A temporary restraining order is a form of preliminary injunctive relief limited to 'preserving the status quo and preventing irreparable

10

State Defs.' Opp. Pls.' Ex Parte App. Temp. Restraining Ord. (2:20-cv-02874-AB-AK)

harm just so long as is necessary to hold a hearing, and no longer.'" *Trepany v. Deutsche Bank Nat'l Tr. Co.*, No. 15-cv-00965-AB (Ex), 2015 WL 12745796, *2 (C.D. Cal. May 13, 2015) (Birotte, J.) (citing *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 438 (1974)). An applicant for TRO "must *demonstrate* imminent and irreparable harm by presenting probative evidence." *Id.* at *6 (emphasis in original) (citing *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985) (reversing the entry of a preliminary injunction because the movant failed to proffer evidence of irreparable harm); *Bell Atl. Bus. Sys., Inc. v. Storage Tech. Corp.*, 1994 WL 125173, *3 (N.D. Cal. Mar. 31, 1994) (denying a motion for preliminary injunction because the movant failed to adduce sufficient evidence of the threat of irreparable harm)). Here, Plaintiffs have not made, and cannot make, the requisite evidentiary showing.

Plaintiffs seek an order temporarily enjoining defendants from "closing or compelling the closure of retail firearm and ammunition businesses on the ground they are 'non-essential businesses.'" TRO App., ECF No. 14, at 3. But Plaintiffs have presented no evidence that the State Defendants have mandated or will mandate the closure of retail firearm and ammunition businesses. Indeed, the Executive Order does not mandate the closure of gun stores, as the Governor confirmed in his March 26 press conference. *See*, *supra*, n. 4. Therefore, it is clear that Plaintiffs face no imminent and irreparable harm that may be traced to the Executive Order or the State Defendants.

Additionally, Plaintiffs' ex parte application is grounded in Los Angeles County Sheriffs' now-withdrawn order. On the same day that the instant application was filed, Defendant Villanueva made clear that he would abide by the updated CISA advisory, which includes workers in the firearms industry as part of the essential infrastructure workforce, and would not "order or recommend the

closure of businesses that sell or repair firearms or sell ammunition." Exh. 6 (Alex Villanueva, Twitter (March 30, 2020)).

For these reasons, Plaintiffs cannot meet their burden to show that they are likely to suffer imminent and irreparable harm, and their application for TRO must be denied. *See Trepany*, No. 15-cv-00965-AB (Ex), 2015 WL 12745796, at *6 (denying application for TRO to enjoin the foreclosure sale of plaintiff's home in part because plaintiff provided no documentary evidence of a purported sale and thus failed to demonstrate a likelihood of imminent and irreparable harm). At a minimum, the instant application must be denied as against the State Defendants because Plaintiffs have shown no imminent and irreparable harm traceable to the State Defendants.

### III. PLAINTIFFS HAVE FAILED TO ESTABLISH A LIKELIHOOD OF SUCCESS ON THE MERITS OF THEIR DUE PROCESS CLAIM[7]

Plaintiffs' Due Process claim rests on their assertion that the Executive Order is void for vagueness because it neither specifically provides whether firearms retailers are considered essential nor specifically grants discretion to the sheriffs. Mem. in Supp. TRO App., ECF No. 14-1, at 20. There is no merit to this claim.

"A law is unconstitutionally vague if it fails to provide a reasonable opportunity to know what conduct is prohibited, or is so indefinite as to allow arbitrary and discriminatory enforcement." *Human Life of Washington Inc. v. Brumsickle*, 624 F.3d 990, 1019 (9th Cir. 2010) (quoting *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 555 (9th Cir. 2004)). "Nevertheless, perfect clarity is not required even when a law regulates protected speech, and [a court] can never expect mathematical certainty from our language." *Id.* (internal citations and quotations omitted). Moreover, "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is

---

[7] The State Defendants do not address Plaintiffs' Second Amendment claim because the claim erroneously presumes that the defendants and the Executive Order mandate the closure of firearms and ammunition retailers. As discussed above, Plaintiffs have shown no such mandate exists.

12

State Defs.' Opp. Pls.' Ex Parte App. Temp. Restraining Ord. (2:20-cv-02874-AB-AK)

surely valid 'in the vast majority of its intended applications.'" *Id*. (quoting *Hill v. Colorado*, 530 U.S. 703, 733 (2000)). And finally, "otherwise imprecise terms may avoid vagueness problems when used in combination with terms that provide sufficient clarity," *Gammoh v. City of La Habra*, 395 F.3d 1114, 1120 (9th Cir. 2005), and vagueness challenges will be rejected when it is "clear what the ordinance as a whole prohibits," *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972). Plaintiffs' claim does not meet this strict standard.

