George M. Lee (SBN 172982)
gml@seilerepstein.com
**SEILER EPSTEIN LLP**
275 Battery Street, Suite 1600
San Francisco, California 94111
Phone: (415) 979-0500
Fax: (415) 979-0511

John W. Dillon (SBN 296788)
jdillon@gdandb.com
2762 Gateway Road
Carlsbad, California 92009
Phone: (760) 431-9501
Fax: (760) 431-9512

Raymond M. DiGuiseppe (SBN 228457)
law.rmd@gmail.com
**THE DIGUISEPPE LAW FIRM, P.C.**
4320 Southport-Supply Road, Suite 300
Southport, North Carolina 28461
Phone: 910-713-8804
Fax: 910-672-7705

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM BRANDY, et al.,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>ALEX VILLANUEVA, et al.,<br><br>                    Defendants. | Case No. 2:20-cv-02874-AB-SK<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**<br><br>Judge:     Hon. André Birotte Jr. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

RE: THE STATE DEFENDANTS' OPPOSITION ................................................................... 1

RE: THE COUNTY DEFENDANTS' OPPOSITION ........................................................... 4

RE: THE CITY OF LOS ANGELES DEFENDANTS' OPPOSITION ...................................... 7

CONCLUSION ........................................................................................ 14

1
2

## TABLE OF AUTHORITIES

3

**Cases**

4

*Ass'n of New Jersey Rifle & Pistol Clubs, Inc. v. Attorney Gen. New Jersey*,

5
   910 F.3d 106 (3d Cir. 2018) ................................................................. 11

6
*Bateman v. Purdue*, 881 F.Supp.2d 709 (E.D. N.C. 2012)................................ 9, 10

7
*Board of Trustees of State Univ. of New York v. Fox*, 492 U.S. 469 (1989) .......... 10

8
*Bonidy v. U.S. Postal Serv.*, 790 F.3d 1121 (10th Cir. 2015) ................................ 11

9
*District of Columbia v. Heller*, 554 U.S. 570 (2008) ......................................... 9, 10

10
*Edenfield v. Fane*, 507 U.S. 761 (1993) ................................................................ 10

11
*Grayned v. City of Rockford*, 408 U.S. 104 (1972) ................................................. 2

12
*Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173 (1999) ... 10

13
*Heller v. District of Columbia*, 801 F.3d 264 (D.C. Cir. 2015) ("*Heller III*") ....... 11

14
*Hirabayashi v. United States*, 320 U.S. 81 (1943) ............................................ 8, 12

15
*Italian Colors Rest. v. Becerra*, 878 F.3d 1165 (9th Cir. 2018) ........................... 10

16
*Jackson v. City and County of San Francisco*, 746 F.3d 953 (9th Cir. 2014) ........ 13

17
*Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905) ....................... 8

18
*McCullen v. Coakley*, 134 S. Ct. 2518 (2014) ..................................................... 11

19
*McDonald v. City of Chicago*, 561 U.S. 742 (2010) ............................................... 3

20
*Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012) ................................................. 11

21
*Teixeira v. County of Alameda*, 873 F.3d 670 (9th Cir. 2017) (en banc) ......... 12, 13

22
*Turner Broad. Sys., Inc.*, 520 U.S. 180 (1997) ..................................................... 10

23
*United States v. Reese*, 627 F.3d 792 (10th Cir. 2010)......................................... 11

24
*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,

25
   455 U.S. 489 (1982) ............................................................................. 2

26
*Ward v. Rock Against Racism*, 491 U.S. 781 (1989)............................................. 11

27
28

---

iii

PLAINTIFFS' REPLY IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION | CASE NO. 2:20-CV-02874-AB-SK

