MICHAEL N. FEUER, City Attorney – SBN 111529
JAMES P. CLARK, Chief Deputy City Attorney – SBN 64780
KATHLEEN A. KENEALY, Chief Assistant City Attorney – SBN 212289
SCOTT MARCUS, Civil Litigation Branch Chief – SBN 184980
BLITHE S. BOCK, Assistant City Attorney – SBN 163567
BENJAMIN F. CHAPMAN, Deputy City Attorney – SBN 234436
JONATHAN H. EISENMAN, Deputy City Attorney – SBN 279291
200 North Main Street, 7th Floor, City Hall East
Los Angeles, CA 90012
Phone No.: (213) 978-2212  Fax No.: (213) 978-0763
Email: jonathan.eisenman@lacity.org

*Attorneys for Defendants,*
ERIC GARCETTI
and the CITY OF LOS ANGELES

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ADAM BRANDY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ALEX VILLANUEVA, et al.,<br><br>Defendants. | CASE NO: CV20-02874-AB (SK)<br>Hon. André Birotte Jr., Ctrm. 7B, 7th Fl., 1st Street<br>Hon. Steve Kim, Ctrm. 540, 5th Fl., Roybal<br><br>**CITY DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date: August 21, 2020<br>Time: 10:00 a.m. |

1

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 21, 2020, at 10:00 a.m., or as soon thereafter as this motion may be heard in Courtroom 7B, 7th Floor of the above-titled Court, located at 350 W. 1st Street, Los Angeles, California, 90012, Defendants Eric Garcetti and the City of Los Angeles will and hereby do move this Court for an order dismissing Plaintiffs' First Amended Complaint for lack of subject-matter jurisdiction under Rule 12(b)(1), or failure to state a claim under Rule 12(b)(6), of the Federal Rules of Civil Procedure.

This motion is based on this notice, the accompanying Memorandum of Points and Authorities, the contemporaneously filed Request for Judicial Notice, and the First Amended Complaint, as well as oral argument offered at any hearing on this motion.

The motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on May 14, 2020.

Respectfully submitted,

Dated: June 24, 2020

      MICHAEL N. FEUER, City Atty.
      JAMES P. CLARK, Chief Deputy City Atty.
      KATHLEEN A. KENEALY, Chief Asst. City Atty.
      SCOTT MARCUS, Civil Litigation Branch Chief
      BLITHE S. BOCK, Asst. City Atty.
      BENJAMIN F. CHAPMAN, Deputy City Atty.
      JONATHAN H. EISENMAN, Deputy City Atty.

By: /s/ Jonathan H. Eisenman
      JONATHAN H. EISENMAN, Deputy City Attorney

*Attorneys for Defendants,* ERIC GARCETTI and the CITY OF LOS ANGELES

**INTRODUCTION**

Almost exactly 3 months ago—and mere days into the application of unprecedented, but temporary, COVID-19 quarantine measures—Plaintiffs sued the City of Los Angeles to demand that commerce in firearms and ammunition be privileged to resume immediately. Never mind that the imperative of preserving public health led to the short-term closure of thousands of businesses, providing innumerable kinds of goods and services: According to Plaintiffs, the Second Amendment prevented the City from forcing gun stores briefly to close, too. Plaintiffs sought a temporary restraining order that would have forced the City to yield to that position. But they failed to obtain it, principally because this Court found that they were unlikely to succeed on the merits of their Second Amendment claim.

