1  PAUL B. BEACH, State Bar No. 166265
   pbeach@lbaclaw.com
2  JIN S. CHOI, State Bar No. 180270
   jchoi@lbaclaw.com
3  LAWRENCE BEACH ALLEN & CHOI, PC
   100 West Broadway, Suite 1200
4  Glendale, California  91210-1219
   Telephone No. (818) 545-1925
5  Facsimile No. (818) 545-1937

6  Attorneys for Defendants
7  County of Los Angeles, Sheriff Alex Villanueva,  and Barbara Ferrer

8            **UNITED STATES DISTRICT COURT**

9   **CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION**

10

| | |
|---|---|
| 11 ADAM BRANDY, an individual; JONAH MARTINEZ, an individual; | Case No. 2:20-cv-02874-AB-SK |
| 12 DAEMION GARRO, an individual; DG 2A ENTERPRISES INC., d.b.a. | Honorable André Birotte, Jr. |
| 13 GUN WORLD; JASON MONTES, an individual;  WEYLAND-YUTANI | **DEFENDANTS COUNTY OF LOS ANGELES, SHERIFF ALEX** |
| 14 LLC, d.b.a. MATCH GRADE GUNSMITHS; ALAN KUSHNER, | **VILLANUEVA AND BARBARA FERRER'S NOTICE OF** |
| 15 an individual;  THE TARGET RANGE; TOM WATT, an | **MOTION AND MOTION FOR JUDGMENT ON THE** |
| 16 individual;  A PLACE TO SHOOT, INC.; SECOND AMENDMENT | **PLEADINGS; MEMORANDUM OF POINTS AND AUTHORITIES** |
| 17 FOUNDATION; CALIFORNIA GUN RIGHTS FOUNDATION; | **AND DECLARATION OF JIN S. CHOI IN SUPPORT THEREOF** |
| 18 NATIONAL RIFLE ASSOCIATION OF AMERICA; and FIREARMS | *[Defendants' Request for Judicial* |
| 19 POLICY COALITION, INC., | *Notice and Exhibits filed and* |
| 20 Plaintiffs, | *[Proposed]Order lodged concurrently herewith]* |
| 21 vs. | Date:  September 18, 2020 |
| 22 ALEX VILLANUEVA,  in his | Time: 10:00 a.m. |
| official capacity as Sheriff of Los | Crtm.: First Street, 7B |
| 23 Angeles County, California,  and in his capacity as the Director of | |
| 24 Emergency Operations; GAVIN NEWSOM, in his official capacity as | |
| 25 Governor and Commander in Chief of the State of California;  SONIA Y. | |
| 26 ANGELL, in her official capacity as California Public Health Officer; | |
| 27 BARBARA FERRER, in her official capacity as Director of Los Angeles | |
| 28 County Department of Public Health; | |

| | |
|---|---|
| COUNTY OF LOS ANGELES; ERIC GARCETTI, in his official capacity as Mayor of the City of Los Angeles, California; CITY OF LOS ANGELES, CALIFORNIA; JUSTIN HESS, in his official capacity as City Manager and Director of Emergency Services for the City of Burbank; and CITY OF BURBANK, CALIFORNIA,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

PLEASE TAKE NOTICE that on September 18, 2020 at 10:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 7B before the Honorable Andre Birotte, Jr., of the United States District Court for the Central District of California, located at 350 West First Street, Los Angeles, California 90012, Defendants County of Los Angeles, Sheriff Alex Villanueva (in his official capacity), and Barbara Ferrer (in her official capacity) (collectively, "the County Defendants") will and herby do move for dismissal of the First Amended Complaint (ECF No. 9), pursuant to Federal Rules of Civil Procedure Rule 12(c).

The County Defendants' Motion will be based on the following grounds:

(1)    Because Plaintiffs' claims for declaratory and injunctive relief are inextricably tied to the County of Los Angeles' March 19, 2020 emergency COVID-19 related public health order – which has since been superseded by the emergency order of June 18, 2020 (which in turn was superseded by the emergency order of August 12, 2020) – there is no live case or controversy, leaving Plaintiffs without standing to pursue their claims, which are now moot as a matter of law;

(2)    Plaintiffs' claims fail as a matter of law because the County Defendants' emergency response to the COVID-19 pandemic, including the alleged temporary closure of firearms retailers in the County, reasonably fit the

significant government objective of reducing the spread of COVID-19 within the community, thereby satisfying the applicable intermediate scrutiny;

(3)     The County's emergency public health orders have explicitly identified those businesses and activities that must close during the ongoing pandemic response, and firearms retailers are <u>not</u> among those that have been required to close;

(4)     Based on the history of the pandemic and the current scientific consensus, there is no legitimate basis to infer any reasonable possibility of the County implementing any action during the remainder of the pandemic response that would result in the closure of firearms retailers or any related constitutional violation alleged in this action; and

(5)     Plaintiffs' claims against Defendants Sheriff Villanueva and Director Ferrer, who are sued in their official capacity only, are duplicative of the claims alleged against Defendant County of Los Angeles.

This Motion will be based on this Notice of Motion, the attached Memorandum of Points and Authorities and Declaration of Jin S. Choi and attached exhibits, Defendants' concurrently filed Request for Judicial Notice, the Court's file in this matter, and such further oral and documentary evidence as the Court may consider at or prior to the hearing on this matter.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on July 7 and July 22, 2020. (*See* Declaration of Jin S. Choi, ¶¶ 2-4; Exhibit "A".)

