George M. Lee (SBN 172982)
gml@seilerepstein.com
**SEILER EPSTEIN LLP**
275 Battery Street, Suite 1600
San Francisco, California 94111
Phone: (415) 979-0500
Fax: (415) 979-0511

Raymond M. DiGuiseppe (SBN 228457)
law.rmd@gmail.com
**THE DIGUISEPPE LAW FIRM, P.C.**
4320 Southport-Supply Road, Suite 300
Southport, North Carolina 28461
Phone: (910) 713-8804
Fax: (910) 672-7705

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM BRANDY, an individual, et al., | Case No. 2:20-cv-2874 |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO COUNTY OF LOS ANGELES DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |
| vs. | |
| ALEX VILLANUEVA, in his official capacity as Sheriff of Los Angeles County, California, and in his capacity as the Director of Emergency Operations, et al., | **[FRCP 12(C)]**<br><br>Date:      September 18, 2020<br>Time:      10:00 a.m.<br>Courtroom 7B<br>Hon. André Birotte, Jr. |
| Defendants. | |

//

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................1

II.  STATEMENT OF FACTS AND PROCEDURAL HISTORY ...........................................1

    A.   STATEMENT OF FACTS ...........................................................................1

    B.   PROCEDURAL HISTORY ...........................................................................6

III. ARGUMENT ...........................................................................................8

    A.   A LIVE CONTROVERSY INVOLVING ACTIONABLE INJURY REMAINS. .........8

    B.   PLAINTIFFS' SECOND AMENDMENT CLAIM SURVIVES THE LENIENT
        STANDARDS APPLIED TO A MOTION FOR JUDGMENT
        ON THE PLEADINGS. ...........................................................................12

        1.   Defendants' Orders are Subject to Strict Scrutiny,
            If Any at All. ...........................................................................13

        2.   The Orders Cannot Survive Any Intermediate Scrutiny Either. .....15

    C.   PLAINTIFFS WILL DISMISS THE DUE PROCESS CLAIM. ...........................17

    D.   SHOULD DEFENDANTS' MOTION BE GRANTED, PLAINTIFFS
        SHOULD BE GRANTED LEAVE TO AMEND. ...........................................18

IV.  CONCLUSION ...........................................................................18

1

<u>TABLE OF AUTHORITIES</u>

2

**Cases**

3
4

*Altman v. County of Santa Clara*, )__ F.Supp.3d__, 2020 WL 2850291
   (June 2, 2020).........................................................................................13

5
6

*American Diabetes Association v. U.S Dept. of the Army*, 938 F.3d 1147
   (9th Cir. 2019)..........................................................................................9

7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).....................................................13

8
9

*Bauer v. Becerra*, 858 F.3d 1216 (9th Cir. 2017).....................................14

10

*Bernhardt v. County of Los Angeles*, 279 F.3d 862 (9th Cir. 2002).........12

11

*Brooks v. Dunlop Mfg. Inc.*, 2011 WL 6140912 (N.D. Cal. Dec. 9, 2011)............13

12

*Campbell-Ewald Co. v. Gomez*, __ U.S. __, 136 S.Ct. 663 (2016)..........................8

13

*Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034 (9th Cir. 2011)........18

14
15

*Chafin v. Chafin*, 568 U.S. 165 (2013).........................................................8

16

*Chavez v. United States*, 683 F.3d 1102 (9th Cir. 2012) ....................12, 13

17

*Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010) ...............15

18

*District of Columbia v. Heller*, 554 U.S. 570 (2008) .........................14, 15

19
20

*Duncan v. Becerra*, __ F.3d__, 2020 WL 4730668 (9th Cir. Aug. 14, 2020)...15, 16

21

*Durst v. Oregon Education Association*, __ F.Supp.3d __, 2020 WL 1545484
   (D. Oregon 2020) ...............................................................................9, 12

22
23

*Epona LLC v. County of Ventura*, 2:16-cv-06372-PMG-PLA, 2019 WL
   7940582 (C.D. Cal. Dec. 12, 2019)......................................................12

24
25

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) ...........................14

26

*FEC v. Wisconsin Right To Life, Inc.*, 551 U.S. 449 (2007) .....................9

27

*Feldman v. Bomar*, 518 F.3d 637 (9th Cir. 2008) .....................................9

28

*Fleming v. Pickard*, 581 F.3d 922 (9th Cir. 2009)....................................13

*Geraci v. Homestreet Bank*, 347 F.3d 749 (9th Cir. 2003)......................................13

*Harris v. County of Orange*, 682 F.3d 1126 (9th Cir. 2012)..................................18

*Heller v. District of Columbia*, 670 F.3d 1244 (D.C. Cir. 2011) (*Heller II*)...........16

*Jackson v. City and County of San Francisco*, 746 F.3d 953 (9th Cir. 2014).........14

*Koller v. Harris*, 312 F.Supp.3d 814 (N.D. Cal. 2018) ............................................9

*Los Angeles Cty. v. Davis*, 440 U.S. 625 (1979) ......................................................9

*McDonald v. Chicago*, 561 U.S. 742 (2010)..........................................................14

*McDougall v Cty. Of Ventura*, 20-CV-02927-CBM-ASx
    (C.D. Cal. Mar. 31, 2020) ....................................................................................13

