1  George M. Lee (SBN 172982)
2  gml@seilerepstein.com
   **SEILER EPSTEIN LLP**
3  4 Embarcadero Center, 14th Floor
4  San Francisco, California 94111
   Phone: (415) 979-0500
5

6  Raymond M. DiGuiseppe (SBN 228457)
7  law.rmd@gmail.com
   **THE DIGUISEPPE LAW FIRM, P.C.**
8  116 N. Howe Street, Suite A
9  Southport, North Carolina 28461
   Phone: (910) 713-8804
10

11 Attorneys for Plaintiffs Jonah Martinez, et al.
12
13 PAUL B. BEACH, State Bar No. 166265
   pbeach@lbaclaw.com
14 JIN S. CHOI, State Bar No. 180270
   jchoi@lbaclaw.com
15 **LAWRENCE BEACH ALLEN & CHOI, PC**
16 150 South Los Robles Avenue, Suite 660
   Pasadena, California 91101
17 Telephone No. (818) 545-1925
18
19 Attorneys for Defendants County of Los Angeles,
   Sheriff Alex Villanueva, and Barbara Ferrer
20

21               **UNITED STATES DISTRICT COURT**
22
23            **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 24  ADAM BRANDY, et al., | Case No. 2:20-cv-2874 |
| 25                     Plaintiffs, | **PARTIES' JOINT RULE 26(F) REPORT** |
| 26       vs. | |
| 27  | Scheduling Conf.: May 19, 2023 |
| 28  | Time: 10:00 a.m. |
|     | Courtroom 7B |

1

| | |
|---|---|
| ALEX VILLANUEVA, in his official capacity as Sheriff of Los Angeles County, et al.,<br><br>                     Defendants. | Hon. André Birotte, Jr. |

**INTRODUCTION AND STATUS RE SETTLEMENT**

Pursuant to this Court's Order of April 17, 2023 [ECF No. 84], the parties hereto, plaintiffs Jonah Martinez et al. ("Plaintiffs") and defendants County of Los Angeles, Sheriff Alex Villanueva, and Barbara Ferrer ("County Defendants") hereby and jointly submit this report as required by the Court and Fed. R. Civ Pro. 26(f), in advance of the Scheduling Conference to be held on May 19, 2023 at 10:00 a.m. in Courtroom 7B of this Court.

<u>Plaintiffs' Position re Settlement:</u> Plaintiffs report that the parties settled this matter at a mediation with Judge Patrick Walsh (Ret.) on January 26, 2023. Plaintiffs with settlement authority were in attendance, and a representative of the County of Los Angeles, who purported to have settlement authority, was also in attendance. At the mediation, which was held remotely, the County agreed to a settlement, the terms of which were then memorialized in an email that Judge Walsh sent to the parties' counsel on January 26, 2023.

Following the mediation, counsel for the County insisted upon preparing the long-form agreement, and said they would be seeking official approval from the County of the same.

One month later, on February 24, 2023, plaintiffs' counsel undersigned asked counsel for the County what the status of the long form agreement was.

On February 28, 2023, counsel for the County responded by email that "we have invested considerable time and effort drafting all of the terms of the agreement. The County, however, has not yet completed its internal review of all of the provisions, which must be done before it is circulated. While we do not expect

this process to take that much longer, would Plaintiffs have any objection to continue the current scheduling conference by 30 days?"

Based upon the representations made in counsel's email of Feb. 28, 2023, plaintiffs agreed to a 30-day continuance, and requested that the County prepare a joint status report to explain the status of the County's review.

On March 8, 2023, in advance of the then-pending status conference, the parties entered into a stipulation requesting continuance of the same. See, ECF 82. In that stipulation, the County reported that "the non-monetary terms must be written and vetted by various departments and personnel within the County[.] A draft long-form agreement has been prepared but all of the stakeholders within the County have yet to reach consensus as to final acceptable language; the representatives for the County estimate that they require 30 days for the completion of this process." Id., at p. 2:13-19.

Based upon the parties' stipulation, the Court ordered a continuation of the scheduling conference to April 21, 2023 at 10:00 a.m. See, ECF 83.

On March 28, 2023, plaintiffs' counsel undersigned wrote to counsel for the County, asking to "let us know the status of the County's approval of the settlement. We would not be inclined to agree to any further continuances of the status conference, and would instead propose to tell the court of the material terms of the settlement, and request that the court order your client to appear in person to explain any further delay in approval. While we would prefer to avoid any further personal appearances, we must move forward with concluding this case. [¶] If you would like to have a further conference with Judge Walsh, please let us know."