Here, the ambit of the Executive Order N-33-20 is clear: it requires individuals to stay at their residence, except that Californians working in the critical infrastructure sectors identified by the federal government and by the Public Health Officer "may continue their work because of the importance of these sectors to Californians' health and well-being." Exh. 3. While the Executive Order did not address firearms and ammunition retailers specifically, the Governor has confirmed that the Executive Order does not mandate their closure.

Plaintiffs argue that to the extent the Executive Order gives sheriffs discretion to determine whether firearms retailers are "essential," it allows for arbitrary and capricious enforcement. Mem. in Supp. TRO App., ECF No. 14-1, at 21. However, there is no constitutional requirement that the Executive Order make detailed categorical decisions on every conceivable type of economic activity. The Executive Order need not impose its mandate on a statewide level on each type of industry, store, or business, and each type of worker within each type of industry, store, or business. It may, as it did, provide reasonably specific guidance by reference to the federal guidelines and Public Health Officer designations, while leaving certain enforcement decisions to the discretion of local government officials who may have better information within their jurisdiction.

Furthermore, Plaintiffs confuse a sheriff's potential enforcement of an applicable local order, or his or her own order, with the enforcement of the Executive Order. While a statute may be unconstitutionally vague if it vests the

13

State Defs.' Opp. Pls.' Ex Parte App. Temp. Restraining Ord. (2:20-cv-02874-AB-AK)

government with "unbridled enforcement discretion," *Kashem v. Barr*, 941 F.3d 358, 374 (9th Cir. 2019), that is not applicable here because the Executive Order does not address its applicability to firearms retailers and Governor Newsom has confirmed that the Executive Order does not mandate closure of those retailers. The fact that a sheriff "may have some difficulty applying [the law] on the margins does not nearly establish" unconstitutional vagueness. *First Vagabonds Church of God v. City of Orlando*, 610 F.3d 1274, 1286 (11th Cir. 2010), reinstated following rehearing en banc, 638 F.3d 756, 763 (11th Cir. 2011). A statute's "constitutionality does not hang on whether every police officer would understand the ordinance in the same way in every conceivable factual circumstance. Absolute clarity is too much to expect from the drafters of laws, and perfect knowledge of the fullest reach of the laws is too much to expect of even the most reasonable police officers." *Id*.

Plaintiffs also argue that the Governor's confirmation at the press conference that the Executive Order does not mandate the closure of firearm retailers reaches "only those who happened to be tuned into the broadcast." Mem. in Supp. TRO App., ECF No. 14-1, at 20. However, in examining whether a law is vague, courts evaluate whether "a reasonable person" has been given fair notice of what is prohibited, not whether a particular plaintiff actually received a warning that alerted him or her to the danger of being held accountable for the behavior in question." *Kashem*, 941 F.3d at 371. The Governor's directives are clear, whether or not individual plaintiffs had actual notice of them.

### IV. AN INJUNCTION AGAINST THE ENFORCEMENT OF THE EXECUTIVE ORDER WOULD BE AGAINST THE PUBLIC INTEREST IN LIGHT OF THE ONGOING PANDEMIC

An injunction should not issue here also because an injunction against the State Defendants or the enforcement of the Executive Order would be against the public interest, and the balance of equities tips sharply in the favor of the State Defendants. Plaintiffs have the burden to show that the balance of equities tips in

14

State Defs.' Opp. Pls.' Ex Parte App. Temp. Restraining Ord. (2:20-cv-02874-AB-AK)

their favor, and that an injunction is in the public interest. *Winter*, 555 U.S. at 20. They cannot do so here. California, together with the rest of the United States, is in the midst of a global pandemic. The White House coronavirus task force projects 100-240,000 deaths in the United States.[8] In light of this global crisis, an injunction against the State Defendants would unnecessarily bind the hands of the State in its efforts to combat COVID-19 and its ability to address rapid and ever-changing developments.

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' ex parte application for a temporary restraining order and order to show cause why a preliminary injunction should not issue.

Dated: April 3, 2020

Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General
P. PATTY LI
Deputy Attorney General

/s/ *Peter H. Chang*
PETER H. CHANG
Deputy Attorney General
*Attorneys for Defendants Gavin Newsom, in his official capacity as Governor and Sonia Y. Angell, in her official capacity as California Public Health Officer*

---

[8] Amita Kelly, READ: White House Presentation Warning Of At Least 100,000 Projected Deaths In U.S., N.P.R., Mar. 31, 2020, https://www.npr.org/2020/03/31/824950369/read-white-house-presentation-warning-of-100-000-projected-deaths-in-u-s.

15