1

**Statutes**

2  Cal. Gov't Code § 26602 ........................................................................... 6

3  Cal. Gov't Code § 41601 ........................................................................... 6

4  Cal. Gov't Code § 8665 ............................................................................. 2

5  Cal. Health & Saf. Code § 101029 ........................................................... 6

6  Cal. Health & Saf. Code § 120295 ........................................................... 6

7  Cal. Pen. Code Prelim. Prov. 7 ................................................................. 2

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

iv

PLAINTIFFS' REPLY IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION | CASE NO. 2:20-CV-02874-AB-SK

## PLAINTIFFS' REPLY IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER <u>AND OSC RE PRELIMINARY INJUNCTION</u>

Plaintiffs Adam Brandy, et al. hereby and respectfully submit this brief as a consolidated Reply Memorandum to address the various assertions made by the Defendants in their respective oppositions to Plaintiffs' application for a Temporary Restraining Order and OSC Re: Preliminary Injunction.

### THE STATE DEFENDANTS' OPPOSITION

State Defendants Governor Gavin Newsom and Public Health Officer Sonia Y. Angell ("State Defendants") oppose Plaintiffs' TRO application on the grounds that because the Governor's *ad hoc* remarks at a press conference did not expressly *require* the closure of firearm and ammunition retailers, shooting proficiency ranges, and the like, there is no case or controversy that gives rise to the State's involvement in this action. Not so fast.

The Governor, in those press conference remarks,[1] expressly deferred to Defendant Sheriff Villanueva – and indeed, to each of the 58 sheriffs – on what the State Defendants' Orders mean. (Defendant Sheriff Villanueva, as will be discussed later, modified his policy by decree without addressing the State Defendants' Orders or Defendant Gov. Newsom's remarks.)

In combination with the text of the State Defendants' Orders, Defendant Gov. Newsom's delegation and deference is exactly the type of invitation to "arbitrary and discriminatory enforcement" that must be prevented by

---

[1] See video at https://youtu.be/2PgcOIsKA_E?t=1991 (starting 33:11) ("I'll defer to the Sheriff [Villanueva] in this instance, and I defer to the sheriffs in their respective jurisdictions for that clarification," Defendant Gov. Newsom said in response to the question of if "gun stores" are "essential businesses" under the State Defendants' Orders.)

1

PLAINTIFFS' REPLY IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION | CASE NO. 2:20-CV-02874-AB-SK

enactment/application of an unconstitutionally vague law. As the Court observed in *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982): "'[…] A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory applications […]." 455 U.S. at 498 (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108–109 (1972)). The *Village of Hoffman Estates* Court went on to observe that the "degree of vagueness that the Constitution tolerates" may depend upon the nature of the enactment. For example, the Court observed, economic regulation is subject to a less strict vagueness test because businesses "can be expected to consult relevant legislation in advance of action." 455 U.S. at 498. The Court further observed that vague laws may be tolerated more in civil, rather than criminal laws, "because the consequences of imprecision are quantitatively less severe." *Id*. Furthermore, a scienter requirement "may mitigate a law's vagueness, especially with respect to the adequacy of the notice to the complainant that his conduct is proscribed." *Id*. Finally, the Court stated:

> [P]erhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights. If, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply.

455 U.S. at 498–99.

Here, the simple fact remains: The Governor's Executive Order "shall be enforceable pursuant to California law, *including but not limited to*, Government Code section 8665." (Exec. Order N-33-20 at ¶ 4, italics added.) Gov't Code § 8665, in turn, provides that "[a]ny person[2] who violates any of the provisions of

---

[2] The "word 'person' includes a corporation as well as a natural person. . ." Cal. Penal Code Prelim. Prov. 7.

this chapter or who refuses or willfully neglects to obey any lawful order or regulation promulgated or issued as provided in this chapter, shall be guilty of a misdemeanor and, upon conviction thereof, shall be punishable by a fine of not to exceed one thousand dollars ($1,000) or by imprisonment for not to exceed six months or by both such fine and imprisonment."

Here, there is no relevant legislation to consult in advance of action, and the law has no scienter requirement that might ease the vagueness of what is prohibited, as mere "willful neglect" will suffice for a violation of the Order. And the State Defendants' Orders, in fact, apply to non-essential businesses (whatever those might be) as well as law-abiding adult individuals who would leave their homes to go to and from them for, e.g., the purchase of constitutionally protected goods and services.