Some things have changed since then. Perhaps most importantly, the temporary emergency closures in place when Plaintiffs filed their operative First Amended Complaint have lapsed. One thing that hasn't changed, however, is the First Amended Complaint. Notwithstanding several stipulated extensions of time, entered expressly for the purpose of allowing Plaintiffs to amend their pleadings before the City and other Defendants in the litigation filed responses, Plaintiffs have changed nothing. The City therefore moves, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), to dismiss the First Amended Complaint without leave to amend.[1]

*First,* assuming for argument's sake that Plaintiffs had viable claims in March, when many gun stores were closed, there is no regulation or order keeping *any* retailers closed now. That leaves Plaintiffs without standing to seek the injunctive relief they requested, because there are no facts in the First Amended Complaint from which one could infer that any allegedly unconstitutional conduct will recur in the future—and so

---

[1] Plaintiffs sued the City and Mayor Garcetti in his official capacity—which amounts to suing the City twice over. *Cmty. House, Inc. v. City of Boise*, 623 F.3d 945, 966–67 (9th Cir. 2010) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)). For convenience's sake, in this Memorandum "the City" subsumes both the City and the Mayor.

3

no basis to conclude that an injunction would redress any harm the Plaintiffs allegedly suffered.

*Second*, even if all the factual allegations that the First Amended Complaint contains against the City are taken to be true, those allegations don't add up to a viable claim for relief. There is a presumption that conditions imposed on commerce in firearms are constitutional, and anyway, measures that don't infringe on the core right to possess a firearm for self-defense receive only intermediate scrutiny. That is why this Court already found that Plaintiffs were unlikely to prevail on a claim that the City violated the Second Amendment when the Mayor ordered all sorts of businesses to close temporarily, leading to the relatively brief closure of many—though not necessarily all—stores in the City that sell firearms or ammunition. And as to Plaintiffs' other claim, i.e., that the City's emergency order closing various businesses was unconstitutionally vague: This Court essentially found that the claim was meritless in the course of ruling on Plaintiffs' TRO application. The claim hasn't gained any merit since then.

Consequently, as did the measures that briefly closed several firearms retailers, this action should come to an end. The Court should dismiss it without leave to amend.

## STATEMENT OF THE CASE

**A.    Plaintiffs file a First Amended Complaint, the first pleading to name the City.**

Plaintiffs filed their First Amended Complaint—the first pleading to name the City—on March 29, 2020. (First Am. Compl. [Doc. No. 9].) That document contains a total of 108 paragraphs, of which at most 14 have anything to do with the City. (First Am. Compl. ¶¶ 10, 14, 46, 47, 63, 75, 82–91.) The remainder deal with other Defendants in the case, i.e., other government officials and entities elsewhere in California.

The First Amended Complaint alleges only that two Plaintiffs are in the City of Los Angeles. Plaintiff Alan Kushner owns The Target Range, "a firearm and

ammunition retailer, indoor shooting range, and training facility in Van Nuys, California, a neighborhood of the City of Los Angeles, California." (First Am. Compl. ¶ 10.) The other Plaintiff in the City is Kushner's store, The Target Range. (*Id.* ¶ 14.) It is "a California corporation holding federal, state and local licenses to conduct the temporary rental and sale of arms, including firearms, ammunition, magazines and appurtenances, as well as to operate an indoor shooting range and training center, in Van Nuys, California." (*Id.*)

In two more paragraphs, Plaintiffs allege that on March 19, the Mayor issued an order—the Safer At Home Order—which required "'all persons living within the City of Los Angeles [] to remain in their homes," and "all businesses within the City of Los Angeles [] to cease operations that require in-person attendance by workers at a workplace (including, without limitation, indoor malls and indoor shopping centers, including all stores except for those stores considered essential activities…)" (*Id.* ¶ 46 [Plaintiffs' brackets and ellipses].) According to that Order, "failure to comply 'shall constitute a misdemeanor subject to fine and imprisonment.'" (*Id.* ¶ 47.)

Plaintiffs then allege statements purportedly taken from an Associated Press report, which claimed that City "'officials have deemed gun shops to be nonessential and must close.'" (*Id.* ¶ 63.) Further, the report is alleged to have said that "'according to City of Los Angeles City Attorney Mike Feuer, only "life-sustaining" businesses, such as grocery stores and pharmacies, can be open.'" (*Id.*) Plaintiffs also allege that the AP report attributed to City Attorney Feuer the statement "'There's nothing essential about being able to purchase a new handgun.'" (*Id.*) (Note that the use of quotation marks in the First Amended Complaint is confusing; it is difficult to decipher where the pleading is directly quoting the AP report, and where the AP report is, in turn, directly quoting a person.)