Dated: August 21, 2020                    LAWRENCE BEACH ALLEN & CHOI, PC

                                          By _____/s/  Jin S. Choi_____
                                               Jin S. Choi
                                               Attorneys Defendants County of Los
                                               Angeles, Sheriff Alex Villanueva,
                                               and Barbara Ferrer

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ...................................... 1

I.      Introduction........................................................................................ 1

II.     This Action For Injunctive Relief Challenges An Obsolete Emergency Public Health Order That Plaintiffs Have Already Unsuccessfully Challenged .................................................................. 3

III.    Because Plaintiffs' Claims Against The County Are Inextricably Tied To The County's March 19, 2020 Public Health Order That Has Long Since Been Superseded, Plaintiffs' Claims Should Be Dismissed.............................................................................................. 8

        A.      The Operative County COVID-19 Public Health Order Allows The Operation Of Lower-Risk Retail Businesses, Including Firearms Retailers ...................................................................... 8

        B.      Without Any Live Case Or Controversy, Plaintiffs Are Left Without Standing To Seek Injunctive Relief .................................10

IV.     The County's Emergency COVID-19 Orders – The Indisputable Purpose Of Which Is To Limit The Community Spread Of A New And Often-Fatal Virus – Serve Compelling Government Interests And Unquestionably Withstand Constitutional Challenge .......................12

        A.      The Temporary Closure Of Firearms Retailers To Help Limit The Spread Of COVID-19 Would Not Have Violated The Second Amendment .......................................................................13

        B.      The Clearly Delineated County Public Health Order Does Not Require The Closure Of Lower-Risk Businesses Such As Firearms Retailers .....................................................................15

        C.      Any Suggestion That The County May Modify Its Current Order To Mandate Closure Of Firearms Retailers Is Factually Unfounded And Wholly Speculative ...............................................15

        D.      The Ninth Circuit's Decision In *Duncan v. Becerra* Does Not Materially Affect The Instant Constitutional Analysis...................17

V.      The Official Capacity Claims Against Sheriff Villanueva And Director Ferrer Are Redundant And Should Be Dismissed.......................17

VI.     Conclusion...........................................................................................18

i

# **TABLE OF AUTHORITIES**

**Page(s)**

## **Cases**

*Altman v. County of Santa Clara,*
  2020 WL 2850291 (N.D. Cal. June 2, 2020) ................................................14

*Assoc. of Med. Colls. v. United States*,
  217 F.3d 770 (9th Cir. 2000) .......................................................................10

*Barnes v. Healy*,
  980 F.2d 572 (9th Cir. 1992) .......................................................................11

*Butler v. Elle*,
  281 F.3d 1014 .............................................................................................18

*Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*,
  637 F.3d 1047 ............................................................................................. 7

*Chavez v. United States*,
  683 F.3d 1102 (9th Cir. 2012) .................................................................... 7

*City of Erie v. Pap's A.M.*,
  529 U.S. 277 (2000) ....................................................................................11

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) .............................................................................. 10, 11

*County of Los Angeles v. Davis*,
  440 U.S. 625 (1979) ....................................................................................11

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006) ....................................................................................10

*District of Columbia v. Heller*,
  554 U.S. 570 (2008) ............................................................................. 13, 17

*Duncan v. Becerra*,
  2020 WL 4730668 (9th Cir. 2020)........................................................ 13, 17

*Dworkin v. Hustler Magazine Inc.*,
  867 F.2d 1188 (9th Cir. 1989) .................................................................... 7

*Friends of the Earth, Inc. v. Laidlaw Environmental Services,*
  528 U.S. 167 (2000) ....................................................................................11

*Fyock v. Sunnyvale*,
  779 F.3d 991 (9th Cir. 2015) .......................................................................13

*Hendrickson v. eBay Inc.*,
  165 F. Supp.2d 1082 (C. D. Cal. Sept. 4, 2001) ............................................ 11

*Jackson v. City and Cty. of San Francisco*,
  746 F.3d 953 (9th Cir. 2014) ............................................................ 13

*Johnson v. United States*,
  576 U.S. 591 (2015) ..................................................................... 6

*Kentucky v. Graham*,
  473 U.S. 159 (1985) .................................................................... 18

*Langer v. McKelvy*,
  2015 WL 13447522 (C.D. Cal. Sept. 24, 2015) .................................... 10, 12

*Lewis v. Cont'l Bank Corp.*,
  494 U.S. 472 (1990) .................................................................... 10

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) .................................................................... 10

*Luke v. Abbott*,
  954 F.Supp. 202 (C.D. Cal. Feb. 26, 2002) ............................................ 18

*McIndoe v. Huntington Ingalls Inc.*,
  817 F.3d 1170 (9th Cir. 2016) ........................................................ 16

*Pena v. Lindley*,
  898 F.3d 969 (9th Cir. 2018) ......................................................... 14

*R.W. Beck & Assocs. v. City & Borough of Sitka*,
  27 F.3d 1475 (9th Cir. 1994) ......................................................... 16

*Silvester v. Harris*,
  843 F.3d 816 (9th Cir. 2016) ......................................................... 17

*Sossamon v. Lone Star of Texas*,
  560 F.3d 316 (5th Cir. 2009) ......................................................... 16

*Talib v. Nicholas*,
  2015 WL 456546 (C.D. Cal. Feb. 2, 2015) ............................................. 18

*Teixeira v. County of Alameda*,
  873 F.3d 670 (9th Cir. 2017) ......................................................... 14

*U.S. v. In re Seizure of One Blue Nissan Skyline Auto., and One Red Nissan Skyline*,
  683 F.Supp.2d 1087 (C.D. Cal. Feb. 1, 2010) ........................................ 12

*United States v. Chovan*,
  735 F.3d 1127 (9th Cir. 2013) ...................................................... 6, 13

*United States v. Geophysical Corp. of Alaska*,
    732 F.2d 693 (9th Cir. 1984) ...................................................................11

*Vance v. County of Santa Clara*,
    928 F.Supp. 993 (N.D. Cal. June 11, 1996) ...........................................18

*Winter v. Nat. Res. Def. Council*,
    555 U.S. 7 (2008) ....................................................................................13

*Wolfson v. Brammer*,
    616 F.3d 1045 (9th Cir. 2010) ...........................................................10, 11

**<u>Statutes</u>**

Article III of the United States Constitution ......................................................10

California Penal Code § 32310 ...........................................................................17

**<u>Rules</u>**

Federal Rules of Civil Procedure Rule 12(b)(6) ..................................................7

Federal Rules of Civil Procedure Rule 12(c) .......................................................7

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    Introduction.