*Native Village of Nuiqsut v. Bureau of Land Management*,
    432 F.Supp.3d 1003 (D. Alaska 2020).................................................................9

*New York State Rifle & Pistol Association, Inc. v. City of New York, New York*,
    140 S.Ct. 1525 (2020) ..........................................................................................12

*Outdoor Media Grp. v. City of Beaumont*, 506 F.3d 895 (9th Cir. 2007) .........11, 12

*Pantastico v. Dept. of Educ.*, 406 F.Supp.3d 865 (D. Haw. 2019).........................18

*Planned Parenthood of Greater Washington and North Idaho v.
    U.S. Department of Health & Human Services*,
    946 F.3d 1100 (9th Cir. 2020)..............................................................................9

*Rhode v. Becerra*, __ F.Supp.3d __, 2020 WL 2392655 (S.D. Cal. 2020) .............16

*Silvester v. Harris*, 843 F.3d 816 (9th Cir. 2016)....................................................16

*U.S v. Hempfling*, 431 F.Supp.2d 1069 (E.D. Cal. 2006).......................................13

*United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013) .......................................15

**Statutes**

42 U.S.C. § 1983 ..........................................................................................1, 7, 12

**Rules**

Fed. Rule Civ. Pro. 12(b) ........................................................................13, 18

Fed. Rule Civ. Pro. 12(c) ....................................................................12, 13, 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.   INTRODUCTION

Plaintiffs Adam Brandy, et al. hereby oppose the motion for judgment on the pleadings, ECF No. 56, filed by defendants County of Los Angeles, Sheriff Alex Villanueva, sued in his official capacity, and Barbara Ferrer, sued in her official capacity (collectively, "County Defendants"). After having deprived plaintiffs and all similarly situated Los Angeles County residents of their fundamental right to keep and bear arms under the Second Amendment, the County Defendants now seek to simply walk away from their unconstitutional conduct without any accountability for either the injuries inflicted or the future risk of injury their health orders continue to pose to all such individuals and retailers of firearms and ammunition. Defendants make this mootness argument, even as their current orders reflect even stronger concerns about greater risks from the COVID-19 pandemic, and while reserving unto themselves broad, largely unfettered powers to reimpose more restrictive conditions at any time. This Court should not countenance the affront to the fundamental civil rights protections, which is actionable under 42 U.S.C. § 1983, but which the defendants' motion would prevent. They must be held accountable for the injury they have already inflicted and prevented from inflicting further harm. This Court has the power to do so and should do so, as plaintiffs' complaint more than sufficiently demonstrates the existence of such redressable injury under the lenient standards for surviving this motion.

## II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.   STATEMENT OF FACTS

Plaintiffs brought this action against the County of Los Angeles, through its officials, and other State and local officials who issued various orders that forced the closure of all firearms and ammunition retailers within the County. In an effort to abate the spread of the COVID-19 coronavirus pandemic, on March 19, 2020,

1   the County of Los Angeles Department of Public Health issued an Order titled,

2   "Safer at Home Order for Control of COVID-19" ("March 19 Order"). The County

3   Order applied to all of Los Angeles County, except Pasadena and Long Beach. It

4   "require[d] all indoor malls, shopping centers, playgrounds and non-essential

5   businesses to close." Only "essential Businesses" could remain open. FAC, ¶ 43.

6   　　　The County Order did not expressly require the closure of firearm retailers

7   or ammunition vendors.[1] However, such retailers were not expressly included

8   among the list of "essential" businesses allowed to remain open, and the March 19

9   Order mandated that *all* "non-essential" businesses close *immediately*. Def. Req.

10   for Jud. Notice (RJN), Ex. 1 (March 19 Order), p. 6. On March 24, 2020, Sheriff

11   Villanueva (who was also at the time the Director of Emergency Operations for the

12   County) affirmatively declared all firearms retailers in the County of Los Angeles

13   to be "non-essential." FAC, ¶ 49. Through his Twitter account, he declared:

14   　　　By order of the Sheriff of Los Angeles County, gun and ammunition
   　　　stores are not considered essential businesses and must close to the
15   　　　general public, in Compliance with Executive Order-N-33-20 and
16   　　　County of Los Angeles Safer at Home Order for Control of COVID-19.

17   　　　The following day, on March 25, 2020, Sheriff Villanueva announced that

18   his previously-declared enforcement of the closure of firearm retailers was being

19   temporarily suspended, pending a decision on their classification as non-essential

20   by Governor Newsom. FAC, ¶ 52. On March 26, 2020, Governor Newsom issued a

21   public statement that each of the 58 county sheriffs had discretion to determine the

22   "essential" nature of firearm and ammunition retailers in each respective county in

23   the State. FAC, ¶ 53.

24

25   ―――――――――――――――――

26   [1]Nevertheless, a member of the County Board of Supervisors is reputed to have
   said that "while she personally thinks gun stores are not essential businesses, the
27   conflicting findings by [Sheriff] Villanueva and the County likely need to get
   sorted out by a judge." She was reported to have said: "Let them go to court about
28   it." FAC, ¶ 62.