The County did not send a proposed settlement agreement to Plaintiffs' counsel until May 1, 2023. And even then, counsel for the County stated that "the final agreement reached by the parties must still be approved by the applicable County personnel, and that the enclosed language is still under review."

Plaintiffs returned a redlined version of the settlement agreement to counsel

1  for the County on May 4, 2023, but have not received approval of those revisions.

2  Accordingly, plaintiffs hereby request that the Court order a representative of the County of Los Angeles to personally appear at the scheduling conference on May 19, 2023, to explain to the Court why the settlement agreement has not yet been approved. Plaintiffs' counsel can provide and lodge a hard copy of Judge Walsh's email of January 26, 2023 which confirmed the settlement terms if requested by this Court. Otherwise, Plaintiffs intend to file a motion to enforce the settlement reached at the mediation on January 26, 2023.

Plaintiffs provisionally submit this Joint Rule 26(f) report.

<u>Defendants' Position re Settlement:</u>

At the parties' formal mediation, with the assistance of retired Magistrate Judge Walsh, the parties reached a tentative global settlement, subject to the specific terms being memorialized in a long-form settlement agreement, and the parties' agreement being approved by the appropriate representatives of the County, as required by the County Code.  Suffice it to say, there are many specific terms, some of which are not usually included in such an agreement, and their terms have meaning; thus, especially with respect to an institutional client, the vetting of such terms involve multiple aspects of the County and time to prepare. The parties have recently exchanged drafts, and it is hoped that within the near future, the written terms can be finalized between the parties, and then the finalized terms may go through the final County approval process, like every case similar to this.

Plaintiffs' request for the personal appearance of a County representative at the upcoming scheduling conference to explain why the proposed settlement has not been approved is unnecessary and unwarranted.  Defendants' counsel will appear and will address any questions that the Court may have regarding the County's review process, including addressing any questions *in camera*.

Accordingly, it is Defendants' position that the setting of further litigation dates is unnecessary at this time. Nevertheless, in the event that the Court so chooses, Defendants offer below their position on said subjects.

### A.  STATEMENT OF THE CASE

Plaintiffs:

This case addresses the unilateral decision by County officials, who decided they could shut down firearms retailers, ammunition vendors, and firearms ranges during the early days of the coronavirus pandemic, without giving any thought as to whether doing so infringed upon constitutionally-protected liberties.

Plaintiffs are individuals who were affected and impacted by the shutdown of the firearms industry for 11 days during the government-compelled shutdown of businesses in March 2020, the early days of the COVID-19/coronavirus pandemic.

The remaining defendants are the County of Los Angeles, Sheriff Alex Villanueva, and County Public Health Director Barbara Ferrer ("County Defendants"), who have been sued in their official capacities.

Plaintiffs brought this action against the County Defendants, and other State and local officials who issued various orders that forced the closure of all firearms and ammunition retailers, and all firearms training ranges, within the County. On March 19, 2020, the County of Los Angeles Department of Public Health issued an Order titled, "Safer at Home Order for Control of COVID-19." The County Order applied to all of Los Angeles County, except Pasadena and Long Beach. It "require[d] all indoor malls, shopping centers, playgrounds and non-essential businesses to close." Only "Essential Businesses" could remain open. (First. Am. Complaint, ECF No. 9 ("FAC"), ¶ 43). Plaintiffs contended that by and through their exclusion of firearm retailers, firearms ranges, and other businesses from "Essential Businesses" under the Orders – and in Sheriff Villanueva's case, an

expressly-stated order closing all firearm retailers – such policies infringed upon constitutionally protected conduct and activity.

On March 24, 2020, County of Los Angeles Sheriff Alex Villanueva expressly declared that "[g]un shops" are "non-essential businesses" within the meaning of the County's orders and warned that "[i]f they don't close their doors, they will be cited" and "risk[ed] losing their business licenses."

On March 25, 2020, Sheriff Villanueva announced that to prevent the spread of COVID-19 in jails, he had released 10% of the inmate population from county jails. The same day, he announced the "LA County Sheriff's Dept. Enforcement efforts to close non-essential businesses have been suspended" because the Governor was expected to "determine what qualifies as a non-essential business." Instead, Governor Newsom granted the county sheriffs discretion to determine whether the gun stores within their county were "essential." In response, on March 26, 2020, Sheriff Villanueva "issued an order that gun and ammunition stores were not considered essential businesses and must close to the general public."[1]

On March 28, 2020, the Director of the United States Department of Homeland Security, Cybersecurity & Infrastructure Agency (CISA), issued an "Advisory Memorandum on Identification of Essential Critical Infrastructure Workers During COVID-19 Response." The Advisory Memorandum listed all those who worked in "supporting the operation of firearm or ammunition product manufacturers, retailers, importers, distributors, and shooting ranges" as among "essential critical infrastructure workers."