The State Defendants' Orders, especially through the lens of the Governor's latest remarks, are impermissible because their *it may be a crime, maybe not; they mean whatever your local cops and prosecutors say they mean* nature do not provide adequate notice, are overbroad, are subject to arbitrary and capricious applications and abuse, and both chill and directly infringe upon the exercise of fundamental rights under the Constitution. *McDonald v. City of Chicago*, 561 U.S. 742, 778, 791 (2010) (the right to keep and bear arms is an individual right fundamental to our system of ordered liberty).

Lastly, the State Defendants' argue that their Orders incorporate the latest CISA guidance. But that is simply not so. Defendant Gov. Newsom's EO-N-33-20 incorporates and makes effective statewide Defendant Public Health Officer Angell's March 19, 2020 Order, which holds that her Order is "*consistent with the March 19, 2020, Memorandum* on Identification of Essential Critical Infrastructure Workers During COVID-19 Response." But the CISA Memorandum that

expressly lists firearm industry workers as critical was issued in V2.0 guidance on March 28, 2020. And neither State Defendants have modified their Orders or otherwise expanded them to include the latest CISA guidance. Thus, by their very text, and in the absence of any further writings to modify their scope or effect, the State Defendants' Orders leave this question to this Court (and, apparently, local prosecutors). If, as the State Defendants argue, the State Defendants' Orders now expressly include the findings of CISA's March 28, 2020 V2.0 Advisory Memorandum – issued three days *after* the Governor's ad hoc statement which delegated and deferred the matter to local county sheriffs – then the State Defendants should expressly say so and be bound to their interpretation in a judicially enforceable order that the 40 million people in the State of California can rely on.

In the absence of an official policy revision or amended Orders issued consistent with State law that recognizes the firearms industry as part of the critical infrastructure necessary for public health, safety and community well-being – not to mention as necessary to the exercise of a fundamental right – and exempting them and the people who would use them from the reach of the criminal and civil liability, like with other "essential" transactions and conduct, the State Defendants' Orders and the Governor's remarks are simply a green light to permit local officials to do exactly what Defendant Sheriff Villanueva did—interpret and enforce the State Defendants' Orders differently on different days. A case and controversy exists here, and as discussed elsewhere in Plaintiffs' Application, the issue is certainly not moot.

### THE COUNTY DEFENDANTS' OPPOSITION

County Defendants Sheriff Alex Villanueva, Department of Public Health

Director Barbara Ferrer and the County of Los Angeles ("County Defendants") oppose Plaintiffs' TRO Application on the grounds that Defendant Sheriff Villanueva's latest flip-flop reversal of his *enforcement* position regarding gun store closures renders this case moot and/or lacking of an actionable case or controversy under Article III.

Firstly, the entire premise of the County Defendants' assertion of mootness arises from a single Twitter post issued by Sheriff Villanueva on March 30, 2020. (Beach Decl., Exhibit A.) In the image published in that "tweet," Sheriff Villanueva recognized that the Department of Homeland Security's advisory memorandum was "explicitly advisory in nature," and concluded that "the Los Angeles County Sheriff's Department will not order or recommend closure of businesses that sell or repair firearms or sell ammunition." But that is hardly enough to moot this case against the County Defendants. Plaintiffs seek declaratory and injunctive relief to prevent the County Defendants – not just the Defendant Sheriff – from shuttering essential firearm industry businesses and imposing criminal and civil liability under the County Defendants' Orders on individuals that would leave their homes to go to and from firearm industry essential businesses.