Based on these factual allegations, Plaintiffs claim under 42 U.S.C. § 1983 that the City's "orders, directives, policies, practices, customs and enforcement actions," in violation of the Second Amendment, "prohibit law-abiding individuals from purchasing

5

firearms and ammunition for the purpose of protecting themselves and their families (or for any other purpose)." (*Id.* ¶ 84.) Those "orders, directives, policies, practices, customs and enforcement actions amount," according to Plaintiffs, "to a ban on purchasing and transferring firearms and ammunition." (*Id.* ¶ 86.) Plaintiffs call the policies at issue "untailored and irrational," because they "expressly allow some goods retailers to continue operating but prevent Retailer Plaintiffs"—in the City, that's only Plaintiff The Target Range—"from operating and selling their goods to their customers and members of the public." (*Id.* ¶ 87.)

Plaintiffs also claim, again under 42 U.S.C. § 1983, that various Defendants' "conflicting and confusing orders, policies, practices, customs, and enforcement actions are arbitrary and capricious, overbroad, [and] unconstitutionally vague," in violation of Plaintiffs' Fourteenth Amendment due process rights. (*Id.* ¶ 94.) Plaintiffs nowhere allege what is supposedly vague in the City's Safer At Home Order, however.

To redress their alleged injuries, Plaintiffs prayed for declaratory and injunctive relief, as well as nominal damages. (*Id.* at 45–46.)

**B.     Plaintiffs apply for, but do not receive, a temporary restraining order.**

The day after they filed their First Amended Complaint, Plaintiffs filed an application for a temporary restraining order. In denying that application, the Court first concluded that Plaintiffs were unlikely to prevail on the merits of their Second Amendment claim: Even assuming intermediate scrutiny applies to an emergency order that has the incidental effect of temporarily closing gun stores, the Court found that there is a reasonable fit between such an order and the important objective of stemming a deadly pandemic. (TRO Order [Doc. No. 19] at 5.) Consequently, it would satisfy intermediate scrutiny and likely doom Plaintiffs' Second Amendment claim. (*Id.*)

Then, as to Plaintffs' void-for-vagueness theory, the Court found that the Safer At Home Order is "both clear and explicit." (*Id.* at 6.) The Court denied Plaintiffs' TRO application on April 6, 2020.

6

**C.     The parties stipulate to a total of 43 days' worth of extensions for Plaintiffs to seek leave to amend their pleadings further.  Plaintiffs never do.**

With the denial of Plaintiffs' TRO application, the next filing due from the City, on April 22, 2020, would have been a response to the First Amended Complaint.  On April 17, Plaintiffs and the City stipulated to move that due date to May 4, 2020.  (City Stipulation [Doc. No. 32].)  Shortly thereafter, Plaintiffs and some of the other Defendants stipulated that the deadline for those other Defendants to respond to the First Amended Complaint would move from April 23 to May 25—expressly so that Plaintiffs could seek leave to file an amended complaint.  (State Stipulation [Doc. No. 33]; *see also* County Stipulation [Doc. No. 36].)  So that all Defendants' responses would be due simultaneously, Plaintiffs and the City stipulated that the City's responsive pleading would also be due on May 25.  (City Stipulation [Doc. No. 35].)