The global emergency response to the deadly novel coronavirus ("COVID-19") pandemic is a truly unprecedented event in modern human history, resulting in massive interruptions in the global economy and gaping breaches in the daily routines of everyday life.[1]

In the United States, public officials occupying every level of government have had to identify, formulate and implement a myriad of immediate, interim and long-term responsive and preventative actions designed to hopefully and potentially curb the spread of COVID-19 within every town, city and county — while somehow managing the surges in emergency hospitalizations and slowing the growth rate of the ever-increasing death toll.  As the incessant stream of news reports remind us, despite the herculean efforts of the world's scientific community and the expenditures of vast swaths of private and public resources, this epic human tragedy is far from over.  The phrase "flattening the curve" will forever be imprinted on our lexicon.

With the instant action alleging past infringements upon the Second Amendment by the County of Los Angeles during the early throes of this pandemic, it should be noted that the County of Los Angeles has been struck harder than any other county in the United States, with a total of over 227,000

---

[1] COVID-19 is highly contagious and has no known cure, with some victims showing no symptoms and others dying within a matter of weeks.  The worldwide scientific race toward an effective vaccine presently holds some promise but even the most optimistic estimates suggest that any widely available vaccine is several months away, at the absolute minimum.  *See* https://www.nytimes.com/interactive/2020/science/coronavirus-vaccine-tracker.html (last visited August 21, 2020); https://www.who.int/publications/m/item/draft-landscape-of-covid-19-candidate-vaccines (last visited August 21, 200).

confirmed COVID-19 cases and 5,446 COVID-19 related deaths, as of August 21, 2020.[2] The State of California, in turn, has had the most confirmed cases of any State.[3] These daunting figures, and the human, economic and emotional toll to which they speak, are staggering.[4]

Indeed, identifying a more stark example of where constitutionally "compelling governmental interests" were so indisputably at stake may be impossible. This pandemic threatens the lives of every human in its uncontainable path, with no regard for age, race, or any other demographic classification. The constricting effect of the countless tentacles of the pandemic on virtually every basic and vital aspect of our society is both incalculable and real.

It is against this factual landscape that the Court must examine the viability of Plaintiffs' constitutional claims for declaratory and injunctive relief grounded on the claim that the County of Los Angeles, for a short period of time, required the closure of firearms retailers in certain parts of the County. Plaintiffs must admit that the alleged Second Amendment violations ceased months ago.

---

[2] *See* Exhibit "9" at p. 72 of Defendants' Request for Judicial Notice filed concurrently herewith & https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/county-map.html (the CDC reports that 34.8% of confirmed COVID-19 cases in California have occurred in the County of Los Angeles; last visited August 21, 2020); https://coronavirus.jhu.edu/us-map (the County of Los Angeles has reported approximately 77,000 more COVID-19 cases than Miami-Dade County; last visited August 21, 2020).

[3] *See* https://www.statista.com/statistics/1102807/coronavirus-covid19-cases-number-us-americans-by-state/ (last visited August 21, 2020).

[4] As of August 21, 2020, the United States has reported over 5,500,000 COVID-19 cases, and over 172,000 COVID-19-related deaths. *See* https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited August 21, 2020); Exhibit "10" at p. 74 of Request for Judicial Notice.

Therefore, not only are Plaintiffs without legal standing, having been left with claims which are moot as a matter of law, those same claims fail because they cannot come close to withstanding the controlling constitutional examination.

## II.   This Action For Injunctive Relief Challenges An Obsolete Emergency Public Health Order That Plaintiffs Have Already Unsuccessfully Challenged.

On March 19, 2020, the County of Los Angeles issued its "Safer at Home Order for Control of COVID-19" in response to the sudden and massive surge in confirmed COVID-19 cases and COVID-19 related deaths throughout the County and the State.[5] Plaintiffs filed this action for declaratory and injunctive relief on March 27, 2020 (ECF No. 1), and two days later, filed their First Amended Complaint (ECF No. 9).

Plaintiffs named as Defendants the County of Los Angeles, Sheriff Alex Villanueva (in his official capacity only) and County Public Health Director Barbara Ferrer (in her official capacity only) — hereinafter referred to collectively as "the County Defendants" — in addition to Governor Gavin Newsom, State Public Health Officer Sonia Y. Angell, Mayor Eric Garcetti, the City of Los Angeles, Burbank City Manager Justin Hess and the City of Burbank.[6] Plaintiffs' fundamental contention is that the County Defendants' emergency response to the COVID-19 pandemic resulted in the closure of

---

[5] Copies of the County of Los Angeles' COVID-19-related emergency public health orders are attached as Exhibits to Defendants' Request for Judicial Notice filed concurrently herewith.