―――――――――――――――――――――――――――――――――――――――――――――――――――――――――――

1   On March 26, 2020, Defendant Sheriff Villanueva, again through the Los

2   Angeles County Sheriff's Twitter account, reversed the suspension of his prior

3   position, stating: "[b]y order of the Sheriff of Los Angeles County, gun and

4   ammunition stores are not considered essential businesses and must close to the

5   general public, in Compliance with Executive Order-N-33-20 and County of Los

6   Angeles Safer at Home Order for Control of COVID-19." FAC, ¶¶ 54-55. He

7   issued only a limited exception to the closure order, allowing just those who "ha[d]

8   already purchased a firearm" and who already had "a valid California Firearms

9   Safety Certificate (CFS)" to "simply [] take possession of their firearm." *Id.*, ¶ 56.

10   (These orders of Sheriff Villanueva are collectively referred to as "Sheriff

11   Villanueva's Order"). His order also specified that licensed firearm retailers would

12   be permitted to sell ammunition only to "security guard companies." In essence,

13   plaintiffs have alleged that Sheriff Villanueva's Order, and the County's March 19

14   Order effected a de facto ban on the sale and transfer of ammunition, and a de facto

15   ban on the sale and transfer of firearms and new California Firearms Safety

16   Certificate testing and issuance, while those Orders were in effect. FAC, ¶¶ 57-58.

17   Sheriff Villanueva's Order applied to and was being enforced "in the 42

18   contract cities and unincorporated Los Angeles County areas under [his]

19   jurisdiction." FAC, ¶ 59. Sheriff Villanueva also "deferred to the discretion of each

20   individual chief of police" for each non-contract city in the County of Los Angeles.

21   *Id.* As alleged in the FAC, "[a]bout half of the 88 cities in [Los Angeles] county" –

22   about 46 of the total number of cities – "contract for law enforcement services from

23   the County of Los Angeles," and "their 'police department' is Los Angeles

24   Sheriff's Department ("LASD")." FAC, ¶ 60. Accordingly, the 42 cities within the

25   County of Los Angeles were subject to Sheriff Villanueva's Order, and the balance

26   of cities within the County of Los Angeles each had their own interpretations of the

27   various orders, policies, practices, and customs to enforce, FAC, ¶ 61, any of which

28   could have subjected County residents to conditions as or more restrictive than in

1  the March 19 Order itself, since that Order provided it did "not supersede any

2  stricter limitation imposed by a local public entity within the Los Angeles County

3  Public Health Jurisdiction." Def. RJN, Ex. 1, p. 2, ¶ 4.

4       As alleged throughout the FAC, the net effect of the County's and Sheriff's

5  Orders was to severely curtail and, in many cases, entirely prevent protected

6  firearms activity of the named plaintiffs and those similarly situated individuals

7  and retailers throughout the County.

8       Individual plaintiff Brandy had purchased his first firearm on March 18,

9  2020, but while the March 19 Order and Sheriff Villanueva's Order were in effect,

10  he was unable to purchase ammunition for it.  FAC, ¶ 65. At the time, he did not

11  own or possess any ammunition, and could not purchase ammunition except

12  through a licensed ammunition vendor under California law. Accordingly, he was

13  effectively prohibited from exercising his right to keep and bear *any* loaded,

14  operable firearms for self-defense of himself and his family, including in his home.

15  FAC, ¶ 65.

16       Individual plaintiff Jonah Martinez, a resident of the County, was concerned

17  about his safety and the safety of his family during these turbulent times, and

18  desired to practice and exercise his right to keep and bear arms (including firearms,

19  ammunition, magazines and appurtenances), but was unable to do so while these

20  Orders were in effect . FAC, ¶ 7. Under California law, he was unable to purchase

21  ammunition online or have it shipped directly to his home, and thus was prevented

22  from acquiring and taking possession of firearms throughout this period. *See*

23  Martinez Decl. in support of Application for TRO and Issuance of Prelim.

24  Injunction, ECF 14-4, ¶¶ 7-8.

25       These closures were a direct result of the County's March 19 Order and

26  Sheriff Villanueva's Order, and were enforced not just by the Sheriff's Office, but

27  by individual cities. Cities within the jurisdiction of the Defendant Los Angeles

28  County Sheriff's Order admitted to having been confused about the defendants'

differing and changing positions on the essential nature of firearm retailers and ranges, and their ability to continue to operate. FAC, ¶ 67. Some of those cities, including the City of Los Angeles, and the City of Burbank, interpreting and following the County's Order, and Sheriff Villanueva's interpretation of it, forced closures of firearm retailers and ammunition vendors. Again, by the terms of the March 19 Order, they had the discretion to impose even greater restrictions at the local level for so long as it was in effect. Def. RJN, Ex. 1, p. 2.

For example, plaintiff DG 2A Enterprises, Inc. d.b.a. Gun World, which operated in Burbank, California, was forced to shut down, temporarily, due to orders and directions issued from the City of Burbank, which naturally viewed itself as being "under the jurisdiction of Los Angeles County Public Health for purposes of the pandemic, and as such the City follow[ed] their orders"—orders that Burbank naturally interpreted to mean firearms retailers had to close because, under the terms of the March 19 Order, they were "*non*-essential" businesses. FAC, ¶¶ 66, 70. Accordingly, the shutdown of Burbank gun stores was a direct result of the County's March 19 Order.