"[B]ased on the additional and latest information from the federal government," on March 30, Sheriff Villanueva "publicly announced that the Los

---

[1] The order included two exceptions: (1) people who already possessed a California Firearms Safety Certificate ("FSC") and had already initiated a firearm purchase before the shutdowns could complete the transaction by taking possession of the firearm; and (2) ammunition could continue to be sold to "security guard companies."

Angeles County Sheriff's Department will not order or recommend closure of businesses that sell or repair firearms, or sell ammunition."

Subsequent COVID-19 orders issued by the County of Los Angeles Department of Public Health on June 18, August 12, and September 4, 2020, were consistent with Sheriff Villanueva's March 30 Order in no longer precluding the operation of firearms and ammunition retailers or ranges.

As alleged throughout the FAC, the net effect of the County's and Sheriff Villanueva's Orders was to severely curtail and, in many cases, entirely prevent protected firearms activity of the named plaintiffs and those similarly situated individuals and retailers throughout the County for 11 days, in violation of their constitutional rights. While the district court concluded otherwise in initially entering judgment on the pleadings for Defendants, the three-judge panel of the Ninth Circuit that first considered Plaintiffs' appeal sided with Plaintiffs and reversed this judgment. *Martinez v. Villanueva*, 2022 WL 187851 at *1 (9th Cir. Jan. 20, 2022) ("an 11-day total ban on law-abiding citizens' ability to practice with firearms at firing ranges or acquire firearms and ammunitions at all—which the Orders clearly indicated could be perpetually extended if the County so decided— severely burdens the core of the Second Amendment right at a time of crisis, precisely when the need to exercise that right becomes most acute").[2]

This opinion was later vacated on en banc review, in connection with a remand to this Court for reconsideration based on the recent developments in the law. However, "at minimum, a vacated opinion still carries informational and perhaps even persuasive or precedential value." *DHX, Inc. v. Allianz AGF MAT, Ltd.*, 425 F.3d 1169, 1176 (9th Cir. 2005); <u>Lolli v. Cnty. of Orange</u>, 351 F.3d 410, 413 n.1 (9th Cir. 2003) ("'[T]he reasoning of a vacated opinion may be looked to

---

[2] The panel also rejected the finding that the closures persisted no more than five days. *Id.* at 2, n. 2 ("The district court's finding that the mandated closure of firearms retailers lasted only five days is clear error.").

as persuasive authority if its reasoning is unaffected by the decision to vacate.'" (quoting *United States v. Barona,* 56 F.3d 1087, 1093 n. 1 (9th Cir. 1995)).

In response to Defendants' suggestion re mootness below, the matter is clearly not moot given Plaintiffs' claim for nominal damages based on the indisputable completed violation of the constitutional rights at stake. See *Uzuegbunam v. Preczewski*, 141 S.Ct. 792, 802 (2021) ("we conclude that a request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right").

Defendants:

The gravamen of Plaintiffs' suit concerns claims for injunctive/declaratory relief. That is understandable, since Plaintiffs filed suit only days after the subject Covid-19 public health orders were issued at the outset of a global pandemic. In any event, it is undisputed that within only a few days thereafter, the Defendants made clear that they would consider the gun industry "essential businesses" and not interfere with their operations. That has remained the same since March 2020, more than three years ago. Although during that same time period society has encountered multiple different strains of the Covid-19 virus, effective vaccines and boosters have been developed, various techniques have been implemented to protect those who have been impacted by the virus, and all aspects of social living and commerce in Los Angeles County have continued.

And recently this year, the states of emergency declared by the United States, State of California and the County of Los Angeles have been lifted.

In its ruling on Defendants' motion for judgment on the pleadings (ECF 68), this Court noted that, even at that time, Plaintiffs' claims were probably moot. ECF 68 at 5 ("the Court finds that Plaintiffs' Second Amendment claim against Defendants as likely lost its characters as a present, live controversy and should be dismissed as moot"). Nevertheless, out of an abundance of caution, the Court engaged in a Second Amendment analysis. ECF 68 at 6-7.

Again, Defendants believe that the instant matter can and should be reasonably settled. However, if this matter is going to proceed via litigation, then this Court can and should rule on whether Plaintiffs' claims are now indeed moot. Years later, the proof of mootness is stronger, and irrefutable. Thus, if necessary, this Court should now dismiss Plaintiffs' claims for injunctive/declaratory relief as moot.