Second, the Defendant Sheriff's latest (third or fourth, depending on how one counts) policy and enforcement position – embedded within a social media post – hardly qualifies as binding reasonable assurance that firearms and ammunition retailers and ranges may stay open within the County, and that individuals may go to and from them, since it represents another change of position that, under the circumstances, is entirely unreliable. And this is not just a matter of trust, but a practical and legal one. The County recently (as of March 31, 2020) removed Defendant Sheriff Villanueva as Director of Emergency Operations. A

"violation or failure to comply with" the Safer At Home Order "is a crime punishable by fine, imprisonment, or both" under Cal. Health and Safety Code § 120295 and Los Angeles County Code § 11.02.080. (Los Angeles County Stay At Home Order, as modified, effective March 21, 2020.) And "the Health Officer may take additional action(s) for failure to comply with this Order." Violation of the County's Order "is a misdemeanor punishable by imprisonment, fine or both under California Health and Section Code Section 120295 *et seq*."

And more, Defendants' County and County Director of Public Health Ferrer's Orders are not exclusively enforceable by Defendant Sheriff Villanueva. "[P]ursuant to Sections 26602 and 41601 of the California Government Code and Section 101029 of the California Health and Safety Code, the Health Officer requests that the Sheriff and the Chiefs of Police in all cities located in the Los Angeles County Public Health Jurisdiction ensure compliance with and enforcement of this Order." *Id.*, ¶ 21. California Health and Safety Code § 101029 states, in pertinent part (emphasis added), that:

> "The sheriff of each county, or city and county, may enforce within the county, or the city and county, all orders of the local health officer issued for the purpose of preventing the spread of any contagious, infectious, or communicable disease. **Every peace officer of every political subdivision of the county, or city and county, may enforce within the area subject to his or her jurisdiction all orders of the local health officer issued for the purpose of preventing the spread of any contagious, infectious, or communicable disease.** This section is not a limitation on the authority of peace officers or public officers to enforce orders of the local health officer. . ."

And even Defendant Sheriff Villanueva's latest declaration – never mind that he cannot bind the County or its Health Officer, and is no longer Director of

Emergency Management for the County –  leaves open the door for further enforcement. In it, he declared: "Of course, I do not know, nor would it be appropriate to speculate, how in the future the COVID-19 crisis is going to impact the County that I am sworn to protect. However, at this time, I have no intention of, and do not reasonably foresee, changing my position concerning the treatment of members of the firearms industry as essential businesses for purposes of public health orders governing COVID-19." (Villanueva Decl., ECF No. 23-2, at ¶ 21.)

All this shows that, notwithstanding the sophistry and smoke surrounding the Defendant Sheriff's many differing statements, the County Defendants' Order, and various County and city governments' enforcement of it, are still live threats to people who would violate it to operate or go to and from firearm and ammunition retailers and shooting proficiency ranges. An injunction against the County Defendants is necessary, because (as the City of Los Angeles's position demonstrates), the County Defendants' Stay At Home Order is still being enforced within the County.

### THE CITY OF LOS ANGELES DEFENDANTS' OPPOSITION

Defendants Mayor Garcetti and the City of Los Angeles ("City of L.A. Defendants") oppose Plaintiffs' TRO Application on the grounds that the Constitution can be suspended whenever they themselves declare they can. In arguing that they can do as much, the City of L.A. Defendants' Opposition first claims that the Constitution "recognizes" that local governments hold "extraordinary powers" in times of public health emergencies, (Opp. at 9-10), and that "the power to impose quarantines and other public health measures is perhaps *the* archetypal police power that state and local governments possess, as the Constitution recognizes." (*Id*. at 9:27 – 10:1, italics in original.) But *Jacobson v.*

7

PLAINTIFFS' REPLY IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION | CASE NO. 2:20-CV-02874-AB-SK

*Commonwealth of Massachusetts*, 197 U.S. 11 (1905), cited in their Opposition for this proposition, ultimately involved a *legislative* enactment. 197 U.S. at 27 (the legislature of Massachusetts required the inhabitants of a city or town to be vaccinated when, in the opinion of the board of health, it was necessary for the public health or the public safety). Beyond the City of L.A. Defendants' Order and enforcement actions' constitutional infirmities under the Second, Fifth, and Fourteenth Amendments, the City's complete delegation and deferral of this matter to its executives bypassed any form of notice and legislative process and raises very real separation-of-powers concerns.