As the May 25 responsive-pleading deadline approached, Plaintiffs represented in a Local Rule 7-3 conference of counsel that they still intended to seek leave to amend their complaint.  (City Stipulation [Doc. No. 39].)  To give Plaintiffs more time to amend—and in order to avoid responding to a complaint that would be mooted by amendment—the City and Plaintiffs stipulated that Plaintiffs would seek leave to amend by June 5 (*id.*), or almost exactly two months from the day that the Court denied Plaintiffs' TRO application in an order that suggested at least *some* substantive issues with Plaintiffs' case.  The Plaintiffs and City stipulated that the City's response would then be due on June 24.  (*Id.*)  Other Defendants likewise stipulated that their responses would be due on June 24.  (County Stipulation [Doc. No. 40]; State Stipulation [Doc. No. 41].)  Plaintiffs never filed an amended pleading.

## LEGAL STANDARDS

**Dismissal for lack of subject-matter jurisdiction.**  It is a plaintiff's burden to show, at all times, that a federal court has subject-matter jurisdiction over the plaintiff's case.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  Federal Rule of Civil

Procedure 12(b)(1) allows a defendant to move at any time to dismiss an action if the district court lacks subject-matter jurisdiction over it. Fed. R. Civ. P. 12(b)(1), 12(h)(3). As with other Rule 12 motions, a court starts by taking as true all the facts alleged in the complaint—and drawing any reasonable inferences from them in favor of the plaintiff. *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1122 (9th Cir. 2019). Unlike other Rule 12 motions, however, a court adjudicating a Rule 12(b)(1) motion can look beyond the four corners of the complaint (and judicially noticeable materials) and consider other evidence. *Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1151 (9th Cir. 2019). If it does that, a court need no longer assume the facts alleged in the complaint are true, and can instead demand that the plaintiff produce evidence to demonstrate the court's jurisdiction over the action. *Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).

**Dismissal for failure to state a claim.** A defendant may move to dismiss a claim if, taking all the facts alleged in the operative complaint as true, there is no plausible legal basis on which the plaintiff would be entitled to relief. Fed R. Civ. P. 12(b)(6); *Karasek v. Regents of the Univ. of Cal.*, 956 F.3d 1093, 1104 (9th Cir. 2020). On the motion, a court is limited to considering the factual statements in the complaint, anything the complaint incorporates by reference, and judicially noticeable materials. *Karasek*, 956 F.3d at 1104. And, to be clear, it is only the complaint's *factual* statements that a court considers; the court is not required to accept the labels that a plaintiff attaches to them, or to credit the legal conclusions the plaintiff draws from them. *Jacob v. Mentor Worldwide, LLC*, 393 F. Supp. 3d 912, 918–19 (C.D. Cal. 2019).

**Leave to amend.** Plaintiffs may amend their pleadings at a district court's discretion. Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962). A court may exercise that discretion to bar a plaintiff from amending if the plaintiff has acted in bad faith, caused undue delay, repeatedly failed to cure deficiencies with previous amendments, or could make only futile changes to the pleading. *Vieira v. Mentor Worldwide, LLC*, 392 F. Supp. 3d 1117, 1132–33 (C.D. Cal. 2019).

# ARGUMENT

## I. Plaintiffs lack standing to seek injunctive relief.

A federal court's subject-matter jurisdiction depends on the existence of a case or controversy, *Chafin v. Chafin*, 568 U.S. 165, 171 (2013), and one of the things necessary to demonstrate the existence of a case or controversy is a plaintiff with standing to sue, *Lujan*, 504 U.S. at 559–61. Whether a plaintiff has standing to sue depends, in turn, on whether the plaintiff has (1) suffered an actual injury that is (2) traceable to the conduct about which the plaintiff complains and is (3) redressable by a favorable judicial decision. *Id.* at 560–61. A plaintiff must demonstrate standing to pursue each claim and form of relief in its complaint. *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017).

When a plaintiff seeks injunctive relief, this standing requirement means showing that the injunction will redress the injury about which the plaintiff complains. And *that* means that there must be some ongoing or likely-to-recur injurious conduct for a court to enjoin—otherwise, the injunction would be aimed only at a hypothetical future injury and would be simultaneously unlikely to provide any form of redress for an injury already suffered. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967, 972 (9th Cir. 2018). To demonstrate the requisite harm, "a plaintiff must show 'a sufficient likelihood that he will again be wronged in a similar way.'" *Id.* at 967 (quoting *City of L.A. v. Lyons*, 461 U.S. 95, 102 (1983)).