[6] Plaintiffs have since filed notices of dismissal as to every Defendant other that the County of Los Angeles Defendants, despite the absence of any meaningful distinction among the Defendants with respect to the purported grounds for relief. (ECF Nos. 52, 53, 54.)

firearms retailers in the County and related infringements of their right to keep and bear arms, in violation of the Second, Fifth and Fourteenth Amendments.[7]

As to the County Defendants, Plaintiffs allege:

- On March 19, 2020, the County issued an Order entitled, "Safer at Home Order for Control of COVID-19" that required all non-essential business in the County to close immediately (FAC, ¶ 43);

- On March 24, 2020, Sheriff Villanueva declared all firearms retailers in the County to be "non-essential" (FAC, ¶ 49);

- On March 25, 2020, Sheriff Villanueva announced the temporary suspension of the enforcement of the closure of firearms retailers operating in the County (FAC, ¶¶ 51-52);

- On March 26, 2020, Sheriff Villanueva announced that firearms retailers are not considered essential businesses and must close to the general public in compliance with Executive Order-N-33-20 and the County's Safer at Home Order and lifted the temporary suspension of the closure of firearms retailers in the County (FAC, ¶¶ 54-55); and

- Sheriff Villanueva's March 26, 2020 "Order is a de facto ban on the sale and transfer of firearms and new California Firearms Safety Certificate testing and issuance" and applies to 42 cities within the County (FAC, ¶¶ 58-61).

---

[7] Plaintiffs consist of two individuals who allege that they would be exercising their right to keep and bear arms "but for the reasonable and imminent fear of arrest and criminal prosecution under Defendants' law, policies, orders, practices, customs, and enforcement" (FAC, ¶¶ 6-7), four gun store owners who would be conducting firearms training and selling and transferring arms but for their fear of "criminal prosecution and loss of [their] licenses" (FAC, ¶¶ 8-11), four retail corporations which would be selling and transferring arms and conducting training and education but for their fear of "criminal prosecution and loss of [their] licenses" (FAC, ¶¶ 12-15), and four Second Amendment advocacy organizations (FAC, ¶¶ 16-19).

4

Thus, Plaintiffs' claims are strictly limited to their contention that the March 19 Safer at Home Order and Sheriff Villanueva's announcement on March 26, 2020 acted together in violating their constitutional rights.[8]  (FAC, ¶ 76.) Specifically, Plaintiffs allege in **Count One** the violation of their "right to keep and bear arms" under the Second and Fourteenth Amendments and that "[t]here is an actual and present controversy between the parties" (FAC, ¶ 83).  In **Count Two**, Plaintiff allege the violation of their due process rights under the Fifth and Fourteenth Amendments and that "[t]here is an actual and present controversy between the parties" (FAC, ¶ 93).  Based on these alleged violations, Plaintiffs seek a declaratory judgment that the County's actions violate the Second, Fifth and Fourteenth Amendments and a preliminary and permanent injunction restraining the County from the identified "Orders and enforcement policies, practices, and customs that individually and/or collectively violate the Second, Fifth, and Fourteenth Amendments."  (FAC Prayer for Relief, ¶¶ 3-4.)

Importantly, on March 30, 2020, Plaintiffs filed an *Ex Parte* Application for a temporary restraining order and preliminary injunction — seeking essentially the same relief, on the same grounds, sought in the First Amended Complaint.  (ECF No. 14.)  On April 6, 2020, this Court entered an order denying Plaintiffs' Application in its entirety, ruling that Plaintiffs had failed to demonstrate a likelihood of success on the merits of their Second Amendment claim against the County and City Defendants.  (ECF No. 29 at pp. 5-6.)  This Court assumed, without deciding, that the County and City Orders burdened conduct protected by the Second Amendment (i.e., temporary closure of firearms

---

[8] On March 30, 2020, Sheriff Villanueva announced that the Sheriff's Department "will ***not*** order or recommend closure of businesses that sell or repair firearms or sell ammunition."  (*See* ECF No. 23-2 (Villanueva Decl., ¶ 20), filed in opposition to Plaintiffs' *ex parte* application for a temporary restraining order; emphasis added.)

retailers) and subjected the emergency orders to intermediate scrutiny. (*Id.* at p. 5.)

First, this Court ruled that the temporary closure of non-essential businesses (including firearms retailers) reasonably fit the significant government objective of reducing the spread of COVID-19 within the community:

> In applying intermediate scrutiny to the County and City Orders, the Court must consider (1) whether the government's stated objective is significant, substantial, or important, and (2) whether there is a reasonable fit between the challenged regulation and the asserted objective. [Citing *United v. Chovan*, 735 F.3d 1127, 1139 (9th Cir. 2013).] ***The City's and County's stated objective—reducing the spread of COVID-19, a highly dangerous and infectious disease—undoubtedly constitutes an important government objective***. Moreover, because this disease spreads where "[a]n infected person coughs, sneezes, or otherwise expels aerosolized droplets containing the virus,' (Dkt. No. 21) ***the closure of non-essential businesses, including firearms and ammunition retailers, reasonably fits the City's and County's stated objectives of reducing the spread of this disease***. Accordingly, Plaintiffs fail to demonstrate a likelihood of success on the merits of the Second Amendment claim against the County and City Orders.

(*Id.* at pp. 5-6; emphasis added.)

Second, this Court rejected Plaintiffs' contention that the orders were unconstitutionally vague – that Plaintiffs failed to show that the orders were "'so vague that it fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement.'" (ECF No. 19 at p. 6 [quoting *Johnson v. United States*, 576 U.S. 591, 595 (2015)].) This Court explained that the orders "extensively define which businesses are permitted to remain open, and which businesses must close", and "Plaintiffs likely cannot show that the orders fail to give ordinary people fair notice of what conduct is prohibited or invite arbitrary enforcement." (*Ibid.*)

In accordance with these two adverse rulings, this Court denied Plaintiffs' application. Plaintiffs then represented to all Defendants that they intended to file a Second Amended Complaint, and their request to do so would be made by June 30, 2020 — resulting in stipulations of the parties and orders from this Court to continue respective responsive pleading deadlines. (ECF Nos. 32-33, 35-44, 51.) Plaintiffs, however, never made any request to this Court, and the County Defendants, therefore, answered the First Amended Complaint on June 24, 2020. (ECF No. 45.)