Plaintiff Match Grade had to retain counsel to obtain legal advice in relation to Sheriff Villanueva's Order to determine whether it could continue to operate. Further, Plaintiff Match Grade ceased new sales due to this order, which resulted in plaintiff Match Grade having to reduce hours of staff. FAC, ¶ 69. And moreover, a law-abiding gun owner himself, as well as the owner and operator of plaintiff Match Grade, plaintiff Montes's individual rights to keep and bear arms were deprived in the same manner as other individuals in the County who were barred from obtaining any additional ammunition for the firearms he currently owns while this order and the County's March 19 Order were in effect. FAC, ¶ 70.

The Los Angeles County Sheriff provides contract law enforcement for dozens of cities in Los Angeles County, including the City of Cerritos, where Plaintiff Match Grade is located, and in Santa Clarita, where Plaintiff A Place To

1  Shoot is located. (FAC, ¶ 68.) Accordingly, these plaintiffs were subject to the
2  County and Sheriff Villanueva's Orders which shut down gun stores.

3       All of these plaintiffs rightfully challenge the March 19 Order and Sheriff
4  Villanueva's Order which unduly and unreasonably restricted, and in many cases
5  prevented, essential activities at the core of the Second Amendment's individual
6  guarantees, by forcing closure of firearms and ammunition retailers while they
7  were in effect. FAC, ¶ 76. Indeed, while Sheriff Villanueva later declared on
8  March 30, 2020, that his individual law enforcement agency would not "order or
9  recommend closure of businesses that sell or repair firearms or sell ammunition"
10  (ECF No. 23-2 [Villanueva Decl., ¶ 20]), the March 19 Order and its general
11  mandate that all non-essential businesses "shall remain closed to the public in
12  accordance with this Order" remained in effect for three full months, until June 18,
13  2020. Def. RJN, Ex. 2 (first County order superseding the March 19 County
14  Order). And, by the terms of the March 19 Order, it could be superseded only by
15  *more* restrictive conditions imposed by a local public entity, such that the *most*
16  *restrictive* conditions necessarily remained controlling throughout the period of its
17  effectiveness. *Id.* at pp. 6 & 7 (italics added) ("This Order does not supersede any
18  *stricter* limitation imposed by a local public entity with the Los Angeles County
19  Public Health Jurisdiction.").

21  **B.**    **PROCEDURAL HISTORY**

22       Plaintiffs filed this action on March 27, 2020 (ECF No. 1), and filed their
23  First Amended Complaint ("FAC") on March 29, 2020 (ECF No. 9).
24       Immediately thereafter, on March 30, 2020, Plaintiffs filed their Application
25  for a Temporary Restraining Order and OSC re Preliminary Injunction ("TRO
26  Application"). All defendants, including the County Defendants, opposed the TRO
27  Application, which this Court denied on April 6, 2020. (ECF No. 29).

1       The current and operative FAC alleges claims for declaratory and injunctive

2   relief, and for nominal damages, under 42 U.S.C. § 1983. Plaintiffs specifically

3   allege that for defendants' Orders effected a deprivation of the right to keep and

4   bear arms, secured by the Second Amendment, FAC, Count One, ¶¶ 82-91, and

5   that the Orders were unconstitutionally vague, FAC, Count Two, ¶¶ 92-108.

6       The relief sought in the FAC is primarily, though not limited to, declaratory

7   and injunctive relief. All plaintiffs allege that defendants' enforcement and threats

8   of enforcement of the relevant orders, including the County's March 19 Order and

9   Sheriff's Villanueva's Order violate the Second and Fourteenth Amendments.

10   FAC, ¶ 90. The individual and retailer plaintiffs have alleged a credible threat that

11   defendants will continue or resume to enforcement such orders. FAC, ¶ 88. The

12   organizational plaintiffs have also alleged a credible threat of the same against their

13   members – including individual and retailer Plaintiffs and all similarly situated

14   individuals and retailers. FAC, ¶ 89.

15       Plaintiffs have further and specifically alleged injury, in that defendants'

16   laws, policies, practices, customs, and ongoing enforcement and threats of

17   enforcement of their various orders and directives have prevented individual

18   plaintiffs, their customers, and the organizational plaintiffs' members from

19   exercising their rights, "including the purchase, sale, transfer of, and training with

20   constitutionally protected arms, ammunition, magazines, and appurtenances – [and]

21   are thus causing injury and damage that is actionable under 42 U.S.C. § 1983."

22   FAC, ¶ 91. Plaintiffs' complaint prays for, among other things, nominal damages

23   against the local defendants, including the County Defendants, for violation of the

24   Second Amendment. FAC, Prayer for Relief, p. 46 at ¶ 5.

25       After negotiating a stipulated dismissal which operated to clarify the State

26   defendants' position that their orders did not require the closure of firearm retailers,

27   ammunition vendors or shooting ranges (ECF No. 53, Exh. A, ¶ 6), plaintiffs

28   voluntarily dismissed the State defendants, Gov. Newsom and Dr. Sonia Y. Angell,

1  on July 8, 2020. (ECF No. 53). Plaintiffs further filed voluntary dismissals of the

2  City of Burbank defendants (ECF No. 52), and the City of Los Angeles defendants

3  (ECF No. 54).

4       The County Defendants filed their Answer to the First Amended Complaint

5  on June 24, 2020. (ECF No. 45). They further filed the instant Motion for

6  Judgment on the Pleadings on August 21, 2020 (ECF No. 56), the hearing date of

7  which was noticed and set for September 18, 2020 at 10:00 a.m. in this Court.