### Dismissal of Plaintiffs' Claims for Nominal Damages

In March 2021, approximately a year after Plaintiffs filed suit, the United States Supreme Court issued its ruling in *Uzuegbunam v. Preczewski*, 141 S.Ct. 792 (2021). In *Uzuegbunam*, in which the plaintiffs agreed that their injunctive claim had been rendered moot by the change in the challenged school policy, the Supreme Court recognized that nominal damages is an appropriate remedy for a constitutional violation, but only if there has been a **completed** violation of a constitutional right. This ruling, as well as cases that have interpreted and applied it, mandate the dismissal of Plaintiffs' claims for nominal damages. *See e.g. Benham v. City of Jackson*, 2021 U.S. Dist. LEXIS 241675, at *24 (S.D. Miss. Dec. 17, 2021) (First Amendment suit for nominal damages dismissed because there was no "past completed injury" since the plaintiff's "allegation in his Complaint was that his speech had been chilled by the enactment of the Ordinances, should he decide to visit the City at a later date", and the Court rejected the plaintiff's contention that "chilled speech by itself is a realized constitutional injury as a matter of law, which overcomes mootness", citing *Uzuegbunam*).[3]

---

[3] The *Benham* Court also held that the plaintiff's declaratory and injunctive relief claims had been rendered moot by the repeal of the subject city ordinances which made "it impossible for this court to grant [the plaintiff] any effectual declaratory or injunctive relief", and there was no evidence that the city planned to re-enact the ordinances. *Id.* at *24.

**B.     SUBJECT MATTER JURISDICTION**

The Parties are in agreement that this Court has subject matter jurisdiction over the Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331, 1343, and 2202. This is an action for deprivation of civil rights brought pursuant to 42 U.S.C. § 1983.

**C.     LEGAL ISSUES**

Plaintiffs contend that the remaining defendants' policies, customs and practices violated the Second Amendment in that they constituted an unjustifiable infringement upon constitutionally-protected activity, including the right to keep and bear arms, to acquire and purchase arms and ammunition, and the right to train with firearms and ammunition.

Plaintiffs initially brought a second count alleging that the defendants' orders, including the State orders of the Governor, were unconstitutionally vague and violated due process. However, after negotiating a stipulated dismissal which operated to clarify the State defendants' position that their orders did not require the closure of firearm retailers, ammunition vendors or shooting ranges [ECF No. 53, Exh. A, ¶ 6], Plaintiffs voluntarily dismissed the State defendants, Gov. Newsom and Dr. Sonia Y. Angell, on July 8, 2020. [ECF No. 53]. Plaintiffs further filed voluntary dismissals of the City of Burbank defendants [ECF No. 52], and the City of Los Angeles defendants [ECF No. 54]. In their opposition to the County Defendants' Motion for Judgment on the Pleadings, Plaintiffs agreed that they would dismiss the due process claim (second count) via amendment.

The primary legal issue remaining in the case is whether the County Defendants' orders and policies as applied to firearm retailers and industries were an infringement upon constitutionally protected activity, and if so, whether such an infringement could be justified.

Additionally, if a reasonable settlement is not reached, the legal issues of whether Plaintiffs have standing to pursue the relief sought (i.e. injunctive relief, nominal damages) and whether Plaintiffs' claims are moot would have to be addressed.

### D. PARTIES/EVIDENCE

At present, the Plaintiffs are: Jonah Martinez; Daemion Garro, DG 2A Enterprises, Inc. d.b.a. Gun World; Jason Montes; Weyland-Yutani LLC d.b.a. Match Grade Gunsmiths; Alan Kushner; The Target Range; Tom Watt; A Place to Shoot, Inc.; Second Amendment Foundation; California Gun Rights Foundation; National Rifle Association of America; and Firearms Policy Coalition, Inc.

At present, the key documents that Plaintiffs will rely upon in their primary case will consist of the promulgated orders, policies, and announcements of the County Defendants, which Plaintiffs allege had the effect of shutting down firearm retailers, ammunition vendors, product manufacturers, gunsmiths, and/or shooting ranges, either by direct order/policy or by excluding them from the definition of "Essential Businesses" under the County Orders, in violation of the guarantees and protections afforded under the Second and Fourteenth Amendments to the United State Constitution. Plaintiffs will further show that cities within the County followed such County policies to effect localized shutdowns of firearm and ammunition retailers, likewise in violation of these constitutional rights.

Defendants will conduct discovery to obtain information specific to the named individual, retailer and organizational Plaintiffs, with respect to the grounds for the Second Amendment infringements to which they were allegedly subjected.