As the City of L.A. Defendants point out, the Tenth Amendment reserves powers not expressly enumerated and delegated to the federal government to the states—not a state's governor, nor a local mayor. If unchecked, unquestioning deference to executive orders – no matter how urgent the situation – leads to decisions which undermine the Constitution, along with its guarantees of liberty and our system of government, and which we will all surely regret after the dust settles. *See, e.g.*, *Hirabayashi v. United States*, 320 U.S. 81 (1943) (upholding appellant's conviction for violating a wartime curfew, perhaps another "archetypal" police power).

Indeed, in *Jacobson v. Commonwealth*, cited in the City's Opposition, the Court observed that its role as a court "would usurp the functions of another branch of government if it adjudged, as matter of law, that the mode adopted under the sanction of the state, to protect the people at large was arbitrary, *and not justified by the necessities of the case*." 197 U.S. at 27 (emphasis added). The Court continued: "We say necessities of the case, because it might be that an acknowledged power of a local community to protect itself against an epidemic threatening the safety of all might be exercised in particular circumstances and in

reference to particular persons in such an arbitrary, unreasonable manner, or might go so far beyond what was reasonably required for the safety of the public, as to authorize or compel the courts to interfere for the protection of such persons." *Id*.

Thus, ultimately, even under the City's cited authority, it comes down to a matter of what is "reasonably necessary." And when infringement upon an enumerated, fundamental right is concerned, a government does not simply get the benefit of the doubt. First of all, a categorical ban is categorically invalid under *Heller*. And the City of L.A. Defendants' Order and enforcement actions amount to a categorical ban. And to be clear, the City of L.A. Defendants' Order and enforcement actions are not tailored at all, let alone to a governmental interest. The only interest served by the City of L.A. Defendants' Order and enforcement actions are their policy preference of banning firearms and ammunition and chilling the exercise of rights by legally eligible adults.

This calculus does not change in an emergency, declared or otherwise. In *Bateman v. Purdue*, 881 F.Supp.2d 709, 715 (E.D. N.C. 2012), the district court evaluated North Carolina's statutes which authorized government officials to impose various restrictions on the possession, transportation, sale, and purchase of "dangerous weapons" during declared states of emergency. 881 F.Supp.2d at 710–11. The district court evaluated the statutes under the two-part test, and found first that "[i]t cannot be seriously questioned that the emergency declaration laws at issue here burden conduct protected by the Second Amendment." *Id*. at 713–14. "Additionally, although the statutes do not directly regulate the possession of firearms within the home, they effectively prohibit law abiding citizens from purchasing and transporting to their homes firearms and ammunition needed for self-defense. As such, these laws burden conduct protected by the Second Amendment." Accordingly, under strict scrutiny, the emergency declaration

9

statutes were voided and declared to be unconstitutional since the statutes were not narrowly tailored, e.g., with reasonable time, place and manner restrictions. *Id*. at 716.

Accordingly, if heightened scrutiny is appropriate here, strict scrutiny should likewise apply. But even under intermediate scrutiny, the City of L.A. Defendants' Order and enforcement actions are unconstitutional. Under intermediate scrutiny review, the government bears the burden of demonstrating a reasonable fit between the challenged regulation or law and a substantial governmental objective that the law ostensibly advances. *Board of Trustees of State Univ. of New York v. Fox*, 492 U.S. 469, 480–81 (1989). To carry this burden, the government must not only present evidence, but "substantial evidence" drawn from "reasonable inferences" that actually support its proffered justification. *Turner Broad. Sys., Inc.*, 520 U.S. 180, 195 (1997). And in the related First Amendment context, the government is typically put to the evidentiary test to show that the harms it recites are not only real, but "that [the speech] restriction will in fact alleviate them to a material degree." *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1177 (9th Cir. 2018) (citing *Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 188 (1999) (quoting *Edenfield v. Fane*, 507 U.S. 761, 770-71 (1993)).