Whence the facts showing ongoing or likely-to-recur injurious conduct in this case? The City's allegedly injurious act was the promulgation, and threat of enforcement of, the Safer At Home Order, which had the effect of closing many stores that sell firearms. But the Safer At Home Order had an expiration date from the outset. (RJN at 9.) To be sure, the date was subsequently extended, but the Safer At Home Order was also subsequently—and extensively—revised. (*Compare id.* at 4–9 *with id.* at 21–32.) In its current incarnation, that document—the Safer LA Order—allows all

retail stores to be open.  (*Id.* at 27 ¶ 5(vii)(y).)

Plaintiffs have alleged no facts to suggest that will change.  But it is *their* burden to do so if they intend to seek prospective injunctive relief.  Because they have failed to meet that burden, the Court lacks subject-matter jurisdiction over Plaintiffs' claims to the extent they seek injunctive relief against the City.

## II. Irrespective of the relief requested, Plaintiffs' claims fail as a matter of law.

### A. Plaintiffs' Second Amendment claim fails as a matter of law.

The Second Amendment protects a "core right to possess a firearm for self-defense." *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017) (en banc); *see District of Columbia v. Heller*, 554 U.S. 570, 630 (2008) (recognizing the Second Amendment's protection of the "core lawful purpose of self-defense").  Outside of that core, measures that affect firearms receive less protection; measures that impose only "conditions and qualifications on the commercial sale of firearms" are "presumptively lawful."  *Heller*, 554 U.S. at 626–27 & n.26; *cf., e.g.*, *Peruta v. Cnty. of San Diego*, 824 F.3d 919, 939 (9th Cir. 2016) (en banc) (as a matter of its historic scope, "the Second Amendment right to keep and bear arms does not include, in any degree, the right of a member of the general public to carry concealed firearms in public.")

The measure at issue here was a temporary emergency order, made in an attempt to avert pandemic-driven crisis, that incidentally affected some stores that sell firearms.  (RJN at 4–5.)[2]  Even assuming for argument's sake that such a measure could—owing to its incidental effect on firearms possession—be the subject of any Second Amendment scrutiny at all, it would be subject at most to an intermediate level of scrutiny.  *Pena v. Lindley*, 898 F.3d 969, 976 (9th Cir. 2018).  Applying intermediate scrutiny, a court asks whether there is "(1) a significant, substantial, or important government objective, and (2) a 'reasonable fit' between the challenged law and the asserted objective."  *Pena*, 898

---

[2] Not even all such stores:  An early revision to the Safer At Home Order clarified that pawn shops could remain open for business, because they are financial institutions.  (RJN at 15 ¶ 5(vii)(g.))  A pawn shop that was licensed to sell firearms could therefore have continued to sell them, even while retail outlets were closed.

10

F.3d at 979. That requires a showing that the Safer At Order "promotes a substantial government interest that would be achieved less effectively absent the [Safer At Home Order], but not necessarily that the [Safer At Home Order] is the least restrictive means of achieving the [City's] interest." *Id.* (cleaned up).

There's no dispute about the weighty government objective here. (RJN at 4–5.) *See Jacobson v. Massachusetts*, 197 U.S. 11, 27 (1905) ("of paramount necessity, a community has the right to protect itself against an epidemic of disease which threatens the safety of its members"). Given that it need not have been the least restrictive means of doing so—and given that the temporary retail closures it prescribed have already expired—the Safer At Home Order was a reasonable method of achieving that objective. *See generally S. Bay United Pentecostal Church v. Newsom*, 207 L. Ed. 2d 154, 154–55 (2020) (C.J. Roberts, concurring in denial of application for injunctive relief) (substantial deference is owed to elected officials in grappling with a pandemic). This Court already preliminarily determined as much (TRO Order at 5–6), and Plaintiffs did not avail themselves of the long period since then to develop additional factual allegations that might upset that determination. Plaintiffs' Second Amendment claim should be dismissed.