The County Defendants hereby move for judgment on the pleadings as the present circumstances even more clearly demonstrate the fundamentally flawed nature of Plaintiffs' claims. Not only do Plaintiffs lack standing to pursue the alleged claims that challenge an emergency public health order that has been entirely superseded, the current County emergency public health order unquestionably advances legitimate government interests and explicitly identifies the categories of businesses and activities that must be closed at this time (with firearms retailers not included among those closed businesses). This Court's recent legal analysis with respect to the constitutionality of the ongoing emergency response holds even more true today, thereby mandating the dismissal of the remainder of this action.[9]

---

[9] Judgment on the pleadings under Federal Rules of Civil Procedure, Rule 12(c) is appropriate when the moving party is entitled to judgment as a matter of law even if all material facts in the pleading under attack are true. The analysis under Rule 12(c) is "substantively identical" to the analysis under Rule 12(b)(6). *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012); *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1055 n. 4 (9th Cir. 2011) ("Rule 12(c) is 'functionally identical' to Rule 12(b)(6) and that 'the same standard of review' applies to motions brought under either rule") (quoting *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)).

**III.** **Because Plaintiffs' Claims Against The County Are Inextricably Tied To The County's March 19, 2020 Public Health Order That Has Long Since Been Superseded, Plaintiffs' Claims Should Be Dismissed.**

This action is premised on the notion that the firearms retailers in the County were forced to cease operations due to the County's Safer at Home Order issued on March 19, 2020 and Sheriff Villanueva's March 26, 2020 announcement (which was completely negated by the Sheriff's announcement on March 30, 2020). The County's March 19 Order, however, has been superseded by multiple County public health orders, none of which has required the closure firearms retailers in the County.[10] Simply put, there is no live controversy to justify the instant action for injunctive/declaratory relief.

**A.** **The Operative County COVID-19 Public Health Order Allows The Operation Of Lower-Risk Retail Businesses, Including Firearms Retailers.**

Stated bluntly, the March 19, 2020 Safer at Home Order is old news.

On June 18, 2020, the County issued its "Reopening Safer at Work and in the Community for Control of COVID-19" Order, for the purpose of "Moving the County of Los Angeles into Stage 3 of California's Pandemic Resilience Roadmap." (Exhibit "2" to Request for Judicial Notice.) The June 18 Order proclaimed that this Order "supersedes all prior Safer at Home orders" issued by the County and was "issued to comply with State Executive Orders N-33-20 and N-60-20" and the State Public Health Officer's orders issued on March 19 and May 7, 2020. (*Id.* at p. 12.) This Order allowed "persons to engage in all permitted activities, as defined by the Order", and required the practice of "Social

---

[10] Indeed, the firearms retailer Plaintiffs in this action cannot now allege that the County Defendants are prohibiting them from operating their businesses, and the non-retailer Plaintiffs cannot now allege that they are prohibited from patronizing those and other firearms retailers in the County.

(Physical) distancing, at all times while out in public" and the wearing of cloth face coverings "when in or likely to be in contact with others, to lower the risks of person-to-person contact for themselves and others." (*Id.*) In paragraph 7 of the June 18 Order, six categories of "higher-risk businesses, recreational sites, commercial properties, and activities, where more frequent and prolonged person-to-person contacts are likely to occur" were identified as those locations which must remain closed. (*Id.* at p. 15.) Firearms retailers were <u>not</u> included in any of these categories.

Furthermore, in paragraph 9, the Order stated that "Lower-Risk Businesses" which are not defined as "Essential Businesses" in paragraph 18, may reopen, including "Lower-Risk Retail Businesses" — as long as they implemented the "Reopening Protocols for Retail Establishments: Opening for In Person Shopping" (attached as Appendix B to the Order).[11] (*Id.* at pp. 15-16.) Firearms retailers are subject to the provisions regarding "Lower-Risk Retail Businesses", and therefore, under the June 18 Order, were permitted to operate as long as COVID-19 related protocols were followed.

The June 18 Order was subsequently superseded by the County's "Reopening Safer at Work and in the Community for Control of COVID-19" Order issued on August 12, 2020. The primary purpose of the revised Order was to provide updated guidance regarding childcare and educational facilities. (Exhibit "5" to Request for Judicial Notice, at p. 34.) Significantly, the

---

[11] The In-Person Shopping protocols included the following checklist:
"(1) Workplace policies and practices to protect employee health
(2) Measures to ensure physical distancing
(3) Measures to ensure infection control
(4) Communication with employees and the public
(5) Measures to ensure equitable access to critical services.
These five key areas must be addressed as your facility develops any reopening protocols." (Exhibit "4" to Request for Judicial Notice, at p. 29.)

provisions regarding "Lower-Risk Retail Businesses" were not modified, and therefore, the operational conditions for firearms retailers in the County remained the same. (*Id.* at p. 38 (paragraph 9).)

Moreover, Paragraph 7 of the August 12 Order identified the "higher-risk businesses, recreational sites, commercial properties, and activities, where more frequent and prolonged person-to-person contacts are likely to occur" to be closed (including bars, nightclubs, saunas and cardrooms). Again, firearms retailers were <u>not</u> included in any of these categories, and therefore, they may and do conduct regular business in the County.