8

9  **III.**   **ARGUMENT**

10

11  **A.**   **A LIVE CONTROVERSY INVOLVING ACTIONABLE INJURY REMAINS.**

12       Defendants claim "there is no live controversy to justify the instant action

13  for injunctive/declaratory relief" because the March 19 order "has been superseded

14  by multiple County public health orders, none of which has required the closure

15  [of] firearms retailers in the County," and plaintiffs are simply stranded in the land

16  of "mootness" with no standing to complain about anything and no chance of

17  possible relief because any suggestion that the County's orders "could somehow

18  'revert back' to a prior form that resulted in the temporary closure of firearms

19  retailers" is "factually unfounded and wholly speculative." MJP pp. 8-15. But the

20  very history and content of defendants' previous orders which they dismiss with

21  slight-of-hand demonstrate the case is very much alive, both based on the past

22  constitutional injury already inflicted and the real risk of future injury.

23       "'As long as the parties have a concrete interest, *however small*, in the

24  outcome of the litigation, the case is not moot.'" *Campbell-Ewald Co. v. Gomez*,

25  __ U.S. __, 136 S.Ct. 663, 669 (2016) (quoting *Chafin v. Chafin*, 568 U.S. 165,

26  171 (2013)). Generally, the party challenging the court's jurisdiction on such

27  grounds bears the burden of demonstrating mootness, and it is "'a heavy one.'"

28  *Native Village of Nuiqsut v. Bureau of Land Management*, 432 F.Supp.3d 1003,

1  1021, n. 103 (D. Alaska 2020) (quoting *Feldman v. Bomar*, 518 F.3d 637, 642 (9th
2  Cir. 2008)). "'[V]oluntary cessation of allegedly illegal conduct does not deprive
3  the tribunal of power to hear and determine the case, i.e., does not make the case
4  moot,'" except "where the Court determines that (1) the alleged violation will not
5  recur and (2) 'interim relief or events have *completely and irrevocably eradicated*
6  the effects of the alleged violation.'" *Durst v. Oregon Education Association*, __
7  F.Supp.3d __, 2020 WL 1545484, *3 (D. Oregon 2020) (quoting *Los Angeles Cty.*
8  *v. Davis*, 440 U.S. 625, 631 (1979)) (italics added). Otherwise, "a dismissal for
9  mootness would permit a resumption of the challenged conduct as soon as the case
10 is dismissed." *American Diabetes Association v. U.S Dept. of the Army*, 938 F.3d
11 1147 (9th Cir. 2019).

12      Another "justiciability-saving exception is for challenges to injuries that are
13 'capable of repetition, yet evading review.'" *Planned Parenthood of Greater*
14 *Washington and North Idaho v. U.S. Department of Health & Human Services*, 946
15 F.3d 1100 (9th Cir. 2020). This exception to the mootness doctrine "requires (1)
16 the complaining party to reasonably expect to be subject to the same injury again
17 and (2) the injury to be of a type inherently shorter than the duration of litigation."
18 *Id.* at 1109. A party has a reasonable expectation of being "subject to the same
19 injury again" when it reasonably believes it "'will again be subjected to the alleged
20 illegality' or will be or 'subject to the threat of prosecution' under the challenged
21 law." *Koller v. Harris*, 312 F.Supp.3d 814, 823 (N.D. Cal. 2018) (quoting *FEC v.*
22 *Wisconsin Right To Life, Inc.*, 551 U.S. 449, 463 (2007)).

23      While defendants claim any possibility that the County may modify its
24 current orders to again compel closure of firearms and ammunition retailers "flies
25 in the face of basic logic and facts," MJP at 15, one need look no further than the
26 history and content of their own orders to see such risks have not been "*completely*
27 *and irrevocably eradicated*" to see that reinstatement remains more than a
28 reasonable possibility. Just like in their March 19 Order, *see* Def. RJN Ex. 1, p. 6,

1   defendants have reserved unto themselves broad, essentially unchecked powers to

2   modify their later orders whenever and in whatever manner than may deem

3   prudent—and in particular to *increase* the current level of restrictions based on any

4   actual or perceived future increased risks with COVID-19.

5       Both the County's June 18 and August 12 Orders provide that the County

6   may issue orders "more restrictive" than the State orders. Def. RJN, Ex. 2, p.1; Ex.

7   5, pp. 1-2. Both advise business owners to check the Public Health website "*daily*

8   to identify any modifications to the Order" because they are "required to comply

9   with any updates until the Order terminated." *Id.* at Ex. 2, p. 14, Ex. 3, at 15. And

10  both Orders provide they remain effective "until [] revised, rescinded, superseded,

11  or amended in writing by the Health Officer." *Id.* at Ex. 2, p. 15, Ex. 5, p. 16.

12  Further, the Orders emphasize the continuing dangers of the disease as conditions

13  that will remain and potentially increase in severity for so long as no vaccine or

14  effective treatment exists.  *Id.* at Ex. 2, p. 7 (COVID-19 "continues to present a

15  substantial and significant risk of harm to residents' health"); *id.* at Ex. 3, p. 15

16  (same).