//
//
//
//

E.   **DAMAGES**

Plaintiffs seek declaratory judgment, injunctive relief, and nominal damages in this matter. See, *New York State Rifle & Pistol Assoc., Inc. v. City of New York*, 140 S.Ct. 1525, 1536 (2020) (Alito, J., dissenting).

F.   **INSURANCE**

Defendants are self-insured.

G.   **MOTIONS**

Plaintiffs will file a motion to enforce a settlement that was reached at a mediation with Hon. Patrick Walsh (Ret.) on January 26, 2023. Plaintiffs intend to seek costs and fees associated with such motion.

Defendants may file either a FRCP, Rule 12(b)(6) motion to dismiss or Rule 12(c) motion for judgement on the pleadings, addressing the mootness of Plaintiffs' claims and Plaintiffs' lack of standing to seek either injunctive relief or nominal damages.

H.   **DISPOSITIVE MOTIONS**

If necessary, Defendants will file a FRCP Rule 56 motion for summary judgment.

I.   **COMPLEX LITIGATION**

The Parties are in agreement that this case does not constitute complex litigation.

J.   **STATUS OF DISCOVERY**

The parties have agreed to exchange initial disclosures under Rule 26(a)(1) by June 19, 2023.

**K.    DISCOVERY PLAN**

The Parties do not anticipate any deviation from the ordinary discovery limitations or rules set forth in FRCP 26.

Subjects on which discovery may be needed:

<u>Plaintiffs:</u> The issuance of the County Orders, the rationale for excluding firearm retailers and ranges from the definition of Essential Businesses, any consideration of less restrictive alternatives, any other documents and witnesses supporting the issuance of the County Orders, and the effect of those orders, including enforcement of the orders in cities within the County. If Plaintiffs' motion to enforce settlement with the County is denied, Plaintiffs anticipate propounding written discovery requests (document requests, requests for admission, and interrogatories) and taking depositions beginning in or around August/September of 2023.

<u>Defendants:</u>  Defendants will obtain discovery about the basis for each Plaintiffs' claims.

The Parties do not anticipate that this case will involve unusual issues related to the preservation of Electronically Stored Information, or the production of an inordinate amount of ESI.

The Parties do not anticipate any extraordinary issues of claims or privilege that might arise in this case, or the need for any protective orders to protect the disclosure of sensitive or confidential information.

At present, the Parties do not anticipate any deviations from the ordinary limitations on discovery imposed by the Federal Rules.

**L.    DISCOVERY CUTOFF**

The Parties would propose a fact witness discovery cutoff date in accordance with the proposed Schedule of Pretrial and Trial Dates Worksheet, attached (17

weeks before the proposed FPTC). The Parties were unable to agree on a proposed trial date.

### M.  EXPERT DISCOVERY

The Parties propose completing expert disclosures in accordance with the schedule attached hereto as Exhibit A.

### N.  SETTLEMENT CONFERENCE/ADR

Plaintiffs report that this matter has already settled, and will be filing a motion to enforce the settlement. See, *supra*, at p. 2.

Defendants report that the proposed settlement of this matter has not been approved by the County of Los Angeles; any motion to "enforce" the settlement would be without merit.

### O.  TRIAL ESTIMATE

At present, Plaintiffs believe this matter will be a court trial, not exceeding four (4) days.

Defendants reserve their right to a jury trial assuming, by the time of trial, there are any claims remaining that give rise to a right to a jury trial.

### P.  TRIAL COUNSEL

Plaintiffs will be represented at trial by: George M. Lee and Raymond M. DiGuiseppe.

County Defendants will be represented at trial by: Paul B. Beach and Jin S. Choi.

//
//
//

Q.  **INDEPENDENT EXPERT OR MASTER**

The Parties are in agreement that this case is not appropriate for the use of an independent expert or master pursuant to FRCP 53.

R.  **SCHEDULE WORKSHEET**

The Parties met and conferred on May 5, 2023, via telephone, to discuss the proposed trial date, but were unable to come to an agreement. Plaintiffs propose a trial date (court trial) of March 12, 2024. Defendants propose a trial date (jury trial) of August 13, 2024.

S.  **OTHER ISSUES**

None at this time.

Dated: May 5, 2023                **SEILER EPSTEIN LLP**

/s/ George M. Lee
George M. Lee

Attorneys for Plaintiffs Jonah Martinez, et al.

Dated: May 5, 2023                **LAWRENCE BEACH ALLEN & CHOI, PC**

/s/ Jin S. Choi
Paul B. Beach
Jin S. Choi
Attorneys for Defendants County of Los Angeles, Sheriff Alex Villanueva, and Barbara Ferrer