This same evidentiary burden should apply with equal force to Second Amendment cases, where equally fundamental rights are similarly at stake. *See*, *e.g.*, *Ezell*, 651 F.3d at 706–07 ("Both *Heller* and *McDonald* suggest that First Amendment analogues are more appropriate, and on the strength of that suggestion, we and other circuits have already begun to adapt First Amendment doctrine to the Second Amendment context") (citing *Heller*, 554 U.S. at 582, 595, 635; *McDonald*, 130 S.Ct. at 3045). *See also Marzzarella*, 614 F.3d at 89 n.4 ("[W]e look to other constitutional areas for guidance in evaluating Second

Amendment challenges. We think the First Amendment is the natural choice.").

Under intermediate scrutiny, a court must ensure that "the means chosen are not substantially broader than necessary to achieve the government's interest." *Ward v. Rock Against Racism*, 491 U.S. 781, 800 (1989). Thus, in the First Amendment context, "the government must demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's interests, not simply that the chosen route is easier." *McCullen v. Coakley*, 134 S. Ct. 2518, 2540 (2014). In the Second Amendment context, Justice Breyer's intermediate scrutiny-like balancing test proposed in his *Heller* dissent considered "reasonable, but less restrictive, alternatives." 554 U.S. at 710 (Breyer, J., dissenting). Many circuit courts recognize the obligation in the Second Amendment context. *Heller v. District of Columbia*, 801 F.3d 264, 277–78 (D.C. Cir. 2015) ("*Heller III*"); *Ass'n of New Jersey Rifle & Pistol Clubs, Inc. v. Attorney Gen. New Jersey*, 910 F.3d 106, 124 n.28 (3d Cir. 2018); *Ezell*, 651 F.3d at 709; *Moore v. Madigan*, 702 F.3d 933, 940 (7th Cir. 2012); *United States v. Reese*, 627 F.3d 792, 803 (10th Cir. 2010); *Bonidy v. U.S. Postal Serv.*, 790 F.3d 1121, 1128 (10th Cir. 2015).

Here, there can be no "reasonable fit" between the City of L.A. Defendants' Order and enforcement actions that prohibit all legal firearm and ammunition transfers and training at shooting ranges, and the Defendants' presumptive desire to abate the spread of a viral pandemic. Like all other retailers who are exempt from the Order, firearm and ammunition retailers and ranges, and the people who would go to them, could abide by maximum occupancy limitations. And to the extent that certain activities (such as the pickup/transfer of firearms, ammunition, and the safe handling demonstration) are statutorily mandated to be face-to-face transactions, or in person, these activities can be safely conducted while adhering

to the minimum distancing requirements—just like a hardware store, or a grocery store.

It is exactly during declared states of emergency, and all of the attendant harms that may befall us, in which our resolve to adhere to constitutional principles is supremely tested. The question is, will we pass this test, or will we fail because of these fears, no matter how genuinely perceived the threat is at the time? *See, e.g., Hirabayashi*, 320 U.S. at 95 ("We think that constitutional government, in time of war, is not so powerless and does not compel so hard a choice if those charged with the responsibility of our national defense have reasonable ground for believing that the threat is real.").

Finally, the City of L.A. Defendants' Opposition cites *Teixeira v. County of Alameda*, 873 F.3d 670 (9th Cir. 2017) (en banc) for the proposition that it is not violating the Second Amendment rights of individuals because it is a restriction on businesses, not the individual right to own a firearm. (City of L.A. Defendants' Opp. at 12.) The outcome of that case, as framed by the Ninth Circuit's en banc panel majority, was premised on the existence of consumer choice. 873 F.3d at 679 ("[t]he exhibits attached to and incorporated by reference into the complaint, which we may consider […] demonstrate that Alameda County residents may freely purchase firearms within the County"), and at 679-80 ("potential gun buyers in Alameda County generally, and potential gun buyers in the unincorporated areas around San Lorenzo in particular, do have access to a local gun store just 600 feet from where Teixeira proposed to locate his store. And if the Big 5 Sporting Goods store does not meet their needs, they can visit any of the nine other gun stores in the County as a whole, including the three other gun stores in the unincorporated parts of the County.")