**B.     Plaintiffs' vagueness claim fails as a matter of law.**

A regulation is unconstitutionally vague if it is "so vague it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015). In this case, that is a better description of Plaintiffs' vagueness claim against the City than it is of the Safer At Home (or the Safer LA) Order. For while the First Amended Complaint alleges that "Defendants' conflicting and confusing orders, policies, practices, customs, and enforcement actions are arbitrary and capricious, overbroad, unconstitutionally vague, and violate Plaintiffs['] . . . Due Process rights" (First Am. Compl. ¶ 94), it doesn't follow that boilerplate language with any factual allegations whatsoever about the *City's* Safer At Home Order (it has much to say, instead, about State and County orders).

11

Suffice it to say, a complaint that alleges only "[l]abels, conclusions, and 'a formulaic recitation of the elements of a cause of action will not do.'" *Jacob*, 393 F. Supp. 3d at 918–19 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

But assume, for argument's sake, that someone reviewed the Safer At Home Order looking for vague language that would make Plaintiffs' case for them. In fact, someone did that: This Court already had a chance to examine Plaintiffs' claim that something—anything—about the Safer At Home Order was unconstitutionally vague. It found that the document, even in a much earlier iteration, was "both clear and explicit." (TRO Order at 6.) The current Safer LA Order is not any *less* precise than the Safer At Home Order was. (*Compare* RJN at 6–9 *with id.* at 23–28.)

Plaintiffs' vagueness claim fails as a matter of law.

## III.     The Court should deny Plaintiffs leave to amend.

If Plaintiffs' claims are dismissed, that leaves the question whether they should be allowed leave to amend. They should not be. On a narrow point, it would be futile to amend the claim that either the Safer At Home Order or the Safer LA Order is unconstitutionally vague: Neither of them is, or was, and nothing Plaintiffs can allege now will make them so. *See Vieira*, 392 F. Supp. 3d at 1132–33 (no leave to make futile amendments). More broadly, there's the fact that Plaintiffs unduly delayed seeking an amendment. *Id.* at 1132 (no leave after undue delay). They have known at *least* since this Court's resolution of their TRO application, over two months ago, that their claims have problems. They stipulated once to an extension of time to allow them to seek leave to amend. (State Stipulation [Doc. No. 33].) After the conference of counsel preceding this motion, over one month ago, Plaintiffs entered a second stipulation that would allow them to seek leave to amend by June 5. (City Stipulation [Doc. No. 39].) Instead of amending, however, Plaintiffs appear satisfied to squander the City's time in responding to, e.g., a vagueness claim that obviously lacks merit—and the Court's time in again telling them as much. Plaintiffs' shouldn't benefit from the Court's discretion to let them do now what they should have done long ago.

**CONCLUSION**

The Court should dismiss the First Amended Complaint as to the City of Los Angeles and Mayor Eric Garcetti, without leave to amend.

Respectfully submitted,

Dated: June 24, 2020

MICHAEL N. FEUER, City Atty.
JAMES P. CLARK, Chief Deputy City Atty.
KATHLEEN A. KENEALY, Chief Asst. City Atty.
SCOTT MARCUS, Civil Litigation Branch Chief
BLITHE S. BOCK, Asst. City Atty.
BENJAMIN F. CHAPMAN, Deputy City Atty.
JONATHAN H. EISENMAN, Deputy City Atty.

By: /s/ Jonathan H. Eisenman
JONATHAN H. EISENMAN, Deputy City Attorney

*Attorneys for Defendants,* ERIC GARCETTI and the CITY OF LOS ANGELES