**B.      Without Any Live Case Or Controversy, Plaintiffs Are Left Without Standing To Seek Injunctive Relief.**

Plaintiffs bear the burden of showing at all times that the Court has subject matter jurisdiction over the subject action. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Assoc. of Med. Colls. v. United States*, 217 F.3d 770, 778-79 (9th Cir. 2000) (plaintiff has the burden of establishing the court's subject matter jurisdiction); *see also Langer v. McKelvy*, 2015 WL 13447522, at *1 (C.D. Cal. Sept. 24, 2015) ("A party may move for judgment on the pleadings based on lack of subject matter jurisdiction.").

Here, Plaintiffs do not have standing to pursue the relief sought due to the absence of either any actionable ongoing injury or any actionable injury that is likely to recur. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Article III of the United States Constitution limits federal court jurisdiction to "actual, ongoing cases or controversies." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). "If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006). "A case or controversy must exist at all stages of review, not just at the time the action is filed." *Wolfson v. Brammer*, 616 F.3d 1045, 1053 (9th Cir. 2010).

1  "A case is moot when the issues presented are no longer 'live' or the

2  parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's*

3  *A.M.*, 529 U.S. 277, 287 (2000); *County of Los Angeles v. Davis*, 440 U.S. 625,

4  631 (1979) (if "the issues presented are no longer 'live' or the parties lack a

5  legally cognizable interest in the outcome", the case is moot); *see also United*

6  *States v. Geophysical Corp. of Alaska*, 732 F.2d 693, 698 (9th Cir. 1984) ("[a]

7  claim is moot if it has lost its character as a present, live controversy.").

8  Furthermore, an injunctive relief claim loses all viability if "(1) there is no

9  reasonable expectation that the [alleged] wrong will be repeated, and (2) interim

10  relief or events have completely and irrevocably eradicated the effects of the

11  alleged violation." *Barnes v. Healy*, 980 F.2d 572, 580 (9th Cir. 1992).  In other

12  words, a claim becomes moot when it is clear that the allegedly wrongful

13  behavior could not reasonably be expected to recur.  *Friends of the Earth, Inc. v.*

14  *Laidlaw Environmental Services,* 528 U.S. 167, 190 (2000); *see e.g., Hendrickson*

15  *v. eBay Inc.,* 165 F. Supp.2d 1082, 1095 (C. D. Cal. Sept. 4, 2001) (injunctive

16  relief denied where the defendant ceased running allegedly infringing

17  advertisements and had no intention of running the advertisements again).

18  Plaintiffs must also show a "sufficient likelihood that [they] will again be

19  wronged in a similar way." *City of Los Angeles v. Lyons*, 461 U.S. at 102.

20  In the instant case, Plaintiffs cannot dispute that the linchpin of their claims

21  against the County Defendants, i.e. the March 19 Safer at Home Order, has been

22  completely replaced.  Plaintiffs also cannot dispute that the two most recent

23  COVID-19 related County public health orders did not interrupt the operations of

24  firearms retailers in the County (subject to standard COVID-19 safety protocols

25  applicable to all other retailers).  Plaintiffs also cannot dispute that County

26  residents are permitted to visit and purchase firearms and ammunition, subject to

27  state and federal firearms regulations.

28

11

1    Therefore, Plaintiffs have no standing to pursue the injunctive and

2    declaratory relief sought in the First Amended Complaint, and this action should

3    be dismissed. *See Langer v. McKelvy*, 2015 WL 13447522, at *1 (C.D. Cal. Sept.

4    24, 2015) ("A party may move for judgment on the pleadings based on lack of

5    subject matter jurisdiction.") (citing *U.S. v. In re Seizure of One Blue Nissan*

6    *Skyline Auto., and One Red Nissan Skyline*, 683 F.Supp.2d 1087, 1089 (C.D. Cal.

7    Feb. 1, 2010)).

8    **IV.    The County's Emergency COVID-19 Orders – The Indisputable**

9    **Purpose Of Which Is To Limit The Community Spread Of A New And**

10   **Often-Fatal Virus – Serve Compelling Government Interests And**

11   **Unquestionably Withstand Constitutional Challenge.**

12   Plaintiffs must admit that currently, firearms retailers in the County are

13   allowed to operate (just like most other retail businesses), as long as they comply

14   with public health-related measures designed to help slow the spread of COVID-

15   19 (such as social distancing and the use of personal protection equipment).

16   Plaintiffs may, however, resort to the argument that some form of injunctive relief

17   may still be sought because the County could possibly modify its public health

18   orders in a way that would result in the temporary closure of firearms retailers.

19   This argument fails on three fundamental fronts. First, as this Court has

20   already found, the temporary closure of non-essential businesses such as firearms

21   retailers does not amount to a constitutional violation under the present, truly

22   unprecedented circumstances. Second, the current August 12 County Order

23   explicitly identifies which businesses and activities must be closed, and firearms

24   retailers fall under the category of lower-risk retailers allowed to operate subject

25   to well-established safety protocols. Third, there is no legitimate basis for

26   allowing this action to proceed on the wholly speculative notion that the County's

27   public health order could somehow "revert back" to a prior form that resulted in

28   the temporary closure of firearms retailers.