17      In fact, the most recent order of August 12 stresses the "serious recent

18  regression of COVID-19 indicators" in the County "which show troubling and

19  substantial increases in new daily reported COVID-19 cases, hospitalizations, and

20  the testing positivity rate." Def. RJN, Ex. 5, p. 2. The Order highlights "evidence of

21  continued community transmission of COVID-19 within the County," and laments

22  that "[u]nfortunately, the daily number of new cases has significantly increased,"

23  placing "a significant portion of the County population at risk for serious health

24  complications, including hospitalizations and death from COVID-19." *Id.* at pp. 8-

25  9. The Order provides that its primary purpose is to "protect the public from the

26  avoidable risk of serious illness and death resulting from the spread of COVID-

27  19," while emphasizing how "preventing, limiting, and placing conditions on

28  various types of gatherings and other direct and indirect interactions have proven to

reduce the risk of transmitting the virus." *Id.* at p. 8. In fact, to serve that very end, the Order "required the immediate temporary closure of specific activities and business sectors." *Id.* at p. 2. While this did not name firearms or ammunition retailers, given the focus on limiting direct and indirect interactions among people as a primary means to prevent the spread of the virus, it is certainly conceivable—indeed quite likely—such retailers remain at risk of further closure.

The best evidence that "the County might reverse its position by mandating the closure of firearms retailers in the County," MJP at 15-16, is what the County has *already done* through its previous orders categorizing them as among the "non-essential" businesses prohibited from operating from March 19 until June 18. Coupled with the dire picture painted in the current August 12 Order based on the same essential risks that spurred the initial round of shutdowns, undeniably, a "legitimate rationale" exists for inferring this is bound to happen again, MJP at 15—especially when the County's current order emphasizes that these same risks are *worsening* while continuing to reserve unto itself the power and discretion to unilaterally increase the restrictions at any time without any accountability to the affected citizens. Defendants themselves paint the very sort of bleak picture one could only expect will lead to greater restrictions on all activities outside the home to combat "this epic human tragedy" whose "constricting effect" is "incalculable," "far from over," and continues to "threaten[] the lives of every human in its uncontainable path." MJP 1-2. Ultimately, the "basic logic and facts" can only dictate that plaintiffs retain a "concrete interest" in the outcome of this litigation where the risk of more restrictive conditions necessarily remains, and is expressly foreseeable.

Finally, but not least, plaintiffs have properly pled relief in the form of nominal damages, in seeking redress of the constitutional injuries already inflicted. This is something defendants cannot avoid by simply claiming "mootness," *Outdoor Media Grp. v. City of Beaumont*, 506 F.3d 895, 902 (9th Cir. 2007) –

especially when they clearly have not "*completely and irrevocably eradicated* the effects of the alleged violation," *Durst*, 2020 WL 1545484, *3. "As a general rule, amending or repealing an ordinance will not moot a damages claim because such relief is sought for 'a past violation of [the plaintiff's] rights,'" *Epona LLC v. County of Ventura*, 2:16-cv-06372-PMG-PLA, 2019 WL 7940582 at *5 (C.D. Cal. Dec. 12, 2019) (quoting *Outdoor Media Grp.*, 506 F.3d at 902, and such damages "are particularly important in vindicating constitutional interests," *New York State Rifle & Pistol Association, Inc. v. City of New York, New York*, 140 S.Ct. 1525, 1536 (2020) (Alito, J., dissenting). Thus, "[a] live claim for nominal damages will prevent dismissal for mootness." *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 871 (9th Cir. 2002); *New York State Rifle & Pistol Association* at 1536 (Alito, J., dissenting) ("it is widely recognized that a claim for nominal damages precludes mootness"). It would defeat the important purposes of 42 U.S.C. § 1983 claims, which an organized society must "scrupulously observe[]," if defendants could claim "mootness" to avoid any responsibility for this deprivation of rights. *Bernhardt*, at 872. Their attempt to do so must be rejected, particularly since the FAC strongly supports the Second Amendment claim under the lenient standards for advancing to the merits stage.

**B.  PLAINTIFFS' SECOND AMENDMENT CLAIM SURVIVES THE LENIENT STANDARDS APPLIED TO A MOTION FOR JUDGMENT ON THE PLEADINGS.**

Federal Rule of Civ. Pro. 12(c) provides: "After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." "'Judgment on the pleadings is properly granted when [, accepting all factual allegations in the complaint as true,] there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law.'" *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (citing *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009)). "Analysis under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6) because, under both rules, 'a court must

determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy.'" *Chavez*, 683 F.3d at 1108 (citing *Brooks v. Dunlop Mfg. Inc.*, 2011 WL 6140912 at *3 (N.D. Cal. Dec. 9, 2011)).

This necessarily involves an analysis of a plaintiff's claims under the *Twombly/Iqbal* "plausibility" standard of the Rule 12(b)(6) rubric. *Chavez*, 683 F.3d at 1108-1109. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, a complaint should not be dismissed on such a motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Geraci v. Homestreet Bank*, 347 F.3d 749, 751 (9th Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also U.S v. Hempfling*, 431 F.Supp.2d 1069, 1075 (E.D. Cal. 2006) ("A Rule 12(b)(6) motion is disfavored and rarely granted.").