There is no such choice here. The County Defendants' Order, and State and

12

PLAINTIFFS' REPLY IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION | CASE NO. 2:20-CV-02874-AB-SK

local enforcement mandates, demands enforcement throughout the County of Los Angeles, including in the City of Los Angeles. And the City's Order also holds that firearm and ammunition related operations, conduct (leaving and going to homes), and transactions are banned under pain of criminal penalty, fines, and imprisonment. As the City of L.A. Defendants' declarant pointed out, there are eighteen firearm and ammunition vendors within the City, and they are *all* shut down, including plaintiffs. (*See* Meda Decl. (ECF No. 22), at ¶ 3-4. *See also* Kushner Supp. Decl. (ECF No. 18), at ¶¶ 5-7.) And thus, to the extent that the City's order is "more like a zoning rule" as the City of L.A. Defendants suggest in their Opposition at 12:17, that would make sense only if the zoning rule simply said that 'there shall be no zoning at all for the foreseeable future'.

Even the en banc panel in *Teixeira* recognized that a mere prohibition on the sale of *certain types* of ammunition "burdened the core Second Amendment right." 873 F.3d at 677 (citing *Jackson v. City and County of San Francisco*, 746 F.3d 953, 968 (9th Cir. 2014)); see also *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011). And the Ninth Circuit "court and other federal courts of appeals have held that the Second Amendment protects ancillary rights necessary to the realization of the core right to possess a firearm for self-defense." *Id*. Here, the City Defendants' Order and enforcement actions are a prohibition on the purchase of *all types* of firearms and ammunition. It cannot get more core than that.

Here, it comes down to what Defendant Mayor Garcetti declared to be "essential" when his Order exempted "visiting a health or veterinary care professional, obtaining medical supplies or medication, obtaining grocery items (including, without limitation, canned food, dry goods, fresh fruits and vegetables, pet supplies, fresh or frozen meats, fish, and poultry, any other household consumer products and products necessary to maintain the safety and sanitation of

residences and other buildings) for their household or to deliver to others, or for legally mandated government purposes." (City's Revised Order, ¶ 5(ii) (Eisenman Decl. Ex. B)). The City of L.A. Defendants believe that the firearm industry is not "essential," and that the workers who operate such businesses, and the people who would access them, can be banned until they decide not to. Why, under the Constitution, may a hardware or common household goods store remain open but all eighteen firearm and ammunition vendors in the City of Los Angeles be forced closed during a time when people are perhaps most likely to need those items to maintain their safety at home? The answer lies in what City Attorney Feuer is reported to have said, when he opined, "There's nothing essential about being able to purchase a new handgun." (FAC, ¶ 63.) In other words, because they said so.

The City does not get to make that type of call when it comes to an enumerated constitutional right. The City of L.A. Defendants' Order and enforcement actions are unconstitutional and must be enjoined under any standard applied to fundamental, individual rights.

## CONCLUSION

There is no dispute that the coronavirus pandemic is serious in nature. But it is the true test of our national character as a People that we adhere to constitutional principles, without fear, and directly in the face of such dangers. We must pass this test, and every other test which challenges our resolve to honor our founding principles. For these reasons, and as set forth in their Application, Plaintiffs' Application for a TRO and OSC re Preliminary Injunction should issue.

//

//

//

1

Dated: April 6, 2020

**SEILER EPSTEIN LLP**

2

3

/s/ *George M. Lee*
George M. Lee

4

5

Attorney for Plaintiffs

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15

PLAINTIFFS' REPLY IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION | CASE NO. 2:20-CV-02874-AB-SK