A.    **The Temporary Closure Of Firearms Retailers To Help Limit The Spread Of COVID-19 Would Not Have Violated The Second Amendment.**

As this Court previously held, the determination of whether a temporary closure of firearms retailers in the midst of the ongoing pandemic response violates the Second Amendment, should be subject to intermediate scrutiny. A higher level of scrutiny is not warranted because the challenged County Order is "'simply not as sweeping as the complete handgun ban at issue in [*District of Columbia v. Heller*, 554 U.S. 570 (2008).]'" (*See* ECF No. 29 at p. 5; citing *Fyock v. Sunnyvale*, 779 F.3d 991, 999 (9th Cir. 2015) and *McDougall v. Cty. of Ventura Cal.*, 20-CV-02927-CBM-ASx (C.D. Cal. Mar. 31, 2020) (applying intermediate scrutiny to Second Amendment challenge to the County of Ventura's COVID-19 public health order)[12]; *United States v. Chovan*, 735 F.3d 1127, 1138 (9th Cir. 2013) (regulation of firearm possession by individuals with criminal convictions does not implicate a core Second Amendment right and is subject to intermediate scrutiny); *Jackson v. City and Cty. of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014) (intermediate scrutiny applied to law that banned sale of hollow-point ammunition); *cf. Duncan v. Becerra*, __ F.3d __, 2020 WL 4730668, at *23 (9th Cir. 2020) (strict scrutiny applied to permanent statewide

---

[12] In *McDougall*, the Honorable Consuelo B. Marshall denied the plaintiff's application for a temporary restraining order challenging the enforcement of the County of Ventura's Stay at Home Order. Judge Marshall held that the Order did not "specifically target handgun ownership, does not prohibit the ownership of a handgun outright, and is temporary." (Exhibit "8" to Request for Judicial Notice, at p. 71.) Judge Marshall ruled further that Ventura County's Order promoted a substantial and compelling government interest ("protecting the public health by limiting the spread of a virulent disease"), the balance of equities did not favor the granting of an injunction, and the County's "'complex, subtle, and professional decisions'" are entitled to deference. *Ibid.* (quoting *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008)).

13

1   blanket ban on possession of large capacity magazines "everywhere and for
2   nearly everyone").

3        Plaintiffs' claims fail as a matter of law under intermediate scrutiny, which
4   raises the following questions: whether there is "(1) a significant, substantial, or
5   important government objective, and (2) a 'reasonable fit' between the challenged
6   law and the asserted objective." *Pena v. Lindley*, 898 F.3d 969, 976 (9th Cir.
7   2018).  Under this standard, the challenged action need not have been the "least
8   restrictive means" of achieving the substantial government interest at stake. *Id.;*
9   *see also Teixeira v. County of Alameda*, 873 F.3d 670, 682, 690 (9th Cir. 2017)
10  ("the Second Amendment does not independently protect a proprietor's right to
11  sell firearms" and measures which impose "conditions and qualifications on the
12  commercial sale of firearms" are "presumptively lawful").

13       Here, there can be no dispute that the County's ongoing emergency
14  response to the COVID-19 pandemic involves substantial governmental
15  objectives of the highest and most significant order, i.e., the slowing down of the
16  spread of the deadly COVID-19 virus to help reduce the loss of human lives
17  within and outside of the County's borders.  The alleged temporary closure of
18  firearms retailers (due to their status as "non-essential" businesses) can hardly be
19  deemed to have been an unreasonable emergency step to have been taken when
20  the sheer magnitude of the COVID-19 pandemic was both undeniable and
21  potentially uncontainable in March 2020.  The closure of non-essential businesses
22  at that time was undoubtedly a reasonable step (and one taken in cities, counties
23  and states throughout the rest of the country and around the globe), and certainly
24  not anywhere close to egregious enough to justify any finding of constitutional
25  malfeasance.[13]  The alleged temporary closure of firearms retailers in the County,

26  _____

27  [13] In another similar action, *Altman v. County of Santa Clara,* __ F.Supp.3d __,
28  2020 WL 2850291 (N.D. Cal. June 2, 2020), the plaintiffs alleged that the subject
    shelter-in-place orders violated their Second, Fifth and Fourteenth Amendment

1  therefore, withstands the requisite constitutional review.

2     **B.** **The Clearly Delineated County Public Health Order Does Not**

3      **Require The Closure Of Lower-Risk Businesses Such As**

4      **Firearms Retailers.**

5     Any argument that Plaintiffs may make about the purported vagueness of

6  the County's August 12 Order should be rejected.  In fact, the Court has already

7  rejected this argument in denying Plaintiffs' earlier application for a temporary

8  restraining order.[14]

9     The County's August 12 Order is even more detailed and explicit in

10  identifying the limited categories of businesses and activities that must be closed

11  at this time.  Importantly, firearms retailers are <u>not</u> among those businesses that

12  must be closed, and they fall under the category of lower-risk retailers that have

13  been and will continue to operate as long as they comply with the social

14  distancing and face covering protocols.  Thus, any claim based on the purported

15  vagueness of the County's emergency public health orders fails.

16     **C.** **Any Suggestion That The County May Modify Its Current**

17      **Order To Mandate Closure Of Firearms Retailers Is Factually**

18      **Unfounded And Wholly Speculative.**

19     The County Defendants anticipate that Plaintiffs will argue, based on pure

20  speculation and conjecture, that an injunction is still needed because the County

21  might reverse its position by mandating the closure firearms retailers in the

22  _____

23  rights and moved for a preliminary injunction to exempt firearms retailers and
   shooting ranges from those orders.  The Court denied the plaintiffs' motion,

24  concluding that the orders survived intermediate scrutiny because there was a

25  "reasonable fit between the burden the Order places on Second Amendment rights
   and Defendants' goal of reducing COVID-19 transmission".  *Id.* at *16.

26

27  [14] The Court found that the challenged orders were "clear and explicit",

28  "extensively defin[ing] which businesses are permitted to remain open, and which
   businesses must close." (ECF No. 29 at p. 6.)