These standards are important to keep in mind, particularly with defendants' repeated reliance on rulings and opinions conducted under the much more stringent standards that apply to applications for extraordinary relief, like temporary restraining orders and preliminary injunctions, as purported analogues for disposing of this motion. *See* MJP at 6 (relying on the denial of plaintiffs' *ex parte* application for a temporary restraining order in this case); *id.* at 13, n. 12 (relying on the denial of the *ex parte* application for such an order in *McDougall v Cty. Of Ventura*, 20-CV-02927-CBM-ASx (C.D. Cal. Mar. 31, 2020)); *id.* at 14, n. 13 (relying on the denial of a motion for preliminary injunction in *Altman v. County of Santa Clara*, )__ F.Supp.3d__, 2020 WL 2850291 (June 2, 2020).

### 1.    Defendants' Orders are Subject to Strict Scrutiny, If Any at All.

Aside from their inapt analogies to decisions made under fundamentally different standards, all defendants have to say in attempting to carry this heavy burden is that the County has a substantial governmental interest in curbing the

1 spread of this disease, the closure of firearms retailers as "non-essential" businesses

2 is not "an unreasonable step" to take towards that end, and thus any challenge to

3 such an action survives intermediate constitutional scrutiny. MJP at 14.

4        The Supreme Court has made clear the Framers and ratifiers of the

5 Fourteenth Amendment counted the right to keep and bear arms as among those

6 fundamental rights *necessary* (i.e., essential) to our system of ordered liberty,

7 *McDonald v. Chicago*, 561 U.S. 742, 778, 791 (2010), and as a privilege and

8 immunity of citizenship, *id*. at 805 (Thomas, J., concurring). Defendants' prior

9 Orders struck at the heart of every right enshrined in the Second Amendment—the

10 right to "keep," "bear," "use," "possess," and "carry" for self-defense in the home,

11 in case of confrontation, and for other lawful purposes, as well as the

12 corresponding right to obtain the ammunition required to actually use them for

13 these protected purposes. *See District of Columbia v. Heller*, 554 U.S. 570, 592,

14 635 (2008); *McDonald*, 561 U.S. at 767; *Jackson v. City and County of San*

15 *Francisco*, 746 F.3d 953, 968 (9th Cir. 2014); *Ezell v. City of Chicago*, 651 F.3d

16 684, 704 (7th Cir. 2011). For all County residents who did not already have a

17 firearm, and all in need of ammunition to actually use their firearms, the effect of

18 these Orders was tantamount to a complete prohibition, since they were deprived of

19 any ability to possess, transport, store, or use a firearm. Infringements like this "fail

20 constitutional muster" "[u]nder any of the standards of scrutiny the Court has

21 applied to enumerated constitutional rights." *Heller*, at 571. Even assuming

22 traditional scrutiny, a "law that implicates the core of the Second Amendment right

23 and severely burdens that right"—like the orders here—"warrants strict scrutiny."

24 *Bauer v. Becerra*, 858 F.3d 1216, 1222 (9th Cir. 2017) (quoting *United States v.*

25 *Chovan*, 735 F.3d 1127, 1138 (9th Cir. 2013)). "To overcome such a high standard

26 of review, the government is required to prove that the restriction 'furthers a

27 compelling interest and is narrowly tailored to achieve that interest.'" *Wolfson v.*

28

1  *Concannon*, 811 F.3d 1176, 1181 (9th Cir. 2016) (quoting *Citizens United v.*
2  *Federal Election Commission*, 558 U.S. 310, 340 (2010)).

3          The Ninth Circuit just recently reiterated *Heller's* fundamental principle that
4  a "law bann[ing] an "entire class of 'arm'" is "'severe' and r[u]ns afoul of the
5  Second Amendment," in striking down California's ban on "large capacity
6  magazines" "because it ban[ned] possession of half of all magazines in America
7  today." *Duncan v. Becerra*, __ F.3d__, 2020 WL 4730668, *16 (9th Cir. Aug. 14,
8  2020). The court held that, "[i]n short, a law that takes away a substantial portion
9  of arms commonly used by citizens for self-defense imposes a substantial burden
10 on the Second Amendment." *Id.* Here, the prior Orders applied equally to all
11 classes of firearms, not just handguns, which rendered their burdensome impact
12 even more substantial than the *handgun* ban struck down as unconstitutional in
13 *Heller* and the LCM ban in *Becerra*, which "ban[ned] possession of *half* of all
14 magazines in America," *Duncan*, at *17. And, while defendants attempt to
15 characterize their prior Orders as of limited significance due to their "temporary"
16 nature, notably, they do not dispute that the March 19 Order and its general
17 mandates remained in effect for a solid three months. Rather, they cite the order of
18 *June 18* as the *first* order that lifted the general prohibition on "non-essential"
19 retailers and thus as the first order after the March 19 Order under which firearms
20 and ammunition retailers "were permitted to operate." MJP at 8-9. While it was in
21 effect,  like the LCM ban, "[i]t applie[d] to nearly everyone" in the County, it was
22 "indiscriminating in its prohibition," it was not "firearms that are not commonly
23 used for self-defense," and "[t]hese are not features of a statute upheld by courts
24 under the least restrictive means standard." *Duncan*, at *23.