County.  Any such argument flies in the face of basic logic and facts.  In the past two County Orders, sharp distinctions have been drawn between businesses and activities that by their very nature increase the likelihood of close, person-to-person contact by groups of people (such as bars, nightclubs and concert venues) and retail businesses where social distancing can be implemented while serving their customers.  Firearms retailers certainly fall under this much broader category of "lower-risk" retailers, and they have been allowed to operate under the County Orders.  There is no legitimate rationale for inferring that the treatment of firearms retailers will materially change during the continued emergency response.

Under these circumstances, any speculation along these lines would be woefully insufficient for overriding mootness of Plaintiffs' claims for declaratory and injunctive relief.  *McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1173 (9th Cir. 2016) ("arguments based on conjecture or speculation are insufficient...."); *R.W. Beck & Assocs. v. City & Borough of Sitka*, 27 F.3d 1475, 1481 (9th Cir. 1994) (arguments based on conjecture or speculation are insufficient to raise a genuine issue of material fact).  Moreover, government officials must be afforded a presumption of good faith with respect to formal policy announcements.  *See Sossamon v. Lone Star of Texas*, 560 F.3d 316, 325 (5th Cir. 2009) ("Without evidence to the contrary, we assume that formally announced changes to official governmental policy are not mere litigation posturing.").

Thus, the dismissal of this action cannot be held up on the basis of Plaintiffs' unfounded fears of what the County might do.  Any such fears, in fact, are entirely unsubstantiated and cannot be reconciled with the underlying rationales and purposes of the County's continuing efforts to curb the spread of COVID-19 within our community.

D.   **The Ninth Circuit's Decision In _Duncan v. Becerra_ Does Not Materially Affect The Instant Constitutional Analysis.**

Defendants anticipate that Plaintiffs will rely extensively on the Ninth Circuit's decision in _Duncan v. Becerra_, __ F.3d __, 2020 WL 4730668 (9th Cir. 2020), where the Ninth Circuit declared unconstitutional California Penal Code § 32310—which instituted "a wholesale ban on the possession of [large capacity magazines] by almost everyone, everywhere, in the state of California." _Id._ at *2. The Ninth Circuit applied the strict scrutiny standard of review because the statute imposed a state-wide ban against the possession of large capacity magazines "within the home". _Id._ at *12.

The alleged temporary closure of firearms retailers in the County during the emergency response to the COVID-19 pandemic, however, did not involve a blanket prohibition against firearms possession and does not implicate a similarly central Second Amendment right. Any significant reliance on _Duncan_ would therefore be misplaced — and will be fully addressed in Defendants' reply papers if necessary. _See Silvester v. Harris_, 843 F.3d 816, 821-823 (9th Cir. 2016) (explaining that the Ninth Circuit has "applied intermediate scrutiny in a series of cases … to uphold various firearms regulations" and explaining "[t]here is accordingly near unanimity in the post-_Heller_[15] case law that when considering regulations that fall within the scope of the Second Amendment, intermediate scrutiny is appropriate").

V.   **The Official Capacity Claims Against Sheriff Villanueva And Director Ferrer Are Redundant And Should Be Dismissed.**

Defendants Villanueva and Ferrer, who are sued in their official capacities only, should be dismissed because Plaintiffs have also sued the County of Los

---

[15] _District of Columbia v. Heller_, 554 U.S. 570 (2008) (statute banning handgun possession in the home and prohibiting the rendering of lawful firearms in the home operable for immediate self-defense violated the Second Amendment).

Angeles. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Butler v. Elle*, 281 F.3d 1014, 1023 n. 8 (9th Cir. 2002) ("Section 1983 claims against government officials in their official capacity are really suits against the government employer"); *Luke v. Abbott*, 954 F.Supp. 202, 203-04 (C.D. Cal. Feb. 26, 2002); *Vance v. County of Santa Clara*, 928 F.Supp. 993, 996 (N.D. Cal. June 11, 1996); *Talib v. Nicholas*, 2015 WL 456546, *7 (C.D. Cal. Feb. 2, 2015) (official capacity claims against the defendant deputies must be treated as a claim against the LASD).

## VI.   Conclusion.

For the foregoing reasons, the County Defendants respectfully submit that the instant Motion be granted and this action dismissed.

Dated: August 21, 2020                LAWRENCE BEACH ALLEN & CHOI, PC


By _____/s/ Jin S. Choi_____
        Jin S. Choi
        Attorneys for
        Defendants County of Los Angeles,
        Sheriff Alex Villanueva, and
        Barbara Ferrer

18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>DECLARATION OF JIN S. CHOI</u>

I, Jin S. Choi declare as follows:

1.      I am an attorney at law, duly authorized to practice before this Court and I am a shareholder in the law firm of Lawrence Beach Allen & Choi, PC, attorneys of record for Defendants County of Los Angeles, Sheriff Alex Villanueva (in his official capacity), and Barbara Ferrer (in her official capacity) in the above-entitled action. I have personal knowledge of the facts stated herein, except those stated upon information and belief and as to those matters, I believe them to be true. If called to testify to the matters herein, I could and would competently do so.

2.      This Motion is brought following an unsuccessful attempt pursuant to Local Rule 7-3 to reach an informal resolution of the issues raised herein.

3.      The parties' meet and confer efforts commenced on July 7, 2020, with a letter I sent to Plaintiffs' counsel, Mr. George M. Lee. My letter identified the grounds to be raised in Defendants' motion for judgment on the pleadings in the event that an informal resolution could not be reached. Attached hereto as Exhibits "A" is a true and correct copy of my July 7, 2020 letter.

4.      On July 22, 2020, Mr. Lee and I met and conferred telephonically, and we discussed each of the grounds raised in the instant motion. We were not able to reach an agreement on any of these issues.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 21, 2020, at Glendale, California.


By _____/s/ Jin S. Choi_____
             Jin S. Choi