25          **2.     The Orders Cannot Survive Any Intermediate Scrutiny Either.**
26          "While the precise contours of intermediate scrutiny may vary, this much is
27 certain: It has bite. It is a demanding test. While its application is neither fatal nor
28 feeble, it still requires a reviewing court to scrutinize a challenged law with a

1   healthy dose of skepticism. *Duncan*, 2020 WL 4730668, *23 (quoting *Edenfield v.*
2   *Fane*, 507 U.S. 761, 771 (1993)). "At its core, intermediate scrutiny is a searching
3   inquiry." *Duncan*, *23. '"[T]he government's stated objective ... [must] be
4   significant, substantial, or important; and (2) there ... [must] be a 'reasonable fit'
5   between the challenged regulation and the asserted objective."' *Rhode v. Becerra*,
6   __ F.Supp.3d __, 2020 WL 2392655, *19 (S.D. Cal. 2020) (quoting *Silvester v.*
7   *Harris*, 843 F.3d 816, 821-22 (9th Cir. 2016)). "[E]ven under intermediate
8   scrutiny, a court must determine whether the legislature has 'base[d] its
9   conclusions upon substantial evidence.'" *Id.* (quoting *Turner* at 196). "The
10  government must carry the burden of establishing that its regulations are
11  reasonably tailored." *Id.* This means it "must establish a tight 'fit' between the
12  registration requirements and an important or substantial governmental interest, a
13  fit 'that employs not necessarily the least restrictive means but ... a means narrowly
14  tailored to achieve the desired objective.'" *Id.* (quoting *Heller v. District of*
15  *Columbia*, 670 F.3d 1244, 1258 (D.C. Cir. 2011) (*Heller II*).

16       Defendants here have made absolutely no effort to demonstrate or to even
17  *claim* they ever considered less restrictive alternatives, much less that any such
18  alternatives would be ineffective or inadequate to achieve the stated goals. It
19  follows that they fail to present any *evidence* showing this ban is "reasonably
20  tailored," much less "*narrowly* tailored to achieve the desired objective."
21  Defendants appear to assume it is enough to simply proffer a "reasonable" *post hoc*
22  explanation to justify any constitutional infringement, when that simply does not
23  suffice. *Duncan*, 2020 WL 4730668 *25 ("The [government] cannot infringe on
24  the people's Second Amendment right, and then ask the courts to defer to its
25  alleged 'expertise' once its [orders] are challenged.").

26       Again, defendants simply cannot expect to walk away with no accountability
27  after the direct and serious injury their Orders inflicted on the fundamental
28  constitutional rights of plaintiffs and all those similarly situated. This is particularly

true when plaintiffs have properly pled nominal damages as a remedy for this past violation and they remain exposed to future injury of the same kind under the defendants' current health orders. Plaintiffs' claim for declaratory relief, injunctive relief, and nominal damages not only remains justiciable but such relief remains necessary to remedy the past injury and avert future harm—even more so than it was on the date they first brought this action.

## C.    PLAINTIFFS WILL DISMISS THE DUE PROCESS CLAIM.

Although plaintiffs have properly stated a claim for violation of due process, on the theory that all the various orders at issue throughout the case were unconstitutionally vague and led to arbitrary and discriminate enforcement, the primary targets of their second claim of a violation of due process under the Fifth and Fourteenth Amendments, FAC, ¶¶ 92-108, were the orders of the State defendants. Plaintiffs have resolved their differences with the State, by way of a stipulation which clarified, among other things, that "challenged orders of Governor Newsom and Dr. Angell *did not* require the closure of firearm retailers, ammunition vendors, or shooting ranges. To the extent any local authority requires the closure of those retailers, vendors, or ranges, such action is not required by the State Defendants' orders." *See* Stipulation Re: Dismissal of State Defendants Governor Gavin Newsom, and Dr. Sonia Y. Angell (ECF 53, p. 6, ¶ 6, emphasis added). With that clarification, plaintiffs are sufficiently satisfied that any prior confusion on the issue has been abated, and that counties are no longer free to rely on the State's orders to close firearm and ammunition retailers within their borders. Although plaintiffs have properly and correctly alleged that Sheriff Villanueva's changes of his policy positions led to confusion and inconsistency that created the potential for arbitrary actions in the 42 cities under the County's jurisdiction

(including the Cities of Los Angeles and Burbank), plaintiffs are prepared to dismiss this second count by way of filing an amended pleading.

**D.     SHOULD DEFENDANTS' MOTION BE GRANTED, PLAINTIFFS SHOULD BE GRANTED LEAVE TO AMEND.**

Under the similar standards of Rule 12(b), if a motion for judgment on the pleadings under Rule 12(c) is granted, leave should freely be given to the plaintiffs to amend, unless amendment would be futile. *Pantastico v. Dept. of Educ.*, 406 F.Supp.3d 865, 880 (D. Haw. 2019) (after dismissal under Rule 12(b)(6) and 12(c), the standard is whether "amendment would be futile") (citing *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011); *Harris v. County of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012) ( Under a Rule 12(c) motion, "[d]ismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment.").

Here, plaintiffs have already prepared and would be able to file a Second Amended Complaint which includes additional individual plaintiffs who suffered injury as a result of the County's enforced shutdown of firearm retailers and ammunition vendors, eliminates all unnecessary parties (including previously-dismissed defendants), and eliminates the second claim for violation of due process to facilitate a more efficient and effective resolution of this important matter.

## IV.     CONCLUSION

For the foregoing reasons, the County Defendants' motion for judgment on the pleadings should be denied, and leave to amend should otherwise be granted as set forth herein.

1   Dated: August 28, 2020                    **SEILER EPSTEIN LLP**

2

3                                             */s/ George M. Lee*

4                                             George M. Lee

5                                             Attorneys for Plaintiffs

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28